IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER,<br>263 Kentucky Ave., S.E.<br>Washington, D.C., | )<br>)<br>)<br>) |
| ABSALOM F. JORDAN, JR.,<br>1240 Savannah St., S.E.<br>Washington, D.C., | )<br>)<br>)<br>) |
| WILLIAM CARTER<br>2004 11th St., N.W., Apt. # 334<br>Washington, D.C., and | )<br>)<br>)<br>) |
| MARK SNYDER<br>1356 Madison St, N.W.<br>Washington, D.C., | )<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | ) CASE: 1:08-cv-01289<br>) Hon. Ricardo M. Urbina |
| THE DISTRICT OF COLUMBIA and | )<br>) |
| ADRIAN M. FENTY, Mayor,<br>District of Columbia, | )<br>)<br>) |
| Defendants | )<br>) |

**SECOND AMENDED COMPLAINT**

**(For Declaratory Judgment, Injunctive
Relief, and Writ of Mandamus)**

1.  This is an action to vindicate the right of the people of the District of Columbia to keep

and bear arms under the Second Amendment to the United States Constitution, which prohibits

infringement of the right of law-abiding citizens to keep commonly-possessed firearms in the home

for lawful purposes.

1

**Parties**

2.  Plaintiff Dick Anthony Heller is a resident of the District of Columbia and a citizen of the United States.

3.  Plaintiff Absalom F. Jordan, Jr. is a resident of the District of Columbia and a citizen of the United States.

4.  Plaintiff William Carter is a resident of the District of Columbia and a citizen of the United States.

5.  Plaintiff Mark Snyder is a resident of the District of Columbia and a citizen of the United States.

6.  All plaintiffs are eligible under the laws of the United States and of the District of Columbia to receive and possess firearms.

7.  Defendant District of Columbia ("the District") is the Seat of the Government of the United States and a municipality organized under the Constitution and laws of the United States.

8.  Defendant Adrian M. Fenty is the Mayor of the District of Columbia whose principal place of business is in Washington, D.C.   He is being sued in his official capacity.

**Jurisdiction**

9.  Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under of color of the laws, statute, ordinances, regulations, customs and usages of the District of Columbia, of rights, privileges or immunities secured by the United States Constitution.

10.  This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

Venue lies in this district pursuant to 28 U.S.C. § 1391.

## Background

11.  *District of Columbia v. Heller*, 128 S. Ct. 2783, 2821-22 (2008), held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."  Thereafter, the District enacted several acts further restricting possession of firearms, in some cases more stringently than before the *Heller* decision.

12.  On January 6, 2009, Mayor Fenty signed into law the Firearms Registration Emergency Amendment Act of 2008, which became effective immediately and which expires on April 6, 2009. On December 28, 2008, Mayor Fenty signed the Firearms Control Amendment Act of 2008, which was transmitted to Congress on February 10, 2009, and which will become effective on or about April 1, 2009, unless vetoed by Congress.  Since both enactments amended the D.C. Code in identical ways, have identical section numbers, and have identical adverse effects on the plaintiffs, both enactments are referred to herein simply as "the Act."

### Unduly Burdensome Registration Requirements

13.  The District requires that a person register to exercise Second Amendment rights: "no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm."  D.C. Code § 7-2502.01(a). Possession of an unregistered firearm is punishable by one year's imprisonment and a $1,000 fine, and by five year's imprisonment and a $5,000 fine for a second offense.  § 7-2507.06.

14.  The Act added onerous new requirements to pre-*Heller* law making it far more burdensome to register a firearm of any kind.  No registration certificate shall be issued unless the

3

Chief of Police determines, *inter alia*, that the applicant:

15. "Has not failed to demonstrate satisfactorily a knowledge of the laws of the District of Columbia pertaining to firearms and, in particular, the safe and responsible use, handling, and storage of the same in accordance with training, tests, and standards prescribed by the Chief . . . ." § 7-2502.03(a)(10). This may be required repeatedly regarding any "subsequent application" which is not "for the same type of firearms . . . ." *Id.* In particular, the applicant must take and pass a written test, and "[t]he type of test and its content shall be at the sole discretion of the Director [the commanding officer or acting commanding officer of the Identification and Records Division of the Metropolitan Police Department]." D.C. Municipal Regulations § 24-2311.3.

16. "Has vision better than or equal to that required to obtain a valid driver's license under the laws of the District of Columbia . . . ." D.C. Code § 7-2502.03(a)(11). This is applicable even to persons who wish merely to possess a firearm as an inheritance or a collector's item and not for actual use.

17. "Has completed a firearms training or safety course or class conducted by a state certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least one hour of firing training at a firing range and a total of at least four hours of classroom instruction." D.C. Code § 7-2502.03(a)(13)(A). No public firing range exists in the District. This is applicable even to persons who wish merely to possess a firearm as an inheritance or a collector's item and not for actual use.

18. Has provided on a form, *inter alia*, any business or occupation in which the applicant has engaged the previous five years, the intended use of the firearm, where the firearm will generally be kept, and "Such other information as the Chief determines is necessary to carry out the provisions

of this unit." § 7-2502.03(b).

19. "The Chief shall require any registered pistol to be submitted for a ballistics identification procedure and shall establish a reasonable fee for such procedure." § 7-2502.03(d). No limit is set on the fee the Chief may impose. "'Pistol' means any firearm originally designed to be fired by use of a single hand or with a barrel less than 12 inches in length." § 7-2501.01(12).

20. "The Chief shall register no more than one pistol per registrant during any 30-day period," with an exception for new residents. § 7-2502.03(e).

21. Section 7-2502.04 provides in part:

> (a) The Chief may require any person applying for a registration certificate to be fingerprinted . . . .
> (b) Each applicant . . . shall submit with the application 2 full-face photographs of himself . . . .
> (c) Every applicant . . . shall appear in person at a time and place prescribed by the Chief, and may be required to bring with him the firearm for which a registration certificate is sought . . . .

22. "Each application required by this subchapter shall be accompanied by a nonrefundable fee to be established by the Mayor . . . ." § 7-2502.05(b). No limit is set on the amount of the fee.

23. Further requirements to register a firearm are imposed by Chapter 23 of Title 24, District of Columbia Municipal Regulations. See §§ 24-2305 *et seq*. Reporting to the Firearms Registration Section (FRS) of the Metropolitan Police Department (MPD), the applicant must personally submit the application to register, acquire fingerprint cards, and provide photographs, a driver's license or letter from physician attesting to vision good enough to drive, and proof of residency. The person must pay fees for fingerprinting and registration, and submit to fingerprinting. The fingerprint cards must be submitted to the FRS, one for the office file and the other for an FBI criminal record check. The person must then await notification by mail from the FRS that requirements for registration have

been satisfied.  No time limit is prescribed.  The person must then return to the FRS to complete the process and obtain the MPD seal on the registration certificate.

24.   Having a firearm registered does not prevent a person from being prosecuted for possession of an unregistered firearm, because the registration is valid only for three years. Section 207a of the Act provides:

> (a) Registration certificates shall expire 3 years after the date of issuance unless renewed in accordance with this section for subsequent 3-year periods.
> (b) A registrant shall be eligible for renewal of registration of a firearm if the registrant continues to meet all of the initial registration requirements set forth in section 203(a) and follows any procedures the Chief may establish by rule.

25.   Moreover, § 207(g) of the Act provides in part: "The Chief shall establish, by rule, a method for conducting the renewal of registrations for all firearms registered prior to the effective date of the Firearms Registration Amendment Act of 2008 . . . ."  On information and belief, the Chief will require all persons with registered firearms to re-register them beginning in or about April 2009.

26.   To renew a registration, the applicant must submit a statement attesting to the registrant's possession of the registered firearm, address, and "continued compliance with all registration requirements set forth in section 203." Act § 207a(c).  However, this simply duplicates information already in the original registration and in any notice of changed information filed pursuant to existing § 7-2502.08(1).

27.   "An applicant for the renewal of a registration certificate may be charged a reasonable fee to cover the administrative costs incurred by the Metropolitan Police Department in connection with the renewal." Act § 207a(f).  No limit is set on the fee that may be charged.

28.   The Act does not presume that a registrant remains legally eligible to possess a firearm.

"A registrant shall submit to a background check once every 6 years to confirm that the registrant continues to qualify for registration under section 203." Act § 207a(d).

29.   A registrant is required to notify the Chief in writing (A) immediately of the loss, theft, or destruction of a firearm, (B) of any change in registration information on the certificate or required by § 7-2502.03 (e.g., current business or occupation, intended use of the firearm, etc.), and (C) of the sale, transfer or other disposition of the firearm at least 48 hours before it occurs, including pertinent information on the transferee.  § 7-2502.08(1).

30.   Each registrant must: "Have in his possession, whenever in possession of a firearm, the registration certificate for such firearm, and exhibit the same upon the demand of a member of the Metropolitan Police Department, or other law enforcement officer."  § 7-2502.08(3).

31.   "In addition to any other criminal or civil sanctions that may be imposed, including section 706 [*sic*]," a registrant is subject to the following for any "violation or omission of the duties, obligations, or requirements imposed by section 208 [D.C. Code § 7-2502.08]": (1) for the first instance, a civil fine of $100; (2) for the second instance, a civil fine of $500, revocation of the registration, and prohibition of possessing or registering a firearm for five years; and (3) for the third instance, a civil fine of $500, revocation of the registration, and a permanent prohibition on possessing or registering any firearm.  § 7-2502.09(b).

32.   Thus, a registrant may be penalized and may lose his or her Second Amendment rights altogether for failure to notify the Chief of any change, *e.g.*, in the registrant's current business or occupation, or in the intended use of the firearm, or for failure to exhibit a registration certificate upon the demand of a law enforcement officer, as required by § 7-2502.08.

33.   In addition, if a registration expires and is inadvertently not renewed, such as due to

sickness or travel, possession of an unregistered firearm is punishable by one year's imprisonment and a $1,000 fine, and by five year's imprisonment and a $5,000 fine for a second offense.   § 7-2507.06.

34.   To exemplify the above onerous requirements, plaintiff Mark Snyder wished to purchase a Savage BTVS .22 Mag. rimfire caliber bolt action target rifle.   On January 20, 2009, he was advised of the registration requirements by the Metropolitan Police Department (MPD).   The next day he ordered and paid for the rifle from a federally licensed firearms dealer.   On February 2, he received the registration paperwork from the police, filled it out and sent it to the dealer, who returned it on February 11.   On February 17, he attempted to deliver his registration paperwork, photographs, and mental health form to the MPD, which informed him that he would first have to take the firearms course with four hours of classroom and one hour of range training.   He then placed telephone calls to persons on the District's certified instructors roster and left messages.   On February 19, at the MPD, he took the required written test, submitted fingerprints, completed the mental health form, and paid the fees.   On February 21, he paid $125 and took the D.C.-approved course consisting of four hours of class and one hour of range time.   Even though he was only attempting to register a bolt action rifle, the D.C.-approved course consisted of handgun training. On February 25, he called the MPD to learn that his registration was approved and proceeded to the MPD to pick up the registration papers.   He subsequently returned to the federally licensed firearm dealer, which conducted a records check on him for criminal convictions, mental disability, or other prohibited category under the National Instant Background Check System (NICS), and then transferred the rifle to him.

35.   Plaintiffs have been subjected to the above registration requirements in the past and will

continue to be subjected to them in the future, causing them to incur expenses, to suffer burdens, and to cost them time merely in order to exercise the constitutional right to keep and bear arms.

### Prohibition of Commonly-Possessed Pistols Not on the California Roster

36. "[A] pistol that is not on the California Roster of Handguns Certified for Sale, (also known as the California Roster of Handguns Determined Not to be Unsafe), pursuant to California Penal Code § 12131, as of January 1, 2009, may not be manufactured, sold, given, loaned, exposed for sale, transferred, or imported into the District of Columbia." Act § 504(a).

37. "[A] pistol that is not on the California Roster of Handguns Certified for Sale as of January 1, 2009, may not be owned or possessed within the District of Columbia unless that pistol was lawfully owned and registered prior to January 1, 2009." Act § 504(b).

38. "A registration certificate shall not be issued for a: . . . (5) An unsafe firearm prohibited under section 504 . . . ." D.C. Code § 7-2502.02(a)(5). However, § 504 does not refer to any "unsafe firearm," and instead refers to pistols that are "determined not to be unsafe" pursuant to California Penal Code § 12131.

39. No State in the United States, including California, criminalizes ownership or possession of any pistol that is not on the California Roster of Handguns Certified for Sale. Pistols that are not on the California Roster are commonly owned and possessed throughout the United States, including in California. The District stands alone in criminalizing the ownership and possession of any pistol that is not on the California Roster.

40. No State in the United States criminalizes the sale, giving, transfer, or import of a pistol on the California Roster, except that California makes it a misdemeanor punishable by imprisonment for not more than one year. Ca. Penal Code § 12125(a).

9

41. To have a pistol listed on the said California Roster, its manufacturer must undertake costly application and testing procedures and must pay costly renewal fees annually. Ca. Penal Code § 12125 *et seq.*; Ca. Dep't of Justice Regs. for Laboratory Certification & Handgun Testing Programs. The requirement of annual renewal fees for firearms that have already been tested and approved demonstrates that the California Roster is a retail tax and licensing regimen and not a list of "safe" handguns.

42. Manufacturers may avoid these efforts and costs by not submitting their pistols for listing on the California Roster and not marketing them in that State. Manufacturers do not submit discontinued models of pistols for listing in the California Roster; such models may have been manufactured in large quantities for decades and many are possessed by the public.

43. On or about February 17, 2009, plaintiff Jordan submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Smith & Wesson Model 59, 9mm caliber pistol, to be used for "personal protection, sport and recreation." By letter dated February 18, 2009, the Metropolitan Police notified Jordan that the pistol is unregisterable because: "The listed weapon is not on the California Roster of Handguns Certified for Sale as required by D.C. Code 7-2505.04."

44. The California Roster, which was first created in 2001, includes only currently-produced pistols submitted by manufacturers. Production of the Model 59 pistol was discontinued in or about 1980 and was thus never submitted for inclusion on the California Roster. The Model 59 pistol has the same safety features and design characteristics as later Smith & Wesson models that are on the California Roster.

45. Many used firearms are less expensive than new ones and are thus more affordable by

10

low-income persons.  Many models of used pistols are not on the California Roster because such models were no longer manufactured at the beginning of the California Roster in 2001 or when new requirements became effective in 2006 and 2007.  The Act thus prohibits less expensive used pistols just because they are not on the California Roster, which may be the only pistols affordable by poor persons.

46.  The Act exempts from the above requirements "Pistols that are designed expressly for use in Olympic target shooting events" (which are very expensive) and "Certain single action revolvers," both "as defined by rule."  § 504(e)(3) & (4).  The Act does not exempt pistols used in other sporting events, in hunting, or for self defense.  The Act does not exempt single-shot pistols, although such pistols are exempted in California Penal Code § 12133 and for that reason do not appear on the California Roster.

47.  The Chief is authorized "to prescribe by rule the firearms permissible pursuant to subsection (e) of this section."  § 504(f).  No criteria for such rule are specified.

**Prohibition of Commonly-Possessed Firearms Denigrated as "Assault Weapons"**

48.  The Act prohibits possession of a wide array of commonly-possessed rifles, shotguns, and pistols which it pejoratively and incorrectly calls "assault weapons."  "A registration certificate shall not be issued for a: . . . (6) An assault weapon . . . ."  D.C. Code § 7-2502.02(a)(6).  "Assault weapon" is defined to include numerous semiautomatic firearms with specified model names and others with certain generic features.  § 7-2501.01(3A)(A)(I).  They include:

49.  *"(I) All of the following specified rifles:"*, following which are a long list of named rifles, such as "Colt AR-15 series" and "Armalite AR-180."  *"(VIII) All other models within a series that are variations, with minor differences, of those models listed in subparagraph (A) of this paragraph,*

11

*regardless of the manufacturer . . . .*"   The Act does not define "series," "variations," or "minor differences."

50.   The above-referenced "AR-15 series" and its "variations" include rifles that are widely used in the Civilian Marksmanship Program (CMP), which is controlled by the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety.   P.L. 105-225, 112 Stat. 1253, 1335 (1998).   The CMP functions "(1) to instruct citizens of the United States in marksmanship; [and] (2) to promote practice and safety in the use of firearms . . . ."   112 Stat. at 1337.

51.   On or about March 19, 2009, plaintiff Heller submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Bushmaster XM-15-E2S, .223 caliber, rifle, "For use in the Civilian Marksmanship Program, kept in my home."   By letter dated March 19, 2009, the Metropolitan Police notified Heller that the rifle is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

52.   On or about February 17, 2009, plaintiff Jordan submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for an Armalite AR-180 .223 caliber semiautomatic rifle, to be used for "personal protection."   By letter dated February 18, 2009, the Metropolitan Police notified Jordan that the rifle is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

53.   "Assault weapon"is further defined as:   *"(II) All of the following specified pistols:",* following which are a list of named pistols beginning with "UZI."   UZI is the first name of the famed

Jewish firearm designer Uzi Gal, and is not the name of any specific model with any specific features. The District thus purports to prohibit a firearm based solely on the name of the designer without regard to any characteristics of the firearm.

54. On or about March 19, 2009, plaintiff Heller submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Baby Eagle UZI, 9mm semiautomatic pistol, for "self-defense in the home." This is an ordinary pistol similar to other 9mm pistols. By letter dated March 19, 2009, the Metropolitan Police notified Heller that the pistol is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

55. "Assault weapon" is further defined as: *"(III) All of the following specified shotguns:"*, following which are a list of named shotguns.

56. "Assault weapon" is further defined as: *"(IV) A semiautomatic, [sic] rifle that has the capacity to accept a detachable magazine and any one of the following:"*, following which are generic listings such as "(aa) A pistol grip that protrudes conspicuously beneath the action of the weapon; (bb) A thumbhole stock; (cc) A folding or telescoping stock . . . ." Such rifles are commonly possessed for lawful purposes throughout the United States.

57. Before passage of the Act, plaintiff Carter ordered and paid for an LMT Defender 2000 .223 caliber semiautomatic rifle for $1,806.94. Upon the rifle being shipped to and received by a licensed firearms dealer, on or about February 24, 2009, Carter submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for the rifle for "recreational activity, NRA range." By letter dated February 24, 2009, the Metropolitan Police notified Carter that

the rifle is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01." Such determination was made on the basis that the rifle has a pistol grip that protrudes conspicuously beneath the action of the weapon and a telescoping stock.

58. "Assault weapon" is further defined as: *"(V) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following:"*, following which are generic listings such as "A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer," and "The capacity to accept a detachable magazine at some location outside of the pistol grip . . . ." The former would include threading for target-style barrel weights or muzzle brakes to reduce recoil.

59. "Assault weapon" is further defined as: *"(VI) A semiautomatic shotgun that has both of the following:"*, including certain stock and grip features.

60. "Assault weapon" is further defined as: *"(VII) A semiautomatic shotgun that has the ability to accept a detachable magazine."* Having a detachable magazine allows for safe unloading of a shotgun.

61. The term "assault weapon" is also defined to include: *"Any firearm that the Chief may designate as an assault weapon by rule, based on a determination that the firearm would reasonably pose the same or similar danger to the health, safety, and security of the residents of the District as those weapons enumerated in this paragraph."* § 7-2501.01(3A)(A)(iii). This empowers the Chief to ban any firearm of any kind whatever without regard to any defined feature, or to ban all firearms simply by designating them with the label "assault weapon."

62. Excluded from the term "assault weapon" are a list of pistols "designed expressly

for use in Olympic target shooting events, sanctioned by the International Olympic Committee and by USA Shooting, the national governing body for international shooting competition in the United States," and "new models of competitive pistols" exempted by the Chief "based either on recommendations by USA Shooting consistent with the regulations contained in the USA Shooting Official Rules or on the recommendation or rules of any other organization that the Chief considers relevant." § 7-2501.01(3A)(B), (C).  No exemption exists for pistols designed for other types of target shooting events, hunting, or self defense.

### Prohibition of Commonly-Possessed Magazines for Firearms

63.   The Act enacted § 7-2506.01(b), which provides: "No person in the District shall possess, sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm."  That term is defined as any magazine or other device that "has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition."  Violation is punishable by a $1,000 fine and one year in prison.  § 7-2507.06.

64.   Magazines that have a capacity of more than 10 rounds of ammunition are commonly possessed by law-abiding citizens throughout the United States for self defense, target shooting, hunting, and other lawful purposes.  Such magazines would be useful for militia purposes.  Many firearms are designed for and sold with magazines that hold more than 10 rounds.

65.   The need for and usefulness of magazines holding more than 10 rounds for lawful defense of self and others is demonstrated by the fact that they are issued to the police.  In 1989, the District Metropolitan Police Department adopted the Glock 17 as its service pistol, magazines for which hold 17 rounds, and later adopted the Glock 19, magazines for which hold 15 rounds.

66.   On or about March 19, 2009, plaintiff Heller submitted to the Metropolitan Police

Department an Application for Firearms Registration Certificate for a Sig Sauer P226 9mm pistol. On the form under "No. of Shots" is written the number "15," which means that the magazine has a capacity of 15 rounds of ammunition. The intended use of the firearm is specified as "self-defense in the home." By letter dated March 19, 2009, the Metropolitan Police disapproved the application for the following reason: "Unregisterable firearm (15 round ammunition capacity is defined as a 'large capacity ammunition feeding device' and exceeds 10 rounds as required by D.C. Code 7-2506.01(b))."

67. Administration and enforcement of the provisions at issue are by agents and employees of the District of Columbia under the supervision of defendant Fenty. As a proximate cause of the administration and enforcement of above provisions of the Act as aforesaid, plaintiffs have been and will continue to be subjected to irreparable harm.

## COUNT ONE

### (Unduly Burdensome Registration Requirements)

68. Paragraphs 1 through 67 are realleged and incorporated herein by reference.

69. The District's onerous firearm registration, expiration, and re-registration requirements, both singly and as a whole, infringe on the constitutional right of the people, including plaintiffs, to keep and bear arms and unduly burden exercise of their Second Amendment rights.

70. Plaintiffs are subject to various prohibitions in the federal Gun Control Act, 18 U.S.C. § 921 *et seq*., as well as the D.C. Code, both of which forbid dangerous categories of persons from possession of firearms. To obtain firearms, plaintiffs are subject to record checks under the National Instant Criminal Background Check System (NICS), which accesses records of criminal convictions and indictments, mental disabilities, illegal alien status, and other prohibited categories. These

provisions of law are more than adequate to ensure that plaintiffs are eligible lawfully to exercise their constitutional right to keep and bear arms.

71.  Plaintiffs Heller, Jordan, Carter, and Snyder have been and will continue to be subjected to the following unnecessary, arbitrary, and capricious requirements, in violation of said rights:

a.  The duty to register for the mere possession of a firearm, with severe criminal penalties for violation.  D.C. Code §§ 7-2502.01(a), 7-2507.06.

b.  The duty to demonstrate knowledge concerning the use, handling, and storage of firearms.  § 7-2502.03(a)(10).

c.  The requirement to have vision qualifying one for a driver's license.  § 7-2502.03(a)(11).

d.  The firearms training or safety course or class requiring one hour of firing training at a firing range and four hours of classroom instruction.  § 7-2502.03(a)(13)(A).

e.  The duty to report one's business or occupation, intended use of each firearm, where each firearm will be kept, and other information determined by the Chief.  § 7-2502.03(b).

f.  Submission of a pistol for a ballistics identification procedure and payment of any fee the Chief deems reasonable.  § 7-2502.03(d).

g.  The prohibition on registration of more than one pistol per 30 days.  § 7-2502.03(e).

h.  Fingerprints, photographs, and personal appearance of the applicant with the firearm sought to be registered. § 7-2502.04.

17

i. The registration fee established by the Mayor.  § 7-2502.05(b).

j.  The expiration of registration certificates after three years and requirement of renewal, including the charging of a fee.  § 207a(a), (b), (f) of the Act.

k. The duty to submit to a background check once every 6 years.  Act § 207a(d).

l.  The duty to exhibit the registration certificate upon the demand of a member of the Metropolitan Police Department, or other law enforcement officer, without regard to the basis for such demand.  § 7-2502.08(3).

m.   Subjecting registrants to fines, revocations of registration, and prohibitions on possession of firearms for violation or omission of § 7-2502.08.  § 7-2502.09(b).

72.  Accordingly, the above provisions, individually and collectively, and facially and as applied, unduly burden, impede, and infringe on the Second Amendment right of the people, including plaintiffs, to keep and bear arms and are void.

## COUNT TWO

### (Prohibition on Commonly-Possessed Firearms and Magazines)

73.  Paragraphs 1 through 72 are realleged and incorporated herein by reference.

74.  The District prohibits three classes of items which are commonly possessed by law-abiding persons throughout the United States for lawful purposes: pistols that are not on the California Roster of Handguns Certified for Sale; firearms the District pejoratively calls "assault weapons"; and magazines that have the capacity to accept more than 10 rounds of ammunition.

75.  As set out above, the District denied an application by plaintiff Jordan to register a pistol

because it is not on the California Roster; denied applications by plaintiffs Heller, Jordan, and Carter to register rifles and a pistol because the District denigrates them as "assault weapons"; and denied an application by plaintiff Heller to register a pistol because it has a magazine which holds more than ten rounds of ammunition.

76.  Accordingly, the following provisions facially and as applied infringe on the right of the people, including plaintiffs, to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution: § 504 of the D.C. Firearms Registration Amendment Act of 2008, which prohibits pistols not on the California Roster, and D.C. Code § 7-2502.02(5), which prohibits registration of such pistols; D.C. Code § 7-2502.02(6), which prohibits registration of an "assault weapon"; and D.C. Code § 7-2506.01(b), which prohibits possession, sale, and transfer of an ammunition feeding device with a capacity of more than ten rounds.

## COUNT THREE

### (Provisions at Issue Are Not "Usual and Reasonable Police Regulations")

77.  Paragraphs 1 through 76 are realleged and incorporated herein by reference.

78.  D.C. Code § 1-303.43, enacted by Congress and entitled "Regulations relative to firearms, explosives, and weapons," provides:

> The Council of the District of Columbia is hereby authorized and empowered to make, and the Mayor of the District of Columbia is hereby authorized and empowered to enforce, all such usual and reasonable police regulations, in addition to those already made under §§ 1-303.01 to 1-303.03 as the Council may deem necessary for the regulation of firearms,  projectiles, explosives, or weapons of any kind in the District of Columbia.

79.  The provisions of the D.C. Code alleged to infringe on Second Amendment rights in Counts One, Two, and Three above are not "usual and reasonable police regulations . . . necessary

for the regulation of firearms," nor could the Council reasonably deem them such.  No such provisions exist in the laws of the United States or of any of the States, with the exception of a very few number of States in regard to certain provisions only.  Instead, such provisions are most unusual and are unreasonable.

80.  Accordingly, such provisions are not authorized by § 1-303.43, are beyond the District's power to enact, and are void.

WHEREFORE, plaintiffs pray that the Court:

1.  Enter a declaratory judgment that the following provisions (1) infringe on the right of the people to keep and bear arms, in violation of the Second Amendment to the United States Constitution, and (2) are not authorized by D.C. Code § 1-303.43 and are void: the unduly burdensome registration and re-registration requirements as alleged in Count One; the prohibitions on pistols that are not on the California Roster, on "assault weapons," and on magazines holding more than ten rounds as alleged in Count Two.

2.  Issue preliminary and permanent injunctions enjoining defendants District of Columbia, Adrian M. Fenty, and their officers, agents, and employees from administration and enforcement of the provisions alleged herein to violate the Second Amendment and D.C. Code § 1-303.43.

3. In the alternative, issue preliminary and permanent injunctions and a writ of mandamus requiring defendants District of Columbia, Adrian M. Fenty, and their officers, agents, and employees to register pistols which are not on the California Roster, firearms which the District defines as "assault weapons," and firearms with magazines holding more than ten rounds.

4.  Order defendants to refund and reimburse to plaintiffs all fees, costs, and expenses paid by plaintiffs arising out of the District's firearm registration requirements.

5.  Grant such other and further relief as may be proper.

6.  Award plaintiff attorney's fees and costs.

Date: March 25, 2009

Respectfully Submitted,

Dick Anthony Heller, Absalom F. Jordan, Jr.,
William Carter, Mark Snyder,
Plaintiffs

By Counsel

/s/ Stephen P. Halbrook
STEPHEN P. HALBROOK, D.C. Bar No. 379799


 /s/ Richard E. Gardiner
RICHARD E. GARDINER, D.C. Bar No. 386915

3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

Attorneys for Plaintiffs