**Appendix**

| D.C. Official Code § 7-2501.01(3A)(A). | D.C. Official Code § 7-2502.01. Registration requirements. |
|---|---|
| "Assault weapon" defined as<br>(i) The following semiautomatic firearms:<br>  (I) All of the following specified rifles:<br>    (aa) All AK series including, but not limited to, the models identified as follows:<br>      (1) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S;<br>      (2) Norinco (all models);<br>      (3) Poly Technologies (all models);<br>      (4) MAADI AK47 and ARM; and<br>      (5) Mitchell (all models).<br>    (bb) UZI and Galil;<br>    (cc) Beretta AR-70;<br>    (dd) CETME Sporter;<br>    (ee) Colt AR-15 series;<br>    (ff) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR110 C;<br>    (gg) Fabrique Nationale FAL, LAR, FNC, 308 Match, and Sporter;<br>    (hh) MAS 223.<br>    (ii) HK-91, HK-93, HK-94, and HK-PSG-1;<br>    (jj) The following MAC types:<br>      (1) RPB Industries Inc. sM10 and sM11; and<br>      (2) SWD Incorporated M11;<br>    (kk) SKS with detachable magazine;<br>    (ll) SIG AMT, PE-57, SG 550, and SG 551;<br>    (mm) Springfield Armory BM59 and SAR-48;<br>    (nn) Sterling MK-6;<br>    (oo) Steyer AUG, Steyr AUG;<br>    (pp) Valmet M62S, M71S, and M78S;<br>    (qq) Armalite AR-180;<br>    (rr) Bushmaster Assault Rifle;<br>    (ss) Calico --900;<br>    (tt) J&R ENG --68; and<br>    (uu) Weaver Arms Nighthawk.<br>  (II) All of the following specified pistols:<br>    (aa) UZI;<br>    (bb) Encom MP-9 and MP-45;<br>    (cc) The following MAC types:<br>      (1) RPB Industries Inc. sM10 and sM11;<br>      (2) SWD Incorporated -11;<br>      (3) Advance Armament Inc. --11; and<br>      (4) Military Armament Corp. Ingram M-11;<br>    (dd) Intratec TEC-9 and TEC-DC9;<br>    (ee) Sites Spectre;<br>    (ff) Sterling MK-7;<br>    (gg) Calico M-950; and<br>    (hh) Bushmaster Pistol.<br>  (III) All of the following specified shotguns:<br>    (aa) Franchi SPAS 12 and LAW 12; and<br>    (bb) Striker 12. The Streetsweeper type S/S Inc. SS/12; | (a) Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm. A registration certificate may be issued:<br><br>  (1) To an organization if:<br><br>    (A) The organization employs at least 1 commissioned special police officer or employee licensed to carry a firearm whom the organization arms during the employee's duty hours; and<br><br>    (B) The registration is issued in the name of the organization and in the name of the president or chief executive officer of the organization;<br><br>  (2) In the discretion of the Chief of Police, to a police officer who has retired from the Metropolitan Police Department; or<br><br>  (3) In the discretion of the Chief of Police, to the Fire Marshal and any member of the Fire and Arson Investigation Unit of the Fire Prevention Bureau of the Fire Department of the District of Columbia, who is designated in writing by the Fire Chief, for the purpose of enforcing the arson and fire safety laws of the District of Columbia.<br><br>(b) Subsection (a) of this section shall not apply to:<br><br>  (1) Any law enforcement officer or agent of the District or the United States, or any law enforcement officer or agent of the government of any state or subdivision thereof, or any member of the armed forces of the United States, the National Guard or organized reserves, when such officer, agent, or member is authorized to possess such a firearm or device while on duty in the performance of official authorized functions;<br><br>  (2) Any person holding a dealer's license; provided, that the firearm or destructive device is:<br><br>    (A) Acquired by such person in the normal conduct of business;<br><br>    (B) Kept at the place described in the dealer's license; and<br><br>    (C) Not kept for such person's private use or |

(IV) A semiautomatic, rifle that has the capacity to accept a detachable magazine and any one of the following:

(aa) A pistol grip that protrudes conspicuously beneath the action of the weapon;

(bb) A thumbhole stock;

(cc) A folding or telescoping stock;

(dd) A grenade launcher or flare launcher;

(ee) A flash suppressor; or

(ff) A forward pistol grip;

(V) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following:

(aa) A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer;

(bb) A second handgrip;

(cc) A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning his or her hand, except a slide that encloses the barrel; or

(dd) The capacity to accept a detachable magazine at some location outside of the pistol grip;

(VI) A semiautomatic shotgun that has one or more of the following:

(aa) A folding or telescoping stock;

(bb) A pistol grip that protrudes conspicuously beneath the action of the weapon;

(cc) A thumbhole stock; or

(dd) A vertical handgrip; and

(VII) A semiautomatic shotgun that has the ability to accept a detachable magazine; and

(VIII) All other models within a series that are variations, with minor differences, of those models listed in subparagraph (A) of this paragraph, regardless of the manufacturer;

(ii) Any shotgun with a revolving cylinder; provided, that this sub-subparagraph shall not apply to a weapon with an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition; and

(iii) Any firearm that the Chief may designate as an assault weapon by rule, based on a determination that the firearm would reasonably pose the same or similar danger to the health, safety, and security of the residents of the District as those weapons enumerated in this paragraph.

protection, or for the protection of his business;

(3) With respect to firearms, any nonresident of the District participating in any lawful recreational firearm-related activity in the District, or on his way to or from such activity in another jurisdiction; provided, that such person, whenever in possession of a firearm, shall upon demand of any member of the Metropolitan Police Department, or other bona fide law enforcement officer, exhibit proof that he is on his way to or from such activity, and that his possession or control of such firearm is lawful in the jurisdiction in which he resides; provided further, that such weapon shall be transported in accordance with § 22-4504.02; or.

(4) Any person who temporarily possesses a firearm registered to another person while in the home of the registrant; provided, that the person is not otherwise prohibited from possessing firearms and the person reasonably believes that possession of the firearm is necessary to prevent imminent death or great bodily harm to himself or herself.

**D.C. Official Code § 7-2502.02. Registration of certain firearms prohibited.**

(a) A registration certificate shall not be issued for a:

(1) Sawed-off shotgun;

(2) Machine gun;

(3) Short-barreled rifle;

(4) Pistol not validly registered to the current registrant in the District prior to September 24, 1976, except that the prohibition on registering a pistol shall not apply to:

(A) Any organization that employs at least one commissioned special police officer or other employee licensed to carry a firearm and that arms the employee with a firearm during the employee's duty hours;

(B) A police officer who has retired from the Metropolitan Police Department; or

(C) Any person who seeks to register a pistol for use in self-defense within that person's home;

(5) An unsafe firearm prohibited under § 7-2505.04;

(6) An assault weapon; or

(7) A .50 BMG rifle.

**D.C. Official Code § 7-2502.03. Qualifications for registration; information required for registration.**

(a) No registration certificate shall be issued to any person (and in the case of a person between the ages of 18 and 21, to the person and his signatory parent or guardian) or organization unless the Chief determines that such person (or the president or chief executive in the case of an organization):

(1) Is 21 years of age or older; provided, that the Chief may issue to an applicant between the ages of 18 and 21 years old, and who is otherwise qualified, a registration certificate if the application is accompanied by a notarized statement of the applicant's parent or guardian:

(A) That the applicant has the permission of his parent or guardian to own and use the firearm to be registered; and

(B) The parent or guardian assumes civil liability for all damages resulting from the actions of such applicant in the use of the firearm to be registered; provided further, that such registration certificate shall expire on such person's 21st birthday;

(2) Has not been convicted of a crime of violence, weapons offense, or of a violation of this unit;

(3) Is not under indictment for a crime of violence or a weapons offense;

(4) Has not been convicted within 5 years prior to the application of any:

(A) Violation in any jurisdiction of any law restricting the use, possession, or sale of any narcotic or dangerous drug;

(B) A violation of § 22-407, regarding threats to do bodily harm, or § 22-404, regarding assaults and threats, or any similar provision of the law of any other jurisdiction so as to indicate a likelihood to make unlawful use of a firearm;

(C) Two or more violations of § 50-2201.05(b) or, in any other jurisdiction, any law restricting driving under the influence of alcohol or drugs; or

(D) Intrafamily offense;

(5) Within the 5-year period immediately preceding the application, has not been acquitted of any criminal charge by reason of insanity or has not been adjudicated a chronic alcoholic by any court; provided, that this paragraph shall not apply if such person shall present to the Chief, with the application, a medical certification

**D.C. Official Code § 7-2502.04. Fingerprints and photographs of applicants; application in person required.**

(a) The Chief may require any person applying for a registration certificate to be fingerprinted if, in his judgment, this is necessary to conduct an efficient and adequate investigation into the matters described in § 7-2502.03 and to effectuate the purpose of this unit; provided, that any person who has been fingerprinted by the Chief within 6 years prior to submitting the application need not, in the Chief's discretion, be fingerprinted again if he offers other satisfactory proof of identity.

(b) Each applicant, other than an organization, shall submit with the application 2 full-face photographs of himself, 1 3/4 by 1 7/8 inches in size which shall have been taken within the 30-day period immediately preceding the filing of the application.

(c) Every applicant (or in the case of an organization, the president or chief executive, or a person authorized in writing by him), shall appear in person at a time and place prescribed by the Chief, and may be required to bring with him the firearm for which a registration certificate is sought, which shall be transported in accordance with § 22-4504.02.

**D.C. Official Code § 7-2502.05. Application signed under oath; fees.**

(a) Each applicant (the president or chief executive in the case of an organization) shall sign an oath or affirmation attesting to the truth of all the information required by §§ 7-2502.03 or § 7-2502.07a.

(b) Each application required by this subchapter shall be accompanied by a nonrefundable fee to be established by the Mayor; provided, that such fee shall, in the judgment of the Mayor, reimburse the District for the cost of services provided under this subchapter.

**D.C. Official Code § 7-2502.07a. Expiration and renewal registration certificate.**

(a) Registration certificates shall expire 3 years after the date of issuance unless renewed in accordance with this section for subsequent 3-year periods.

(b) A registrant shall be eligible for renewal of registration of a firearm if the registrant continues to meet all of the initial registration requirements set forth in § 7-2502.03 and follows any procedures the Chief may establish by rule.

(c) For each renewal, a registrant shall submit a statement to the Metropolitan Police Department attesting to:

indicating that the applicant has recovered from such insanity or alcoholic condition and is capable of safe and responsible possession of a firearm;

(6) Within the 5 years immediately preceding the application, has not been voluntarily or involuntarily committed to any mental hospital or institution; provided, that this paragraph shall not apply, if such person shall present to the Chief, with the application, a medical certification that the applicant has recovered from whatever malady prompted such commitment;

(6A) Within the 5 years immediately preceding the application, has not had a history of violent behavior.

(7) Does not appear to suffer from a physical defect which would tend to indicate that the applicant would not be able to possess and use a firearm safely and responsibly;

(8) Has not been adjudicated negligent in a firearm mishap causing death or serious injury to another human being;

(9) Is not otherwise ineligible to possess a pistol under § 22-4503;

(10) Has not failed to demonstrate satisfactorily a knowledge of the laws of the District of Columbia pertaining to firearms and, in particular, the safe and responsible use, handling, and storage of the same in accordance with training, tests, and standards prescribed by the Chief; provided, that once this determination is made with respect to a given applicant for a particular type of firearm, it need not be made again for the same applicant with respect to a subsequent application for the same type of firearms; provided, further, that this paragraph shall not apply with respect to any firearm reregistered pursuant to § 7-2502.06;

(11) Has vision better than or equal to that required to obtain a valid driver's license under the laws of the District of Columbia; provided, that current licensure by the District of Columbia, of the applicant to drive, shall be prima facie evidence that such applicant's vision is sufficient and; provided further, that this determination shall not be made with respect to persons applying to reregister any firearm pursuant to § 7-2502.06;

(12)(A) Has not been the respondent in an intrafamily proceeding in which a civil protection order was issued against the applicant pursuant to § 16-1005; provided, that an applicant who has been the subject of such an order shall be eligible for registration if the applicant has submitted to the Chief a certified court record establishing that the order has expired or has been rescinded for a period of 5 years or more; or

(1) Possession of the registered firearm;

(2) The registrant's address; and

(3) The registrant's continued compliance with all registration requirements set forth in § 7-2502.03.

(d) A registrant shall submit to a background check once every 6 years to confirm that the registrant continues to qualify for registration under § 7-2502.03.

(e)(1) The Metropolitan Police Department shall mail a renewal notice to each registrant at least 90 days prior to the expiration of the registration certificate.

(2) A renewal application shall be received by the Metropolitan Police Department at least 60 days prior to the expiration of the current registration certificate to ensure timely renewal.

(3) It is the duty of the registrant to timely renew a registration before its expiration date and a failure of the Metropolitan Police Department to mail or the registrant to receive the notice required under paragraph (1) of this subsection shall not prevent a registration from expiring as of that date.

(f) An applicant for the renewal of a registration certificate may be charged a reasonable fee to cover the administrative costs incurred by the Metropolitan Police Department in connection with the renewal.

(g) The Chief shall establish, by rule, a method for conducting the renewal of registrations for all firearms registered prior to March 31, 2009. The renewals of all firearms registered prior to March 31, 2009, shall be completed within 3 years of March 31, 2009.

**D.C. Official Code § 7-2502.08. Duties of registrants.**

Each person and organization holding a registration certificate, in addition to any other requirements imposed by this unit, or the acts of Congress, shall:

(1) Notify the Chief in writing of:

(A) The loss, theft, or destruction of the registration certificate or of a registered firearm (including the circumstances, if known) immediately upon discovery of such loss, theft, or destruction;

(B) A change in any of the information appearing on the registration certificate or required by § 7-2502.03;

(C) The sale, transfer or other disposition of the

4

(B) Has not been the respondent in a proceeding in which a foreign protection order, as that term is defined in § 16-1041, was issued against the applicant; provided, that an applicant who has been the subject of such an order shall be eligible for registration if the applicant has submitted to the Chief a certified court record establishing that the order has expired or has been rescinded for a period of 5 years;

(13)(A) Has completed a firearms training or safety course or class conducted by a state-certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least one hour of firing training at a firing range and a total of at least 4 hours of classroom instruction.

(B) An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph.

(14) Has not been prohibited from possessing or registering a firearm pursuant to § 7-2502.09(b).

(b) Every person applying for a registration certificate shall provide on a form prescribed by the Chief:

(1) The full name or any other name by which the applicant is known;

(2) The present address and each home address where the applicant has resided during the 5-year period immediately preceding the application;

(3) The present business or occupation and any business or occupation in which the applicant has engaged during the 5-year period immediately preceding the application and the addresses of such businesses or places of employment;

(4) The date and place of birth of the applicant;

(5) The sex of the applicant;

(6) Whether (and if so, the reasons) the District, the United States or the government of any state or subdivision of any state has denied or revoked the applicant's license, registration certificate, or permit pertaining to any firearm;

(7) A description of the applicant's role in any mishap involving a firearm, including the date, place, time,

firearm not less than 48 hours prior to delivery, pursuant to such sale, transfer or other disposition, including:

(i) Identification of the registrant, the firearm and the serial number of the registration certificate;

(ii) The name, residence, and business address and date of birth of the person to whom the firearm has been sold or transferred; and

(iii) Whether the firearm was sold or how it was otherwise transferred or disposed of.

(2) Return to the Chief, the registration certificate for any firearm which is lost, stolen, destroyed, or otherwise transferred or disposed of, at the time he notifies the Chief of such loss, theft, destruction, sale, transfer, or other disposition.

(3) Have in his possession, whenever in possession of a firearm, the registration certificate for such firearm, and exhibit the same upon the demand of a member of the Metropolitan Police Department, or other law enforcement officer.

**D.C. Official Code § 7-2505.04. Prohibition on sale, transfer, ownership, or possession of designated unsafe pistol.**

(a) Except as provided in subsections (c), (d), or (e) of this section, beginning January 1, 2009, a pistol that is not on the California Roster of Handguns Certified for Sale, (also known as the California Roster of Handguns Determined Not to be Unsafe), pursuant to California Penal Code § 12131, as of January 1, 2009, may not be manufactured, sold, given, loaned, exposed for sale, transferred, or imported into the District of Columbia.

(b) Except as provided in subsection (e) of this section, beginning January 1, 2009, a pistol that is not on the California Roster of Handguns Certified for Sale as of January 1, 2009, may not be owned or possessed within the District of Columbia unless that pistol was lawfully owned and registered prior to January 1, 2009.

(c) Except as provided in subsection (e) of this section, a District of Columbia resident who is the owner of a pistol lawfully registered prior to January 1, 2009, that is not on the California Roster of Handguns Certified for Sale as of January 1, 2009, and who wishes to sell or transfer that pistol after January 1, 2009, may do so only by selling or transferring ownership of the handgun to a licensed firearm dealer.

(d) Except as provided in subsection (e) of this section,

circumstances, and the names of the persons injured or killed;

(8) The intended use of the firearm;

(9) The caliber, make, model, manufacturer's identification number, serial number, and any other identifying marks on the firearm;

(10) The name and address of the person or organization from whom the firearm was obtained, and in the case of a dealer, his dealer's license number;

(11) Where the firearm will generally be kept;

(12) Whether the applicant has applied for other registration certificates issued and outstanding;

(13) Such other information as the Chief determines is necessary to carry out the provisions of this unit.

(c) Every organization applying for a registration certificate shall:

(1) With respect to the president or chief executive of such organization, comply with the requirements of subsection (b) of this section; and

(2) Provide such other information as the Chief determines is necessary to carry out the provisions of this unit.

(d) The Chief shall require any registered pistol to be submitted for a ballistics identification procedure and shall establish a reasonable fee for the procedure.

(e) The Chief shall register no more than one pistol per registrant during any 30-day period; provided, that the Chief may permit a person first becoming a District resident to register more than one pistol if those pistols were lawfully owned in another jurisdiction for a period of 6 months prior to the date of the application.

beginning January 1, 2009, a licensed firearm dealer who retains in the dealer's inventory, or who otherwise lawfully acquires, any pistol not on the California Roster of Handguns Certified for Sale as of January 1, 2009, may sell, loan, give, trade, or otherwise transfer the firearm only to another licensed firearm dealer.

(e) This section shall not apply to:

(1) Firearms defined as curios or relics, as defined in 27 C.F.R. § 478.11;

(2) The purchase of any firearm by any law enforcement officer or agent of the District or the United States;

(3) Pistols that are designed expressly for use in Olympic target shooting events, as defined by rule;

(4) Certain single-action revolvers, as defined by rule;

(5) The sale, loan, or transfer of any firearm that is to be used solely as a prop during the course of a motion picture, television, or video production by an authorized participant in the course of making that production or event or by an authorized employee or agent of the entity producing that production or event;

(6) The temporary transfer of a lawfully owned and registered firearm for the purposes of cleaning, repair, or servicing of the firearm by a licensed firearm dealer; or

(7) The possession of a firearm by a non-resident of the District of Columbia while temporarily traveling through the District; provided, that the firearm shall be transported in accordance with § 22-4504.02.

(f) The Chief shall review any additions or deletions to the California Roster of Handguns Certified for Sale at least annually. For purposes of District law, the Chief is authorized to revise, by rule, the roster of handguns determined not to be unsafe prescribed by subsection (a) of this section and to prescribe by rule the firearms permissible pursuant to subsection (e) of this section.

(g) The Chief shall provide to the licensed firearm dealers within the District information about how to obtain a copy of the California Roster of Handguns Certified for Sale and any revisions to it made the Chief.

**D.C. Official Code § 7-2506.01. Persons permitted to possess ammunition.**

(a) No person shall possess ammunition in the District of Columbia unless:

(1) He is a licensed dealer pursuant to subchapter IV of

**D.C. Official Code § 7-2507.06. Penalties.**

Any person convicted of a violation of any provision of this unit shall be fined not more than $1,000 or imprisoned for not more than 1 year, or both; except that:

(1) A person who knowingly or intentionally sells,

this unit;

(2) He is an officer, agent, or employee of the District of Columbia or the United States of America, on duty and acting within the scope of his duties when possessing such ammunition;

(3) He is the holder of the valid registration certificate for a firearm of the same gauge or caliber as the ammunition he possesses; except, that no such person shall possess restricted pistol bullets; or

(4) He holds an ammunition collector's certificate on September 24, 1976.

(b) No person in the District shall possess, sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm. For the purposes of this subsection, the term "large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition. The term "large capacity ammunition feeding device" shall not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

transfers, or distributes a firearm, destructive device, or ammunition to a person under 18 years of age shall be fined not more than $10,000 or imprisoned for not more than 10 years, or both.

(2)(A) Except as provided in subparagraph (B) of this paragraph, any person who is convicted a second time for possessing an unregistered firearm shall be fined not more than $5,000 or imprisoned not more than 5 years, or both.

(B) A person who in the person's dwelling place, place of business, or on other land possessed by the person, possesses a pistol, or firearm that could otherwise be registered, shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

(3) A person convicted of knowingly possessing restricted pistol bullets in violation of § 7-2506.01(3) may be sentenced to imprisonment for a term not to exceed 10 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 1 year and shall not be released from prison or granted probation or suspension of sentence prior to serving the mandatory-minimum sentence, and, in addition, may be fined an amount not to exceed $10,000.

**D.C. Official Code § 7-2507.10. Severability.**

If any provision of this unit or the application thereof to any person or circumstance is held invalid, the remainder of this unit and the application of such provision to other persons not similarly situated or to other circumstances shall not be affected thereby.

**1. Registration/Licensing/Permits/Information Required/Fee/Exhibit on Demand**

| HAW. REV. STAT. ANN. § 134-3. Registration, mandatory, exceptions. | MD. CODE ANN., PUB. SAFETY § 5-118. Firearm application. |
|---|---|
| (a) Every person arriving in the State who brings or by any other manner causes to be brought into the State a firearm of any description, whether usable or unusable, serviceable or unserviceable, modern or antique, shall register the firearm within three days after arrival of the person or of the firearm, whichever arrives later, with the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither a place of business nor residence, the person's place of sojourn. A nonresident alien may bring firearms not otherwise prohibited by law into the State for a continuous period not to exceed ninety days; provided that the person meets the registration requirement of this section and the person possesses:<br>(1) A valid Hawaii hunting license procured under chapter 183D, part II, or a commercial or private shooting preserve | (b) Required information. -- A firearm application shall contain:<br><br>(1) the firearm applicant's name, address, Social Security number, place and date of birth, height, weight, race, eye and hair color, signature, driver's or photographic identification soundex number, occupation, and regulated firearm information for each regulated firearm to be purchased, rented, or transferred;<br><br>(2) the date and time that the firearm applicant delivered the completed firearm application to the prospective seller or transferor; and<br><br>(3) a statement by the firearm applicant under the penalty of perjury that the firearm applicant: |

permit issued pursuant to section 183D-34;

(2) A written document indicating the person has been invited to the State to shoot on private land; or

(3) Written notification from a firing range or target shooting business indicating that the person will actually engage in target shooting.

The nonresident alien shall be limited to a nontransferable registration of not more than ten firearms for the purpose of the above activities.

(b) Every person who acquires a firearm pursuant to section 134-2 shall register the firearm in the manner prescribed by this section within five days of acquisition. The registration shall be on forms prescribed by the attorney general, which shall be uniform throughout the State, and shall include the following information: name of the manufacturer and importer; model; type of action; caliber or gauge; serial number; and source from which receipt was obtained, including the name and address of the prior registrant. If the firearm has no serial number, the permit number shall be entered in the space provided for the serial number, and the permit number shall be engraved upon the receiver portion of the firearm prior to registration. All registration data that would identify the individual registering the firearm by name or address shall be confidential and shall not be disclosed to anyone, except as may be required for processing the registration or as may be required by a law enforcement agency for the lawful performance of its duties or as may be required by order of a court.

**HAW. REV. STAT. ANN. § 134-2. Permits to acquire.**

(a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of a firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequeathed firearm directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section.

(b) The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health

(i) is at least 21 years old;

(ii) has never been convicted of a disqualifying crime;

(iii) has never been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years;

(iv) is not a fugitive from justice;

(v) is not a habitual drunkard;

(vi) is not addicted to a controlled dangerous substance or is not a habitual user;

(vii) has never spent more than 30 consecutive days in a medical institution for treatment of a mental disorder, unless a physician's certificate issued within 30 days before the date of application is attached to the application, certifying that the firearm applicant is capable of possessing a regulated firearm without undue danger to the firearm applicant or to another;

(viii) is not a respondent against whom a current non ex parte civil protective order has been entered under § 4-506 of the Family Law Article;

(ix) if under the age of 30 years at the time of application, has not been adjudicated delinquent by a juvenile court for an act that would be a disqualifying crime if committed by an adult; and

(x) subject to § 5-119 of this subtitle, has completed a certified firearms safety training course that the Police Training Commission conducts without charge or that meets the standards that the Police Training Commission establishes under § 3-207 of this article.

**MD. CODE ANN., PUB. SAFETY § 5-304. Application for permit**

(a) Oath. An application for a permit shall be made under oath.

(b) Fees - In general.

(1) Subject to subsections (c) and (d) of this section, the Secretary may charge a nonrefundable fee payable when an application is filed for a permit.

(2) The fee may not exceed:

(i) $ 75 for an initial application;

(ii) $ 50 for a renewal or subsequent application; and

(iii) $ 10 for a duplicate or modified permit.

(3) The fees under this subsection are in addition to the fees

history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and photograph are already on file with the department, these may be waived.

(c) An applicant for a permit shall sign a waiver at the time of application, allowing the chief of police of the county issuing the permit access to any records that have a bearing on the mental health of the applicant. The permit application form and the waiver form shall be prescribed by the attorney general and shall be uniform throughout the State.

(d) The chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more, or duly accredited official representatives of foreign nations, or duly commissioned law enforcement officers of the State who are aliens; provided that any law enforcement officer who is the owner of a firearm and who is an alien shall transfer ownership of the firearm within forty-eight hours after termination of employment from a law enforcement agency. The chief of police of each county may issue permits to aliens of the age of eighteen years or more for use of rifles and shotguns for a period not exceeding sixty days, upon a showing that the alien has first procured a hunting license under chapter 183D, part II. The chief of police of each county may issue permits to aliens of the age of twenty-one years or more for use of firearms for a period not exceeding six months, upon a showing that the alien is in training for a specific organized sport-shooting contest to be held within the permit period. The attorney general shall adopt rules, pursuant to chapter 91, as to what constitutes sufficient evidence that an alien is in training for a sport-shooting contest. Notwithstanding any provision of the law to the contrary and upon joint application, the chief of police may issue permits to acquire firearms jointly to spouses who otherwise qualify to obtain permits under this section.

(e) The permit application form shall be signed by the applicant and by the issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, or dealers licensed by the United States Department of Justice, or law enforcement officers, or where a license is granted under section 134-9, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that a permit shall be issued or the application denied before the twentieth day from the date of application. Permits issued to acquire any pistol or revolver shall be void unless used within ten days after the date of issue. Permits to acquire a pistol or revolver shall require a separate application and permit for each transaction. Permits issued to acquire any rifle or shotgun shall entitle the permittee to make subsequent purchases of rifles or shotguns for a period of one year from the date of issue without a separate application and permit for each acquisition, subject to the disqualifications under section 134-7 and subject to

authorized under § 5-305 of this subtitle.

(c) Same - Reduction. The Secretary may reduce the fee under subsection (b) of this section accordingly for a permit that is granted for one day only and at one place only.

(d) Same - Exceptions. The Secretary may not charge a fee under subsection (b) of this section to:

(1) a State, county, or municipal public safety employee who is required to carry, wear, or transport a handgun as a condition of governmental employment; or

(2) a retired law enforcement officer of the State or a county or municipal corporation of the State.

(e) Same - Method of payment. The applicant may pay a fee under this section by a personal check, business check, certified check, or money order.

**Mass. Gen. Laws Ann. ch. 140, § 131A. Permits to Purchase, Rent, or Lease Firearm; Penalty; Fee.**

A licensing authority under section one hundred and thirty-one, upon the application of a person qualified to be granted a license thereunder by such authority, may grant to such a person, other than a minor, a permit to purchase, rent or lease a firearm if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will. The colonel of the state police or a person authorized by him, upon the application of a person licensed under section one hundred and thirty-one F, may grant to such licensee, other than a minor, a permit to purchase, rent or lease a firearm, rifle or shotgun, or to purchase ammunition therefor, if it appears that such purchase, rental or lease is for a proper purpose, and may revoke such permit at will. Such permits shall be issued on forms furnished by the executive director of the criminal history systems board, shall be valid for not more than ten days after issue, and a copy of every such permit so issued shall within one week thereafter be sent to the said executive director. The licensing authority may impose such restrictions relative to the caliber and capacity of the firearm to be purchased, rented or leased as he deems proper. Whoever knowingly issues a permit in violation of this section shall be punished by a fine of not less than five hundred nor more than one thousand dollars and by imprisonment for not less than six months nor more than two years in a jail or house of correction. The fee for the permits shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited into the general fund of the commonwealth; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund.

revocation under section 134-13; provided that if a permittee is arrested for committing a felony or any crime of violence or for the illegal sale of any drug, the permit shall be impounded and shall be surrendered to the issuing authority. The issuing authority shall perform an inquiry on an applicant who is a citizen of the United States by using the National Instant Criminal Background Check System before any determination to issue a permit or to deny an application is made. If the applicant is not a citizen of the United States and may be eligible to acquire a firearm under this chapter, the issuing authority shall perform an inquiry on the applicant, by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases, before any determination to issue a permit or to deny an application is made.

(f) In all cases where a pistol or revolver is acquired from another person within the State, the permit shall be signed in ink by the person to whom title to the pistol or revolver is transferred and shall be delivered to the person who is transferring title to the firearm, who shall verify that the person to whom the firearm is to be transferred is the person named in the permit and enter on the permit in the space provided the following information: name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number as applicable. The person who is transferring title to the firearm shall sign the permit in ink and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after transferring the firearm.

In all cases where receipt of a firearm is had by mail, express, freight, or otherwise from sources without the State, the person to whom the permit has been issued shall make the prescribed entries on the permit, sign the permit in ink, and cause the permit to be delivered or sent by registered mail to the issuing authority within forty-eight hours after taking possession of the firearm.

In all cases where a rifle or shotgun is acquired from another person within the State, the person who is transferring title to the rifle or shotgun shall submit, within forty-eight hours after transferring the firearm, to the authority which issued the permit to acquire, the following information, in writing: name of the person who transferred the firearm, name of the person to whom the title to the firearm was transferred; names of the manufacturer and importer; model; type of action; caliber or gauge; and serial number as applicable.

(g) Effective July 1, 1995, no person shall be issued a permit under this section for the acquisition of a pistol or revolver unless the person, at any time prior to the issuance of the permit, has completed:

(1) An approved hunter education course as authorized under section 183D-28;

(2) A firearms safety or training course or class available

**CLEVELAND CODE OF ORD. § 674.05. Handguns; Application; Fee.**

(a) Application for a handgun registration card shall be made in writing by the person claiming to be the owner of the handgun to be registered at any office where identification cards may be issued under Section 674.04. The application shall be accompanied by an application fee of two dollars ($2.00) for each handgun to be registered, which shall be paid into the Treasury of the City, with separate accounting made for it When satisfied that the applicant holds a valid identification card and is not in that class of persons prohibited from holding the same, a registration card shall be issued to the applicant no sooner than three (3) days and no more than sixty (60) days after the date of application.

(b) All registration cards issued under this section shall be entitled "City of Cleveland, Ohio, Handgun Registration Card;" be serially numbered according to a system devised by the Chief of Police; bear date of issue, the name of the Chief of Police, the applicant's name, home address, identification card number, the signature of the applicant; and contain the name, type, caliber, and serial number of the handgun. A copy of each registration card shall be retained by the Chief, together with a copy of the application, which documents shall be maintained on permanent file by the Chief and shall not be deemed a public record nor be disclosed to unauthorized persons.

(c) Any person who sells or otherwise transfers possession of a registered handgun shall, within five days of the date of transfer of possession of the handgun, surrender the registration card for the handgun with the name, address, or social security number, and identification card number, if required by law, of the buyer endorsed on it, to any office where identification cards are issued, and obtain a receipt for it. The office receiving the same shall immediately cancel the registration card.

**N.Y. COMP. CODES R. & REGS. tit. 10, § 10–131. Firearms.**

a. Pistols or revolvers, keeping or carrying.

1. The police commissioner shall grant and issue licenses hereunder pursuant to the provisions of article four hundred of the penal law. Unless they indicate otherwise, such licenses and permits shall expire on the first day of the second January after the date of issuance.

2. Every license to carry or possess a pistol or revolver in the city may be issued for a term of no less than one or more than three years. Every applicant for a license to carry or possess a pistol or revolver in the city shall pay therefor, a fee of three hundred forty dollars for each original or renewal application for a three year license period or part thereof, a fee of ten dollars for each replacement application of a lost license.

3. Every applicant to whom a license has been issued by

to the general public offered by a law enforcement agency of the State or of any county;

(3) A firearms safety or training course offered to law enforcement officers, security guards, investigators, deputy sheriffs, or any division or subdivision of law enforcement or security enforcement by a state or county law enforcement agency; or

(4) A firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least two hours of firing training at a firing range and a total of at least four hours of classroom instruction, which may include a video, that focuses on:

(A) The safe use, handling, and storage of firearms and firearm safety in the home; and

(B) Education on the firearm laws of the State. An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph.

(h) No person shall sell, give, lend, or deliver into the possession of another any firearm except in accordance with this chapter.

(i) No fee shall be charged for permits, or applications for permits, under this section, except for a single fee chargeable by and payable to the issuing county, for individuals applying for their first permit, in an amount equal to the fee actually charged by the Federal Bureau of Investigation to the issuing police department for a fingerprint check in connection with that application or permit. In the case of a joint application, the fee provided for in this section may be charged to each person to whom no previous permit has been issued.

CHICAGO MUN. CODE §§ 4-144-040, 050 (licensed firearms dealers required to make daily report to police of weapons transferred, including transferor's name, address, age, description of weapon "and the purpose given by such person for the purchase of such weapon"), *id.* § 8-20-040 (registration of firearms), *id.* § 8-20-060 (applicants must provide name, age, sex, citizenship, social security number, residential and business address and telephone number, and two photographs).

OMAHA CODE OF ORD. § 20-251. Required.

(a) It shall be unlawful for any person to own, have possession of, or maintain control over any concealable firearm which has not been registered to said person with the chief of police in accordance with this division, except when such possession or control is with the knowledge and express consent of the person

any person other than the police commissioner, except as provided in paragraph five of this subdivision, for a special permit from the commissioner granting it validity within the city of New York, shall pay for such permit a fee of three hundred forty dollars, for each renewal a fee of three hundred forty dollars, for each replacement of a lost permit a fee of ten dollars.

4. Fees paid as provided herein shall not be refunded in the event that an original or renewal application, or a special validation permit application, is denied by the police commissioner.

5. A fee shall not be charged or collected for a license to have and carry concealed a pistol or revolver which shall be issued upon the application of the commissioner of correction or the warden or superintendent of any prison, penitentiary, workhouse or other institution for the detention of persons convicted or accused of crime or offense, or held as witnesses in criminal cases in the city.

6. The fees prescribed by this subdivision shall be collected by the police commissioner, and shall be paid into the general fund of the city established pursuant to section one hundred nine of the charter, and a return in detail shall be made to the comptroller by such commissioner of the fees so collected and paid over by the commissioner.

7. A fee shall not be charged or collected for the issuance of a license, or the renewal thereof, to have and carry concealed a pistol or revolver which is issued upon the application of a qualified retired police officer as defined in subdivision thirty-four of section 1.20 of the criminal procedure law, or a qualified retired bridge and tunnel officer, sergeant or lieutenant of the triborough bridge and tunnel authority as defined under subdivision twenty of section 2.10 of the criminal procedure law, or a qualified retired uniformed court officer in the unified court system, or a qualified retired court clerk in the unified court system in the first and second judicial departments, as defined in paragraphs a and b of subdivision twenty-one of section 2.10 of the criminal procedure law or a retired correction officer as defined in subdivision twenty-five of section 2.10 of the criminal procedure law or a qualified retired sheriff, undersheriff or deputy sheriff of the city of New York as defined under subdivision two of section 2.10 of the criminal procedure law.

See also, e.g.:

CAL. PENAL CODE § 12051 (The standard application form for licenses described in paragraph (3) shall require … the reason for desiring a license to carry the weapon . . .).

in whose name such concealable firearm is registered.

(b) A corporation, including a body corporate created by Nebraska statute, may register a concealable firearm in its corporate name. However, the corporation may consent to a person possessing or controlling the corporation's registered concealable firearm only if that person:

(1) Is a part-time or full-time employee of the corporation;

(2) Is acting within the scope of his or her employment with the corporation; and,

(3) Possesses a current identification card issued pursuant to section 20-208 upon satisfaction of the requirements of section 20-207.

**CINCINNATI CODE OF ORD. §§ 708.13, 708.14** (applicant must present photo identification and transferor must maintain record of all transfers (and send a copy to the chief of police) including the applicant's name, address, date of birth, the "purpose for which the [applicant] desires to use the firearm, and a description of the applicant including "height, weight, age, color of hair, color of eyes, all visible marks and scars on face and hands, and any deformity, nationality, and race.")

**DETROIT CITY CODE § 38-10-12** (registration of handguns required)

**MUN. CODE OF LAS VEGAS § 10-66-140** (registration of pistols required; applicant must personally appear with the pistol at the Sheriff or the Metropolitan Police Department to register)

**N.Y. COMP. CODES R. & REGS. tit. 38, ch. 5, §§ 5-01, 5-22(a)(6)** ("The licensee shall be in possession of her/his license at all times while carrying, transporting, possessing at residence, business, or authorized small arms range/shooting club, the handgun(s) indicated on said license.")

**PITTSBURGH CODE OF ORD. § 607.09–.11** (requiring photo identification of each sale or transfer of ammunition, and requiring dealers to keep detailed records of such transactions for no less than five years).

**GA. CODE ANN. § 16-11-128** (valid license must be carried "on [his or her] person" for pistols or revolvers carried outside of the home, motor vehicle, or place of business).

**MD. CODE ANN., PUB. SAFETY § 5-123(d)(2)** (state police maintain permanent record of all transfers of "regulated firearms").

**MASS. GEN. L. CH. 140, § 121 et seq.** (state registration required to possess a gun in the home), **§ 129C** (any person in possession of any firearm must "on demand of a police officer or other law enforcement officer," exhibit license or firearm identification card).

**N.J. STAT. ANN. 2C:58-3** ("permit to purchase" required to obtain handgun).

**18 PA. CONS. STAT. § 6111(b)** (licensed dealer required to maintain record of sale for 20 years, including the applicant's name, address, birth date, gender, race, physical description, and social Security number).

**Durham County, N.C.** (applicants for permit to purchase pistol must provide, inter alia, two notarized character references, date of birth, place of birth, Social Security number, driver's license number, occupation, the reason for the pistol purchase, and "[t]he name of any law enforcement officer who knows you.") (see http://www.co.durham.nc.us/departments/shrf/Documents/Pistol_Permit.pdf) (as of August 3, 2009).

**Nassau County, NY** (applicants for pistol license must appear in person, and provide, inter alia, the names of four character references, photographs, valid photo identification) (seehttp://www.police.co.nassau.ny.us/pdf/InstructionsGeneral%20_2_.pdf).

**ATLANTA CODE OF ORD. § 106-268** ("certificate of approval" from chief of police required prior to purchase or transfer of pistols or revolvers), *id.*, § 106-269 (dealers must maintain records of purchases or transfers for 10 years).

**MIAMI-DADE COUNTY, FLA., CODE § 21-20** (registration of firearm sales and transfers required, information to include, inter alia, "the purchaser's name, address, color, sex, age, weight, height, complexion, color of hair, birthplace, place of residence, length of residence, occupation, employer, the purpose for which the gun is desired, the date and time of delivery.")

## 2. Fingerprints/Photos/Personal Appearance

| HAW. REV. STAT. § 134-2. Permits to Acquire. | N.Y. PENAL LAW § 400.00. Licenses to carry, possess, repair and dispose of firearms. |
|---|---|
| (b) The permit application form shall include the applicant's name, address, sex, height, weight, date of birth, place of birth, country of citizenship, social security number, alien or admission number, and information regarding the applicant's mental health | 3. Applications. Application for a rifle and shotgun permit shall be made to the police commissioner, shall be signed and affirmed by the applicant and shall state his or her full name, date of birth, |

history and shall require the fingerprinting and photographing of the applicant by the police department of the county of registration; provided that where fingerprints and photograph are already on file with the department, these may be waived.

### N.J. REV. STAT. ANN. §2C:58-3. Purchase of firearms.

(e) Applications. Applications for permits to purchase a handgun and for firearms purchaser identification cards shall be in the form prescribed by the superintendent and shall set forth the name, residence, place of business, age, date of birth, occupation, sex and physical description, including distinguishing physical characteristics, if any, of the applicant, and shall state whether the applicant is a citizen, whether he is an alcoholic, habitual drunkard, drug dependent person as defined in section 2 of P.L. 1970, c. 226 (C. 24:21-2), whether he has ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis, giving the name and location of the institution or hospital and the dates of such confinement or commitment, whether he has been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition, giving the name and location of the doctor, psychiatrist, hospital or institution and the dates of such occurrence, whether he presently or ever has been a member of any organization which advocates or approves the commission of acts of force and violence to overthrow the Government of the United States or of this State, or which seeks to deny others their rights under the Constitution of either the United States or the State of New Jersey, whether he has ever been convicted of a crime or disorderly persons offense, whether the person is subject to a restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," P.L. 1991, c. 261 (C. 2C:25-17) et seq.) prohibiting the person from possessing any firearm, and such other information as the superintendent shall deem necessary for the proper enforcement of this chapter. For the purpose of complying with this subsection, the applicant shall waive any statutory or other right of confidentiality relating to institutional confinement. The application shall be signed by the applicant and shall contain as references the names and addresses of two reputable citizens personally acquainted with him.

Application blanks shall be obtainable from the superintendent, from any other officer authorized to grant such permit or identification card, and from licensed retail dealers.

The chief police officer or the superintendent shall obtain the fingerprints of the applicant and shall have them compared with any and all records of fingerprints in the municipality and county in which the applicant resides and also the records of the State Bureau of Identification and the Federal Bureau

residence, physical condition, occupation and whether he or she complies with each requirement specified in subdivision a of this section, any other information required by the police commissioner to process the application. Each applicant shall submit with his or her application a photograph of himself or herself in duplicate, which shall have been taken within thirty days prior to the filing of the application. Any willful or material omission or false statement shall be a violation of this section and grounds for denial of the application.

4. Investigations. Before a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made. For that purpose, the records of the appropriate office of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. In order to ascertain any previous criminal record, the investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom application is signed and verified. Two copies of such fingerprints shall be taken on standard fingerprint cards eight inches square, and one copy may be taken on a card supplied for that purpose by the federal bureau of investigation; provided, however, that in the case of a corporate applicant that has already been issued a dealer in firearms license and seeks to operate a firearm dealership at a second or subsequent location, the original fingerprints on file may be used to ascertain any criminal record in the second or subsequent application unless any of the corporate officers have changed since the prior application, in which case the new corporate officer shall comply with procedures governing the initial application for such license. When completed, one standard card shall be forwarded to and retained by the division of criminal justice services in the executive department, at Albany. A search of the files of such division and written notification of the results of the search to the investigating officer shall be made without unnecessary delay. Thereafter, such division shall notify the licensing officer and the executive department, division of state police, Albany, of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card, or the one supplied by the federal bureau of investigation, as the case may be, shall be forwarded to that bureau at Washington with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority. The failure or refusal of the federal bureau of investigation to make the fingerprint check provided for in this section shall not constitute the sole basis for refusal to issue a permit pursuant to the provisions of this section. Of the remaining two fingerprint cards, one shall be filed with the executive department, division of state police, Albany, within ten days after issuance of the license, and the other remain on file with the investigating police authority. No such fingerprints may be inspected by any person other than a peace officer, who is acting pursuant to his special

of Investigation, provided that an applicant for a handgun purchase permit who possesses a valid firearms purchaser identification card, or who has previously obtained a handgun purchase permit from the same licensing authority for which he was previously fingerprinted, and who provides other reasonably satisfactory proof of his identity, need not be fingerprinted again; however, the chief police officer or the superintendent shall proceed to investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter.

duties, or a police officer, except on order of a judge or justice of a court of record either upon notice to the licensee or without notice, as the judge or justice may deem appropriate. Upon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay.

**OMAHA CODE OF ORD. § 20-208. Issuance of identification card**.

Upon successful completion of the firearm training program, an identification card shall be issued with the approval of the city bearing a distinguishing number assigned to the card holder, the full name, date of birth, sex, residence address, expiration date, and a brief description and colored photograph of the card holder.

**N.Y. COMP. CODES R. & REGS. tit. 38, 5-05. Application form.**

(b) The applicant shall furnish the items listed below which are applicable, either at the time s/he completes and submits her/his application in person, or no later than fourteen (14) calendar days after the date of submission of the application, either in person or by mail. All documents, certificates, licenses, etc., shall be submitted in the original. A copy certified by the issuing agency as true and complete is also acceptable. In addition, a legible photocopy of each item submitted shall accompany the original or certified copy. Originals and certified copies shall be returned. The application shall not be accepted or processed without the required fee payments described in paragraph (10) of this subdivision.

(1) Photographs. Two (2) color photographs of the applicant taken within the past thirty (30) days. They should measure $1^1/_2 \times 1^1/_2$ inches and show applicant from the chest up. The wearing of any article of clothing or adornment that obscures identification is not acceptable. Special license applicants should refer to paragraph (9) of this subdivision.

**CITY OF HIGHLAND PARK, ILL., CODE § 134.004. Registration.**

(D) The Chief of Police shall require every applicant to submit to fingerprinting by the Police Department in connection with the application for handgun registration.

(F) Within thirty (30) days of his receipt of an application, the Chief of Police, after consideration of the application for an owner's registration card and all information obtained relative thereto, shall either approve or deny the application and so notify the applicant in writing thereof.

> (1) In the event the application is approved, the Chief of Police shall issue to the applicant therefor an owner's registration card which shall contain the applicant's name, residence, date of birth, sex, physical description, recent photograph and such other

**COLUMBUS CODE OF ORD. § 545.06. Weapon transaction permit application; permit term, fee**.

(a) Application for a weapon transaction permit shall be made on forms provided by the section, shall be made under oath and shall provide the following information and material:

> (1) Full name, residence address, residence telephone number, date of birth, sex, race and social security number of applicant;

> (2) A current criminal background review, performed by Columbus Police personnel;

> (3) Fingerprints;

**MASS. GEN. LAWS ANN. ch. 140, § 129B. Firearm Identification Card; Application; Suspension or Revocation; Appeal; Investigation of Criminal Record and Mental Health of Applicant.**

2. Within seven days of the receipt of a completed application for a card, the licensing authority shall forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police, who shall, within 30 days, advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a card; provided, however, that the taking of fingerprints shall not be required in issuing the renewal of a card if the renewal applicant's fingerprints are on file with the

| | |
|---|---|
| (4) Type of weapon to be transacted;<br><br>(5) Any other information or material required by the rules and regulations promulgated by the safety director under this section. | department of state police. In searching for any disqualifying history of the applicant, the colonel shall utilize, or cause to be utilized, files maintained by the department of mental health, department of probation and statewide and nationwide criminal justice, warrant and protection order information systems and files including, but not limited to, the National Instant Criminal Background Check System. If the information available to the colonel does not indicate that the possession of a non-large capacity rifle or shotgun by the applicant would be in violation of state or federal law, he shall certify such fact, in writing, to the licensing authority within such 30 day period. |

## 3. Testing/Training

| HAW. REV. STAT. ANN. § 134-2. Permits to acquire. | MASS. GEN. LAWS ANN. ch. 140, § 131P. Firearms Safety Courses; Persons Required to Complete Course; Issuance of Certificate; Certification of Instructors. |
|---|---|
| (g) Effective July 1, 1995, no person shall be issued a permit under this section for the acquisition of a pistol or revolver unless the person, at any time prior to the issuance of the permit, has completed:<br><br>(1) An approved hunter education course as authorized under section 183D-28;<br><br>(2) A firearms safety or training course or class available to the general public offered by a law enforcement agency of the State or of any county;<br><br>(3) A firearms safety or training course offered to law enforcement officers, security guards, investigators, deputy sheriffs, or any division or subdivision of law enforcement or security enforcement by a state or county law enforcement agency; or<br><br>(4) A firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor or a certified military firearms instructor that provides, at a minimum, a total of at least two hours of firing training at a firing range and a total of at least four hours of classroom instruction, which may include a video, that focuses on:<br><br>(A) The safe use, handling, and storage of firearms and firearm safety in the home; and<br><br>(B) Education on the firearm laws of the State.<br><br>An affidavit signed by the certified firearms instructor who conducted or taught the course, providing the name, address, and phone number of the instructor and attesting to the successful completion of the course by the applicant shall constitute evidence of certified successful completion under this paragraph. | (a) Any person making application for the issuance of a firearms identification card under section 129B, a Class A or Class B license to carry firearms under section 131 or 131F or a permit to purchase under section 131A who was not licensed under the provisions of this chapter on June 1, 1998 shall, in addition to the requirements set forth in said section 129B, 131, 131A or 131F, submit to the licensing authority a basic firearms safety certificate; provided, however, that a certificate issued by the division of law enforcement in the department of fisheries, wildlife and environmental law enforcement pursuant to the provisions of section 14 of chapter 131 evidencing satisfactory completion of a hunter education course shall serve as a valid substitute for a basic firearms safety certificate required under this section; and provided further, that an applicant for a firearms identification card for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate shall not be required to complete a basic firearms safety course as a prerequisite for receiving such card. Persons lawfully possessing a firearm identification card or license to carry firearms on June 1, 1998 shall be exempt from the provisions of this section upon expiration of such card or license and when applying for licensure as required under this chapter. No application for the issuance of a firearm identification card or license to carry shall be accepted or processed by the licensing authority without such certificate attached thereto; provided, however, that the provisions of this section shall not apply to (i) any officer, agent or employee of the commonwealth or any state of the United States; (ii) any member of the military or other service of any state or of the United States; (iii) any duly authorized law enforcement officer, agent or employee of any municipality of the commonwealth; provided, however, that any such person described in clauses (i) to (iii), inclusive, is authorized by a competent authority to carry or possess the weapon so carried or possessed and is acting within the scope of his duties. |

| MD. CODE ANN., PUB. SAFETY § 5-118. Firearm application. | MICH. COMP. LAWS ANN. § 28.422. License to purchase, carry, possess, or transport pistol; issuance; qualifications; applications; sale of pistol; exemptions; nonresidents; basic pistol safety brochure; forging application; implementation during business hours. |
|---|---|
| (b) Required information. -- A firearm application shall contain:<br><br>(3) a statement by the firearm applicant under the penalty of perjury that the firearm applicant:<br><br>(x) subject to § 5-119 of this subtitle, has completed a certified firearms safety training course that the Police Training Commission conducts without charge or that meets the standards that the Police Training Commission establishes under § 3-207 of this article. | (13) The licensing authority shall provide a basic pistol safety brochure to each applicant for a license under this section before the applicant answers the basic pistol safety review questionnaire. A basic pistol safety brochure shall contain, but is not limited to providing, information on all of the following subjects:<br>    (a) Rules for safe handling and use of pistols.<br><br>    (b) Safe storage of pistols.<br><br>    (c) Nomenclature and description of various types of pistols.<br><br>    (d) The responsibilities of owning a pistol.<br><br>**OMAHA CODE OF ORD. § 20-207.  Firearm training program.**<br><br>(a) A training program to qualify persons in the safe use of firearms shall, after review and approval by resolution by the city council, be established and operated by the city, which may contract with private organizations or use the services of other agencies, or may use a combination of the two, to provide such training. Said resolution shall be submitted to the city council on or before December 21, 1993.<br><br>(b) A fee shall be charged each person attending the training program. The city shall set out a reasonable fee, to be set by the city council, after review and approval by said resolution, which shall include the cost of training, to be paid to the licensed training facility, and to the city.<br><br>(c) An identification card on a form approved by the city shall be issued to each person who successfully completes the training program.<br><br>(d) The training program shall consist of eight to ten hours of classroom training and education and two hours of practical firearm operation at an approved shooting range.<br><br>(e) The city shall prescribe such procedures as may be necessary for its operation in conformity with the provisions of this article. |

4. **Ballistics/Multiple purchases or registration/Vision**

| CONN. GEN. STAT. ANN. § 29-7h. Firearms evidence database. | MD. CODE ANN., PUB. SAFETY § 5-131. Handgun identification requirements. |
|---|---|
| (b)(1) The Division of Scientific Services shall establish a firearms evidence databank. Test fire evidence submitted to the laboratory or collected from handguns submitted to the laboratory shall be entered into such databank in accordance with specific | (b) Manufacturer requirements. A manufacturer that ships or transports a handgun for sale, rental, or transfer in the State shall include in the box with the handgun in a separate, sealed |

procedures adopted by the Commissioner of Public Safety, in the regulations adopted pursuant to subsection (f) of this section.

(2) The firearms evidence databank may be used by laboratory personnel to (A) compare two or more cartridge cases, bullets or other projectiles submitted to the laboratory or produced at the laboratory from a handgun, or (B) upon the request of a police department as part of a criminal case investigation, verify by microscopic examination any resulting match, and shall produce a report stating the results of such a search.

(3) Any image of a cartridge case, bullet or fragment thereof that is not matched by a search of the databank shall be stored in the databank for future searches.

(4) The Division of Scientific Services may permit a firearms section of a police department that complies with all laboratory guidelines and regulations adopted by the commissioner pursuant to subsection (f) of this section regarding the operation of the firearms evidence databank to (A) collect test fires from handguns that come into the custody of the police department, (B) set up a remote terminal to enter test fire images directly into the databank, and (C) search the databank.

container:

    (1) a shell casing of a projectile discharged from the handgun; and

    (2) additional information that the Secretary requires to identify the type of handgun and shell casing.

(c) Actions by dealer.

    (1) On receipt of a handgun from a manufacturer, the dealer shall confirm to the Department of State Police that the manufacturer has complied with subsection (b) of this section.

    (2) On the sale, rental, or transfer of the handgun, the dealer shall forward the sealed container to the Department of State Police Crime Laboratory.

(d) Crime Laboratory database. On receipt of a shell casing and information as required in subsection (b) of this section, the Department of State Police Crime Laboratory shall enter the information in each relevant database.

---

**N. Y. GEN. BUS. LAW § 396-ff.** Pistol and revolver ballistic identification databank.

(2) On and after March first, two thousand one, any manufacturer that ships, transports or delivers a pistol or revolver to any person in this state shall, in accordance with rules and regulations promulgated by the division of state police, include in the container with such pistol or revolver a separate sealed container that encloses:

    (a) a shell casing of a bullet or projectile discharged from such pistol or revolver; and

    (b) any additional information that identifies such pistol or revolver and shell casing as required by such rules and regulations.

(3) A gunsmith or dealer in firearms licensed in this state shall, within ten days of the receipt of any pistol or revolver from a manufacturer that fails to comply with the provisions of this section, either:

    (a) return such pistol or revolver to such manufacturer, or

    (b) notify the division of state police of such noncompliance and thereafter obtain a substitute sealed container through participation in a program operated by the state police as provided in subdivision four of this section.

(4) The division of state police shall no later than October first, two thousand, promulgate rules and regulations for the operation of a program which provides a gunsmith or a dealer in firearms

**CAL. PENAL CODE § 12072. Restrictions on transfer of firearms; Act of collusion; Punishment for violations.**

**(a) (9) (A)** No person shall make an application to purchase more than one pistol, revolver, or other firearm capable of being concealed upon the person within any 30-day period.

**(c) (6)** No pistol, revolver, or other firearm capable of being concealed upon the person shall be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a pistol, revolver, or other firearm capable of being concealed upon the person and that the previous application to purchase involved none of the entities specified in subparagraph (B) of paragraph (9) of subdivision (a).

**MD. CODE ANN., PUB. SAFETY § 5-128. Purchases within 30 days - In general.**

(b) One purchase limit. -- A person may not purchase more than one regulated firearm in a 30-day period.

**N.J. REV. STAT. ANN. § 2C:58-3. Purchase of firearms**.

(i) Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit, but a person shall not be restricted as to the number of rifles or shotguns he may purchase, provided he possesses a valid firearms purchaser identification card and provided further that he signs the certification required in subsection b. of this section for each transaction.

licensed in this state with a sealed container enclosing the items specified in subdivision two of this section. The program shall at a minimum:

    (a) be operational by January first, two thousand one;

    (b) operate in at least five regional locations within the state; and

    (c) specify procedures by which such gunsmith or dealer is to deliver a pistol or revolver to the regional program location closest to his or her place of business for testing and prompt return of such pistol or revolver.

(5) On and after March first, two thousand one, a gunsmith or dealer in firearms licensed in this state shall, within ten days of delivering to any person a pistol or revolver received by such gunsmith or dealer in firearms on or after such date, forward to the division of state police, along with the original transaction report required by subdivision twelve of <u>section 400.00 of the penal law</u>, the sealed container enclosing the shell casing from such pistol or revolver either

    (a) received from the manufacturer, or

    (b) obtained through participation in the program operated by the division of state police in accordance with subdivision four of this section.

(6) Upon receipt of the sealed container, the division of state police shall cause to be entered in an automated electronic databank pertinent data and other ballistic information relevant to identification of the shell casing and to the pistol or revolver from which it was discharged. The automated electronic databank will be operated and maintained by the division of state police, in accordance with its rules and regulations adopted after consultation with the Federal Bureau of Investigation and the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms to ensure compatibility with national ballistic technology.

(7) Any person, firm or corporation who knowingly violates any of the provisions of this section shall be guilty of a violation, punishable as provided in the penal law. Any person, firm or corporation who knowingly violates any of the provisions of this section after having been previously convicted of a violation of this section shall be guilty of a class A misdemeanor, punishable as provided in the penal law.

---

**CHICAGO MUN. CODE § 8-20-060. Prerequisites to registration - Application for registration.**

(a) No registration certificate shall be issued to any person unless such person:
(4) Has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code Chapter 95-1/2, Section 506-4 Illinois Revised Statutes, as amended.

**N.Y. COMP. CODES R. & REGS. tit. 10, § 10–302.1. Preventing the diversion of firearms, rifles and shotguns to criminals.**

(b) No person shall acquire a firearm if such person has acquired a firearm within the previous ninety days. No person shall acquire a rifle or shotgun if such person has acquired a rifle or shotgun within the previous ninety days. For purposes of this subdivision when a firearm, rifle or shotgun is acquired by a corporation, partnership, or other entity, it shall be considered to have been acquired by each natural person who is an officer, director or other principal of such entity, unless the firearm, rifle or shotgun is acquired on behalf of such entity by a person who is licensed by the commissioner as gun custodian or special gun custodian, or acquired on behalf of an organization possessing an organization registration certificate, as those terms are used in title thirty-eight of the rules of the city of New York.

**CICERO, ILL., CODE OF ORD. § 62-262. Registration.**

(a) No registration certificate required by this division shall be issued to any person unless such person:

(4) Has vision better than or equal to that required to obtain a valid driver's license under the standards established by 625 ILCS 5/6-109

---

5. Assault weapons

---

**Federal Violent Crime Control and Law Enforcement Act**, 18 U.S.C. § 921(a)(30) (*repealed by* Pub.L. 103-322, § 110105(2), effective Sept. 13, 2004), defined "semiautomatic assault weapon" as:

---

**CAL. PENAL CODE § 12276. Assault weapon.**

As used in this chapter, "assault weapon" shall mean the following designated semiautomatic firearms:

(A) any of the firearms, or copies or duplicates of the firearms in any caliber, known as—
  (i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all models);
  (ii) Action Arms Israeli Military Industries UZI and Galil;
  (iii) Beretta Ar70 (SC-70);
  (iv) Colt AR-15;
  (v) Fabrique National FN/FAL, FN/LAR, and FNC;
  (vi) SWD M-10, M-11, M-11/9, and M-12;
  (vii) Steyr AUG;
  (viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and
  (ix) revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12;

(B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of--
  (i) a folding or telescoping stock;
  (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
  (iii) a bayonet mount;
  (iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and
  (v) a grenade launcher;

(C) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least 2 of--
  (i) an ammunition magazine that attaches to the pistol outside of the pistol grip;
  (ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;
  (iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
  (iv) a manufactured weight of 50 ounces or more when the pistol is unloaded; and
  (v) a semiautomatic version of an automatic firearm; and

(D) a semiautomatic shotgun that has at least 2 of--
  (i) a folding or telescoping stock;
  (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
  (iii) a fixed magazine capacity in excess of 5 rounds; and
  (iv) an ability to accept a detachable magazine.

*Prior to repeal, the law, 18 U.S.C. § 921(a)(31), also stated that a "large capacity ammunition feeding device"*

(A) means a magazine, belt, drum, feed strip, or similar device manufactured after the date of enactment of the Violent Crime Control and Law Enforcement Act of 1994 that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition; but

(B) does not include an attached tubular device designed to

(a) All of the following specified rifles:

  (1) All AK series including, but not limited to, the models identified as follows: (A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S. (B) Norinco 56, 56S, 84S, and 86S. (C) Poly Technologies AKS and AK47. (D) MAADI AK47 and ARM.
  (2) UZI and Galil.

  (3) Beretta AR-70.

  (4) CETME Sporter.

  (5) Colt AR-15 series.

  (6) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 110C.

  (7) Fabrique Nationale FAL, LAR, FNC, 308 Match, and Sporter.

  (8) MAS 223.

  (9) HK-91, HK-93, HK-94, and HK-PSG-1.

  (10) The following MAC types: (A) RPB Industries Inc. sM10 and sM11. (B) SWD Incorporated M11.
  (11) SKS with detachable magazine.

  (12) SIG AMT, PE-57, SG 550, and SG 551.

  (13) Springfield Armory BM59 and SAR-48.

  (14) Sterling MK-6.

  (15) Steyer AUG.

  (16) Valmet M62S, M71S, and M78S.

  (17) Armalite AR-180.

  (18) Bushmaster Assault Rifle.

  (19) Calico M-900.

  (20) J & R ENG M-68.

  (21) Weaver Arms Nighthawk.

(b) All of the following specified pistols:

  (1) UZI.

  (2) Encom MP-9 and MP-45.

accept, and capable of operating only with, .22 caliber rimfire ammunition.

**HAW. REV. STAT. ANN. § 134-1. Definitions.**

As used in this chapter, unless the context indicates otherwise: "Assault pistol" means a semiautomatic pistol which accepts a detachable magazine and which has two or more of the following characteristics:

(1) An ammunition magazine which attaches to the pistol outside of the pistol grip;

(2) A threaded barrel capable of accepting a barrel extender, flash suppressor, forward hand grip, or silencer;

(3) A shroud which is attached to or partially or completely encircles the barrel and which permits the shooter to hold the firearm with the second hand without being burned;

(4) A manufactured weight of fifty ounces or more when the pistol is unloaded;

(5) A centerfire pistol with an overall length of twelve inches or more; or

(6) It is a semiautomatic version of an automatic firearm; but does not include a firearm with a barrel sixteen or more inches in length, an antique pistol as defined in section 134-1 or a curio or relic as those terms are used in 18 U.S.C. §921 (16) or 27 C.F.R. 178.11.

(3) The following MAC types:

(A) RPB Industries Inc. sM10 and sM11.

(B) SWD Incorporated M-11.

(C) Advance Armament Inc. M-11.

(D) Military Armament Corp. Ingram M-11.

(4) Intratec TEC-9.

(5) Sites Spectre.

(6) Sterling MK-7.

(7) Calico M-950.

(8) Bushmaster Pistol.

(c) All of the following specified shotguns:

(1) Franchi SPAS 12 and LAW 12.

(2) Striker 12.

(3) The Streetsweeper type S/S Inc. SS/12.

**CAL. PENAL CODE § 12276.1 - Further definition of "assault weapon."**

(a) Notwithstanding Section 12276, "assault weapon" shall also mean any of the following:

(1) A semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine and any one of the following: (A) A pistol grip that protrudes conspicuously beneath the action of the weapon. (B) A thumbhole stock. (C) A folding or telescoping stock. (D) A grenade launcher or flare launcher. (E) A flash suppressor. (F) A forward pistol grip.

(2) A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

(3) A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

(4) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following: (A) A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer. (B) A second handgrip. (C) A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning his or her hand, except a

| | |
|---|---|
| | slide that encloses the barrel. (D) The capacity to accept a detachable magazine at some location outside of the pistol grip.<br><br>(5) A semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds.<br><br>(6) A semiautomatic shotgun that has both of the following: (A) A folding or telescoping stock. (B) A pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip.<br><br>(7) A semiautomatic shotgun that has the ability to accept a detachable magazine.<br><br>(8) Any shotgun with a revolving cylinder. |
| **CONN. GEN. STAT. ANN. § 53-202a. Assault weapons: Definition.**<br><br>(a) As used in this section and sections 53-202b to 53-202k, inclusive, "assault weapon" means:<br><br>(1) Any selective-fire firearm capable of fully automatic, semiautomatic or burst fire at the option of the user or any of the following specified semiautomatic firearms:<br><br>Algimec Agmi;<br>Armalite AR-180;<br>Australian Automatic Arms SAP Pistol;<br>Auto-Ordnance Thompson type;<br>Avtomat Kalashnikov AK-47 type;<br>Barrett Light-Fifty model 82A1;<br>Beretta AR-70;<br>Bushmaster Auto Rifle and Auto Pistol;<br>Calico models M-900, M-950 and 100-P;<br>Chartered Industries of Singapore SR-88;<br>Colt AR-15 and Sporter;<br>Daewoo K-1, K-2,<br>Max-1 and Max-2;<br>Encom MK-IV,<br>MP-9 and MP-45;<br>Fabrique Nationale FN/FAL,<br>FN/LAR, or FN/FNC;<br>FAMAS MAS 223;<br>Feather AT-9 and Mini-AT;<br>Federal XC-900 and XC-450;<br>Franchi SPAS-12 and LAW-12;<br>Galil AR and ARM;<br>Goncz High-Tech Carbine and High-Tech Long Pistol;<br>Heckler and Koch HK-91,<br>HK-93,<br>HK-94 and SP-89;<br>Holmes MP-83;<br>MAC-10,<br>MAC-11 and MAC-11 Carbine type; | **N.J. REV. STAT. ANN. § 2C:39-1. Definitions.**<br><br>(w) Assault firearm means:<br><br>(1) The following firearms:<br><br>Algimec AGM1 type;<br>Any shotgun with a revolving cylinder such as the "Street Sweeper" or "Striker 12",<br>Armalite AR-180 type,<br>Australian Automatic Arms SAR,<br>Avtomat Kalashnikov type semi-automatic firearms,<br>Beretta AR-70 and BM59 semi-automatic firearms,<br>Bushmaster Assault Rifle,<br>Calico M-900 Assault carbine and M-900, CETME G3,<br>Chartered Industries of Singapore SR-88 type,<br>Colt AR-15 and CAR-15 series Daewoo K-1, K-2,<br>Max 1 and Max 2, AR 100 types,<br>Demro TAC-1 carbine type,<br>Encom MP-9 and MP-45 carbine types,<br>FAMAS MAS223 types,<br>FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms,<br>Franchi SPAS 12 and LAW 12 shotguns,<br>G3SA type,<br>Galil type Heckler and Koch HK91,<br>HK93,<br>HK94,<br>MP5,<br>PSG-1,<br>Intratec TEC 9 and 22 semi-automatic firearms,<br>M1 carbine type, M14S type,<br>MAC 10,<br>MAC 11,<br>MAC 11-9mm carbine type firearms,<br>PJK M-68 carbine type,<br>Plainfield Machine Company Carbine, Ruger K-Mini-1 4/5F and Mini-1 4/5RF,<br>SIG AMT, SIG 550SP, |

Intratec TEC-9 and Scorpion; Iver Johnson Enforcer model 3000;
Ruger Mini-14/5F folding stock model only;
Scarab Skorpion;
SIG 57 AMT and 500 series;
Spectre Auto Carbine and Auto Pistol;
Springfield Armory BM59,
SAR-48 and G-3; Sterling MK-6 and MK-7;
Steyr AUG;
Street Sweeper and Striker 12 revolving cylinder shotguns;
USAS-12;
UZI Carbine,
Mini-Carbine and Pistol;
Weaver Arms Nighthawk;
Wilkinson "Linda" Pistol;

(2) A part or combination of parts designed or intended to convert a firearm into an assault weapon, as defined in subdivision (1) of this subsection, or any combination of parts from which an assault weapon, as defined in subdivision (1) of this subsection, may be rapidly assembled if those parts are in the possession or under the control of the same person;

(3) Any semiautomatic firearm not listed in subdivision (1) of this subsection that meets the following criteria:

(A) A semiautomatic rifle that has an ability to accept a detachable magazine and has at least two of the following: (i) A folding or telescoping stock; (ii) A pistol grip that protrudes conspicuously beneath the action of the weapon; (iii) A bayonet mount; (iv) A flash suppressor or threaded barrel designed to accommodate a flash suppressor; and (v) A grenade launcher; or

(B) A semiautomatic pistol that has an ability to accept a detachable magazine and has at least two of the following:

(i) An ammunition magazine that attaches to the pistol outside of the pistol grip;
(ii) A threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip or silencer;
(iii) A shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
(iv) A manufactured weight of fifty ounces or more when the pistol is unloaded; and
(v) A semiautomatic version of an automatic firearm; or

(C) A semiautomatic shotgun that has at least two of

SIG 551SP,
SIG PE-57 types,
SKS with detachable magazine type,
Spectre Auto carbine type,
Springfield Armory BM59 and SAR-48 type,
Sterling MK-6, MK-7 and SAR types,
Steyr A.U.G. semi-automatic firearms,
USAS 12 semi-automatic type shotgun,
Uzi type semi-automatic firearms,
Valmet M62,
M71S,
M76, or
M78 type semi-automatic firearms Weaver Arm Nighthawk.

(2) Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

(3) A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

(4) A semi-automatic rifle with a fixed magazine capacity exceeding 15 rounds.

(5) A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

the following:

    (i) A folding or telescoping stock;
    (ii) A pistol grip that protrudes conspicuously beneath the action of the weapon;
    (iii) A fixed magazine capacity in excess of five rounds; and
    (iv) An ability to accept a detachable magazine; or

(4) A part or combination of parts designed or intended to convert a firearm into an assault weapon, as defined in subdivision (3) of this subsection, or any combination of parts from which an assault weapon, as defined in subdivision (3) of this subsection, may be rapidly assembled if those parts are in the possession or under the control of the same person.

(b) As used in this section and sections 52-202b to 53-202k, inclusive, the term "assault weapon" does not include any firearm modified to render it permanently inoperable.

**N.Y. PENAL LAW § 265.00. Definitions.**

22. "Assault weapon" means:

(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least two of the following characteristics:

    (i) a folding or telescoping stock;
    (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
    (iii) a bayonet mount;
    (iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor;
    (v) a grenade launcher; or

(b) a semiautomatic shotgun that has at least two of the following characteristics:

    (i) a folding or telescoping stock;
    (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon;
    (iii) a fixed magazine capacity in excess of five rounds;
    (iv) an ability to accept a detachable magazine; or

(c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least two of the following characteristics:
    (i) an ammunition magazine that attaches to the pistol outside of the pistol grip;
    (ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;
    (iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
    (iv) a manufactured weight of fifty ounces or more when the

**25 P.R. LAWS ANN. § 456m. Semiautomatics.**

(b) The semiautomatic assault weapons referred to in this section are the following:

    (1) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all AK models).
    (2) Action Arms Israeli Military Industries UZI and Galil.
    (3) Beretta Ar70 (SC-70).
    (4) Colt AR-15.
    (5) Fabrique National FN/FAL, FN/LAR, and FNC.
    (6) SWD M-10, M-11, M-11/9, and M-12.
    (7) Steyr AUG.
    (8) INTRATEC tec-9, tec-dc9 AND tec-22.
    (9) Revolving cylinder shotguns such as (or similar to) the Street Sweeper and Striker 12.

(c) Also considered as a semiautomatic assault weapon, is:

    (1) A semiautomatic rifle that is retrofitted by a magazine or removable receptacle which contains two (2) or more of the following characteristics:

    (A) Folding or telescopic butt;

    (B) pistol grip that clearly overlaps the trigger action;

    (C) bayonet mount;

    (D) flash suppressor, or (E) grenade launcher, excluding flare launchers.

    (2) A semiautomatic pistol that can be backloaded by a

pistol is unloaded;
(v) a semiautomatic version of an automatic rifle, shotgun or firearm; or

(d) any of the weapons, or functioning frames or receivers of such weapons, or copies or duplicates of such weapons, in any caliber, known as:

(i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all models);
(ii) Action Arms Israeli Military Industries UZI and Galil;
(iii) Beretta Ar70 (SC-70);
(iv) Colt AR-15;
(v) Fabrique National FN/FAL, FN/LAR, and FNC;
(vi)SWD M-10, M-11, M-11/9, and M-12;
(vii) Steyr AUG;
(viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and
(ix) revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12

magazine or removable receptacle which has more than two (2) of the following characteristics:

(A) A magazine or clip that is fixed on the pistol outside of the pistol grip;

(B) a barrel with spiral grooves on the front which is capable of accepting an extension to the barrel, a flash suppressor, a hand grip in front of the weapon or a silencer;

(C) a cover that can be fixed covering all or part of the barrel, allowing whoever fires the weapon to hold it with the hand that is not pulling the trigger, without getting burned;

(D) an unloaded manufacturing weight in excess of fifty (50) ounces, or

(E) a semiautomatic version of an automatic weapon.

(3) A semiautomatic shotgun that has two (2) or more of the following characteristics:

(A) A collapsible or telescopic breech;

(B) a pistol grip that clearly overlaps the trigger action;

(C) a fixed ammunition magazine or clip that holds more than five (5) cartridges, or

(D) is capable of receiving a removable magazine or clip.

| ALBANY CODE OF ORD. § 193-15. Assault weapons. | AURORA, ILL., CODE OF ORD. § 29-49(h)(2)(a-d). Definitions. |
|---|---|
| A. As used herein, "assault weapon" includes any of the following or their copies:<br><br>(1) Pistols: Bushmaster Firearms Company auto pistol, Calico Model 100-P auto pistol, Federal Engineering Corporation XP 450, XP 900, Holmes Firearms MP-83, MP-22 assault pistols, Intratec Tec-9 Auto, Tec-9M, Scorpion auto pistols, Israeli Military Industries UZI pistol, Iver Johnson Enforcer Model 300 auto, Ingram or S.W.D. MAC 10, MAC 11, Spectre double-action auto pistol, Ruger Mini 14<br><br>(2) Rifles and shotguns by manufacturers in the United States: Auto-Ordinance Corporation Thompson M1, Mix, 27 A-1, Thompson A-1 Thompson Deluxe, 1927 A5, Colt AR-15A2-Delta H-Bar, AR-15A2 H-Bar, Federal Engineering Corporation XC-900, XC-450 auto carbines, Springfield Armory Inc. BM-59, SAR-48, S.W.D. Street Sweeper shotgun, Weaver Arms Corporation nighthawk | Assault weapon means:<br><br>a. Any of the firearms (or types, replicas, or duplicates in any caliber of the firearms regardless of manufacturer) known as:<br><br>A.A. Arms AP-9,<br>Algimec Agmi,<br>Armalite AR-180,<br>Australian Automatic Arms SAP Pistol,<br>Australian Automatic Arms SAR,<br>Auto-Ordnance Thompson type,<br>Avtomat Kalashnikov AK-47 type (including all models of the Norinco, Mitchell, and Poly Tech),<br>Barrett Light-Fifty model 82A1,<br>Beretta AR-70 (SC-70),<br>Beretta BM-59, Bushmaster Auto Rifle and Auto Pistol,<br>Calico models M-900, M-950 and 100-P,<br>Chartered Industries of Singapore SR-88,<br>Claridge High Tech,<br>Colt AR-15 and Sporter, |

(3) Rifles and shotguns by manufacturers outside the United States: Avtomat Kalashnikovs manufactured or imported by American Arms, Bushmaster Firearms, Daewoo, Mitchell, Norinco and Poly Technologies, Beretta AR-70 Sporter rifle, Fabrique National FN, FNC rifle, Franchi LAW 12 auto, SPAS 12 pump/auto shotguns, Heckler and Koch HK 91, 93, 94 rifles, Israeli Military Industries Galil Rifles, UZI carbines, Steyr Daimler-Pusch A.U.G. autoloading rifle, Striker 12 shotgun, Valmet M-76 standard rifle, M78 semi-auto

(4) Any other weapon to be subsequently designated by law.

B. A copy of any of the weapons listed in Subsection (A)(1), (2) and (3) of this section shall include any other model by the same manufacturer with the same action design having slight modifications or enhancements, provided that such weapon as modified or enhanced employs only ammunition of more than .22 caliber rimfire; any weapon with an action design identical or nearly identical to any of the listed weapons which has been designed from, renamed, renumbered or patterned after any of the listed weapons regardless of the manufacturer or country of origin, provided that such weapon employs only ammunition of more than .22 caliber rimfire; or any weapon which has been manufactured and sold by another company under a licensing agreement to manufacture or sell a weapon identical or nearly identical to any of the listed weapons regardless of the company or production or country of origin, provided that such weapon employs only ammunition of more than .22 caliber rimfire.

**CHICAGO MUN. CODE § 8-20-030. Definitions.**

(h) "Assault weapon" means any of the following weapons:

(1) Assault Rifles

AK 47 type,
AK 47S type,
AK 74 type,
AKS type,
AKM type,
KMS type,
84S1 type,
Arm type,
84S1 type,
84S3 type,
HK91 type,
HK93 type,
K94 type,
G3SA type,
K1 type,
K2 type,
AR100 type,
M24S type,
SIG 550SP type,
SIG 551SP type,

Daewoo K-1,
K-2,
Max-1 and Max-2,
Encom MK-IV,
MP-9 and MP-45,
Fabrique Nationale FN/FAL, FN/LAR or FN/FNC, FAMAS MAS 223,
Feather AT-9 and Mini-AT,
Federal XC-900 and XC-450,
Franchi SPAS-12 and LAW-12,
Galil AR and ARM,
Heckler & Koch HK-91,
HK-93,
HK-94,
PSG-1,
SP-89,
Holmes Mp-83,
Intratec TEC-9,
TEC-DC-9,
TEC-22 and Scorpion,
Iver Johnson Enforce Model 3000,
Iver Johnson PM30 Paratrooper,
M14S type MAC 10,
M-10, MAC-11 and MAC-11 Carbine type,
Ruger Mini-14/5F (folding stock only) and Mini-14/5RF,
Scarab Skorpion,
SIG 57 AMT,
SIG 550SP,
SIG 551SP,
SIG PE-57 types and 500 series,
Spectre Auto Carbine and Auto Pistol,
Springfield Armory BM59,
SAR-48 and G-3,
Sterling MK-6 and MK-7 and SAR types,
Steyr AUG,
Street Sweeper and Striker 12 revolving cylinder shotguns,
SWD M-10,
M-11,
M-11/9,
M-12,
Valmet M63,
M71S, M76 or M78,
USAS-12,
UZI Carbine,
Mini-Carbine and Pistol,
Weaver Arms Nighthawk,
Wilkinson "Linda" Pistol

b. Any semiautomatic rifle that has a fixed magazine that can hold more than eight (8) rounds or an ability to accept a detachable magazine and has at least two (2) of the following:

1. A folding or telescoping stock;

2. A pistol grip that protrudes beneath the action of the weapon and which is separate and apart from the stock;

Australian Automatic Arms,
SAR type,
SKS type with detachable magazine,
Colt AR-15,
Springfield Armory SAR-48,
Springfield Armory BM-59,
Bushmaster Auto Rifle,
Auto-Ordinance Thompson M1,
Ruger Mini 14/5F,
Federal XC-900 and XC-450,
Feather AT-9 Auto Carbine,
Goncz High Tech Carbine,
Auto-Ordinance Thompson 1927A1,
Iver Johnson PM30 P Paratrooper,
86S type,
86S7 type,
87S type,
Galil type,
Type 56 type,
Type 565 type,
Valmet M76 type,
Valmet M78 type,
M76 counter sniper type,
FAL type, L1A1A type,
SAR 48 type,
AUG type,
FNC type,
Uzi carbine,
Algimec AGMI type,
AR180 type,
MAS 223 type,
Beretta BM59 type,
Beretta AR70 type,
CIS SR88 type,

(2) Assault Pistols

Uzi type,
Heckler & Koch Sp-89 type,
Australian Automatic Arms SAP type,
Spectre Auto type,
Sterling Mark 7 type; and

(3) Any weapon that the superintendent of police defines by regulation as an assault weapon because the design or operation of such weapon is inappropriate for lawful use.

| **Buffalo Code of Ord. § 180-1. Definitions.** |
| --- |

Assault weapon:

(1) Any center-fire rifle or shotgun which employs the force of the expanding gases from a discharging cartridge to chamber a fresh round after each single pull of the trigger, and which is loaded or capable of being loaded with a combination of more than sin cartridges in the ammunition-feeding device and chamber combined. For the purposes of this section, a weapon is capable of

---

3. A bayonet mount;

4. A flash suppressor;

5. A barrel with a threaded muzzle;

6. A grenade launcher.

c. Any semiautomatic pistol that has an ability to accept a detachable magazine and has at least two (2) of the following:

1. An ammunition magazine that attaches to the pistol outside of the pistol grip;

2. A barrel having a threaded muzzle;

3. A shroud that is attached to, or partially or completely encircles, the barrel and which permits the shooter to hold the firearm with the nontrigger hand without being burned;

4. A manufactured weight of fifty (50) ounces or more when the pistol is unloaded;

5. A semiautomatic version of an automatic firearm

d. Any semiautomatic shotgun that has either a fixed magazine with a capacity in excess of five (5) rounds or an ability to accept a detachable magazine and, in addition, has at least one (1) of the following:

1. A folding or telescoping stock;

2. A pistol grip that protrudes beneath the action of the firearm and which is separate and apart from the stock

| **Cleveland Code of Ord. § 628.03. Definitions.** |
| --- |

For the purpose of this chapter:

(a) "Assault weapon" means:

(1) any semiautomatic action, center fire rifle or carbine that accepts a detachable magazine with a capacity of 20 rounds or more;

being loaded if it is possessed by one who, at the same time, possesses:

    (a) In the case of a rifle, a fixed or detachable ammunition feeding device which is attached to or utilized with or capable of being attached to or utilized with such rifle and which has a capacity of more than five cartridges; or

    (b) In the case of a shotgun, an ammunition-feeding device which is attached to or utilized with or capable of being attached to or utilized with such shotgun and which has a capacity of more than five cartridges.

(2) A center-fire rifle or shotgun which employs the force of expanding gases from a discharging cartridge to chamber a fresh round after each single pull of the trigger, and which has:

    (a) A flash suppressor attached to the weapon reducing muzzle flash;

    (b) A grenade launcher,

    (c) A sighting device making a target visible at night;

    (d) A barrel jacket surrounding all or a portion of the barrel, to dissipate heat therefrom; or

    (e) A multi-burst trigger activator.

(3) Any stockless pistol grip shotgun.
(4) For purposes of this section, the term 'assault weapon' shall not include any of the following:

    (a) Any weapon which has been modified to render it permanently inoperable or permanently make it a device no longer defined as an 'assault' weapon.

    (b) Weapons that do not use cartridges or shells.

    (c) Manually operated bolt-action weapons, lever-action weapons, slide-action weapons or single-shot weapons.

    (d) Multiple-barrel weapons, revolving cylinder weapons except shotguns, weapons that use exclusively a rotary Mannlicher-style magazine.

(e) Any antique firearm as defined in 265.00 of the New York State Penal Law or any curio or relic as defined under United States law which is possessed by a licensed collector in accordance with United States law

**COLUMBUS CODE OF ORD. § 2323.31. Definitions.**

(L) "Assault weapon" means any:

    (1) Semi-automatic rifle that has the capacity to accept a detachable magazine and has one (1) or more of the

(2) any .50 caliber rifle;

(3) any semiautomatic shotgun with a magazine capacity of more than six rounds;

(4) any semi-automatic handgun that is: A. a modification of a rifle described in division (a)(1) or division (a)(2), or a modification of an automatic firearm; or B. originally designed to accept a detachable magazine with a capacity of more than 20 rounds;

(5) any firearm which may be restored to an operable assault weapon as defined in divisions (a)(1), (a)(2), (a)(3) or (a)(4);

(6) any part, or combination of parts, designed or intended to convert a firearm into an assault weapon as defined in divisions (a)(1), (a)(2), (a)(3) or (a)(4), or any combination of parts from which an assault weapon as defined in divisions (a)(1), (a)(2), (a)(3) or (a)(4), may be readily assembled if those parts are in the possession or under the control of the same person.

(b) Assault weapon does not include any of the following:

    (1) any firearm that uses .22 caliber rimfire ammunition with a detachable magazine with a capacity of 30 rounds or less.

    (2) any assault weapon which has been modified to either render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon.

    (3) any black powder muzzle loading rifle.

(4) any assault weapon the possession or sale of which constitutes a felony under the laws of the state of Ohio.

**N.Y. COMP. CODES R & REG. TIT. 10 § 10-301. Definitions.**

"Assault weapon."

(a) Any semiautomatic centerfire or rimfire rifle or semiautomatic shotgun which has one or more of the following

following:

   (a) A pistol grip that protrudes conspicuously beneath the receiver of the weapon;

   (b) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

   (c) A folding, telescoping or thumbhole stock;

   (d) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

   (e) A muzzle brake or muzzle compensator;

(2) Semi-automatic pistol with a fixed magazine, or any semi-automatic, centerfire rifle with a fixed magazine, that has the capacity to accept more than ten (10) rounds of ammunition;

(3) Semi-automatic pistol that has the capacity to accept a detachable magazine and has one (1) or more of the following:

   (a) Any feature capable of functioning as a protruding grip than can be held by the non-trigger hand;

(b) A folding, telescoping or thumbhole stock;

(c) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(d) A muzzle brake or muzzle compensator; or

(e) The capacity to accept a detachable magazine at any location outside of the pistol grip;

(4) Semi-automatic shotgun that has two (2) or more of the following:

   (a) A pistol grip that protrudes conspicuously beneath the receiver of the weapon;

   (b) A folding, telescoping or thumbhole stock;

   (c) A fixed magazine capacity in excess of five (5) standard two and three quarters inch (2-3/4), or longer, rounds; or

(d) An ability to accept a detachable magazine;

features:

1. folding or telescoping stock or no stock;

2. pistol grip that protrudes conspicuously beneath the action of the weapon;

3. bayonet mount;

4. flash suppressor or threaded barrel designed to accommodate a flash suppressor;

5. barrel shroud;

6. grenade launcher; or

7. modifications of such features, or other features, determined by rule of the commissioner to be particularly suitable for military and not sporting purposes. In addition, the commissioner shall, by rule, designate specific semiautomatic centerfire or rimfire rifles or semiautomatic shotguns, identified by make, model and/or manufacturer's name, as within the definition of assault weapon, if the commissioner determines that such weapons are particularly suitable for military and not sporting purposes. The commissioner shall inspect such specific designated semiautomatic centerfire or rimfire rifles or semiautomatic shotguns at least three times per year, and shall revise or update such designations as he or she deems appropriate.

(b) Any shotgun with a revolving-cylinder magazine.

(c) Any part, or combination of parts, designed or redesigned or intended to readily convert a rifle or shotgun into an assault weapon.

### SOUTH BEND, IND., CODE OF ORD. §§ 13-95. Definitions.

(b) Assault weapons shall mean and include:

   (1) Any center fire rifle with automatic action or semi-automatic action or revolving cylinder weapon, or carbine which accepts a detachable magazine with a capacity of over fifteen (15) rounds;

   2) Any semiautomatic shotgun with a magazine capacity of more than nine (9) rounds;

   (3) Firearms as defined in IC 35-47-1-5, which have threads, lugs, or other characteristics which are designed to facilitate the direct attachment of a silencer, bayonet, grenade launcher, flash suppressor, or folding stock to the firearm; and

   (4) Any part or combination of parts designed to facilitate the attachment of a silencer, bayonet, grenade launcher, flash suppressor, or folding stock to a firearm; and

(5) Shotgun with a revolving cylinder;

(6) Conversion kit or combination of parts from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person.

(M) Assault weapon does not include any antique firearm or any firearm that has been modified to either render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon.

(5) A detachable magazine, drum, belt, feed strip, or similar device which has a capacity of, or can be readily restored or converted to accept more than fifteen (15) rounds of ammunition; and

(6) Any combination of parts which are designed and intended solely and exclusively for assembling a firearm defined to be an assault weapon as defined above, or from which an assault weapon could be assembled into an operable assault weapon if such parts are located in the possession or under the control of one (l) person.

---

**MASS. GEN. LAWS ANN. CH. 140, § 121. Definitions.**

Assault weapon shall have the same meaning as a semiautomatic assault weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. 921(a)(30) as appearing in such section on September 13, 1994, and shall include, but not be limited to, any of the weapons, or copies or duplicates of the weapons, of any caliber, known as:

(i) Avtomat Kalashnikov (AK) (all models);

(ii) Action Arms Israeli Military Industries UZI and Galil;

(iii) Beretta Ar70 (SC-70);

(iv) Colt AR-15;

(v) Fabrique National FN/FAL, FN/LAR and FNC;

(vi) SWD M-10, M-11, M-11/9 and M-12;

(vi) Steyr AUG;

(vii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and

(viii) revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12.

**TOLEDO, OHIO, CODE OF ORD. § 549.23. Definitions.**

(a) Semi-automatic firearm means any firearm designed or specially adapted to fire a single cartridge and automatically chamber a succeeding cartridge ready to fire, with a single function of the trigger.

"Certain semi-automatic firearms" means any of the following:

(A) A semi-automatic rifle less than forty-two inches in overall length that has an ability to accept a detachable magazine and has at least two of:

(i) a folding or telescoping stock;

(ii) a pistol grip that protrudes conspicuously beneath the action of the weapon.

(iii) a bayonet mount;

(iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and

(v) a grenade launcher;

(B) a semi-automatic pistol that has an ability to accept a detachable magazine and has at least two of:

(i) an ammunition magazine that attaches to the pistol outside of the pistol grip;

(ii) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

(iii) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

(iv) a manufactured weight of 50 ounces or more when the pistol is unloaded; and

| | (v) is known by the person charged at the time of the offense to be a semi-automatic version of an automatic firearm.<br><br>(C) A semi-automatic shotgun that has at least two of: (i) a folding or telescoping stock; (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon; (iii) a fixed magazine capacity in excess of 5 of the 2 3/4 inch standard rounds; and (iv) an ability to accept detachable magazine. |
| --- | --- |