IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, *et al.* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 1:08-cv-01289 |
| ) | Hon. Ricardo M. Urbina |
| THE DISTRICT OF COLUMBIA, *et al.* ) | |
| ) | |
| ) | |
| Defendants ) | |
| ) | |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES
NECESSARY TO BE LITIGATED**

Plaintiffs Dick Anthony Heller, Absalom Jordan, William Carter, and Mark Snyder, by counsel, pursuant to LcvR 7(h) & 56.1, hereby submit the following statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

LcvR 7(h) & 56.1 provide identical language in pertinent part as follows:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Defendants' Statement of Material Facts as to Which There Is No Genuine Issue fails to include any actual facts or evidence. Instead, it consists of quotations from *District of Columbia v.*

*Heller*, 128 S. Ct. 2783 (2008); a summary of pertinent District enactments since that decision; and quotations from the committee report, Council of the District of Columbia, Committee on Public Safety and the Judiciary, Rep. on Bill 17-843, the "Firearms Control Amendment Act of 2008," November 25, 2008 ("Com. Rep."). Plaintiffs do not dispute that the quotations are actually from said sources, although they need not respond here to any legal argument made therein.

Defendants' Memorandum of Points and Authorities includes factual allegations from the committee report which are not included in Defendants' Statement. Such allegations should not be considered since they are thereby not presented in compliance with LcvR 7(h) & 56.1. However, in the event this Court does consider them, plaintiffs hereby set forth the following material facts as to which it is contended there exists a genuine issue necessary to be litigated. Plaintiffs further incorporate by reference their Statement of Undisputed Material Facts previously filed herein.

1. Contemporary military rifles are selective fire "assault rifles." Selective fire means that the rifle has the capability to fire both fully automatic, meaning that it continues to fire as long as the trigger is pulled, as well as semiautomatic, meaning that a separate pull of the trigger is required for each shot. Some also fire automatically in bursts, *e.g.*, a three-shot burst with a single pull of the trigger. Exhibit ("Ex.") 7, Johnson Declaration ("Decl."), ¶ 7.

2. The publication of the Defense Intelligence Agency entitled *Small Arms Identification and Operation Guide – Eurasian Communist Countries* (Government Printing Office 1966 through four updated editions), is still utilized as a standard reference work. Ex. 7, Johnson Decl., ¶ 3.

3. The said *Small Arms Identification and Operation Guide* (1966 edition), page 51, states: "Assault rifles are short, compact, selective-fire weapons that fire a cartridge intermediate in power between submachinegun and rifle cartridges. Assault rifles have mild recoil characteristics and,

because of this, are capable of delivering effective full automatic fire at ranges up to 300 meters." Ex. 7, Johnson Decl., ¶ 7.

    4. Although firearm models used by military forces throughout the world have undergone design changes since the above was published, it remains the case that today's military forces throughout the world continue to utilize selective-fire rifles as their standard service rifles. They have done so since the end of World War II, and will continue to do so for the foreseeable future. Ex. 7, Johnson Decl., ¶ 14.

    5. Semiautomatic rifles, including all of those designated by the D.C. Code as "assault weapons," are not made or designed for offensive military use. They are not used as service rifles by any military force in the world, nor are they preferred by irregular forces or terrorists. They do not allow rapid and spray firing. Ex. 7, Johnson Decl., ¶ 15.

    6. Since they fire only once per trigger pull, semiautomatic rifles are useful, and are widely used throughout the United States, for target shooting, competitions, some forms of hunting, and self defense. Ex. 7, Johnson Decl., ¶ 16.

    7. Some of the rifles designated by the D.C. Code as "assault weapons" have cosmetic similarities with military rifles. For instance, some have a pistol grip that protrudes beneath the action, which allows the rifle to be fired accurately from the shoulder. Such pistol grips are *not* designed to allow the shooter to spray-fire from the hip position. Ex. 7, Johnson Decl., ¶ 17.

    8. The D.C. Code designates certain semiautomatic pistols and shotguns, by name or by generic definition, as "assault weapons." None of these are designed for offensive military use and none are known to be issued to any military force in the world. Ex. 7, Johnson Decl., ¶ 18.

    9. On March 28 and April 4, 2009, Plaintiff Heller participated in and completed a Civilian

Marksmanship Program ("CMP") Clinic in Baltimore, Maryland. Ex. 8, Heller Decl., ¶ 2. The class had 29 participants of which 14 were teenagers or the "Junior" class, the youngest being age eleven. Ex. 8, Heller Decl., ¶ 3.

10.   The clinic subject matter covered safety, firing range procedures, basic shooting positions, rifle marksmanship skills, competition shooting skills, and hours of firearms training with each person firing 80 or more rounds from the 200 yard range position at competition targets. Ex. 8, Heller Decl., ¶ 4.  The AR-15 rifle was used exclusively in this clinic in preparation for CMP Sanctioned Shooting Matches in the AR-15 category.   Ex. 8, Heller Decl., ¶ 5.

11.   Defendants' Statement of Material Facts ¶ 9 states: "The District changed the law to allow the registration of most semi-automatic handguns and rifles." (Quoting Com. Rep. at 2.)  The committee report actually states: "the Council passed . . . the Second Firearms Control Emergency Amendment Act of 2008 (D.C. Act 17-502) on September 16th [, 2008], which was signed into law by the Mayor on the same day.  D.C. Act 17-502 changed the definition of machine gun. This allowed for the registration of most semi-automatic handguns and rifles." Com. Rep. 2.  The committee report was not referring to the Firearms Registration Amendment Act of 2008, Act 17-708, which is at issue here.

Date: September 14, 2009

        Respectfully Submitted,

        /s/ Stephen P. Halbrook
        STEPHEN P. HALBROOK, D.C. Bar No. 379799

        /s/ Richard E. Gardiner
        RICHARD E. GARDINER, D.C. Bar No. 386915
        3925 Chain Bridge Road, Suite 403
        Fairfax, VA  22030
        (703) 352-7276

        Counsel for Plaintiffs