IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICK ANTHONY HELLER, *et al.*　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　　　) CASE: 1:08-cv-01289
　　　　　　　　　　　　　　　　　　　　　) Hon. Ricardo M. Urbina
THE DISTRICT OF COLUMBIA, *et al.*　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants　　　　　　　　　)

## DECLARATION OF HAROLD E. JOHNSON

I, Harold E. Johnson, do hereby swear or affirm:

1. My name is Harold E. Johnson, and am a resident of Vienna, Virginia, and a citizen of the United States.

2. I served as a member of the U.S. Marine Corps during the years 1944-1965, in which my primary duties were as a small arms repairman, ordnance officer and instructor. Prior to my retirement in 1965, I was a commissioned Warrant Officer at the Quantico Ordnance School.

3. During the years 1965 through 1982, I was employed by the U.S. Army Foreign Science and Technology Center as an intelligence analyst. In this capacity, I authored the unclassified books of the Defense Intelligence Agency entitled *Small Arms Identification and Operation Guide--Free World* and *Small Arms Identification and Operation Guide--Eurasian Communist Countries* (Government Printing Office 1966 through four updated editions). These manuals are still utilized as standard reference works. I have also authored hundreds of classified reports concerning small arms and small arms technology.

4. During the years 1960-1968, I acted as a consultant to and expert witness for the Firearms

1

Enforcement Branch of the Internal Revenue Service, U.S. Treasury Department, concerning whether certain firearms were semiautomatic rifles or were machineguns. In 1968 and 1969, I was appointed by the Treasury Department to the Firearms Evaluation Panel which formulated the criteria for importation of sporting firearms, including semiautomatic rifles, handguns, and shotguns. Following organization of the Bureau of Alcohol, Tobacco and Firearms (BATF), I continued to provide occasional expert advice to Treasury through approximately 1975.

5. I am very familiar with the production of firearms, including design, nomenclature, and industry practices. I have examined tens of thousands of firearms in my career.

6. I have studied federal laws governing firearms as well as various State and local laws, with particular regard to technical issues and problems. I have testified as an expert witness in civil and criminal cases involving firearms since the 1960s. I have also testified on technical firearms matters in legislative hearings before committees of the United States Congress and various States and localities.

7. I am very familiar with firearms used for target shooting, competitions, hunting, and other sporting purposes, as well as military firearms. Contemporary military rifles are selective fire "assault rifles." Selective fire means that the rifle has the capability to fire both fully automatic, meaning that it continues to fire as long as the trigger is pulled,[1] as well as semiautomatic, meaning that a separate pull of the trigger is required for each shot. *Small Arms Identification and Operation Guide--Eurasian Communist Countries* (1966 edition), page 51, states: "Assault rifles are short, compact, selective-fire weapons that fire a cartridge intermediate in power between submachinegun

---

[1]Some also fire automatically in bursts, *e.g.*, a three-shot burst with a single pull of the trigger.

Enforcement Branch of the Internal Revenue Service, U.S. Treasury Department, concerning whether certain firearms were semiautomatic rifles or were machineguns. In 1968 and 1969, I was appointed by the Treasury Department to the Firearms Evaluation Panel which formulated the criteria for importation of sporting firearms, including semiautomatic rifles, handguns, and shotguns. Following organization of the Bureau of Alcohol, Tobacco and Firearms (BATF), I continued to provide occasional expert advice to Treasury through approximately 1975.

5. I am very familiar with the production of firearms, including design, nomenclature, and industry practices. I have examined tens of thousands of firearms in my career.

6. I have studied federal laws governing firearms as well as various State and local laws, with particular regard to technical issues and problems. I have testified as an expert witness in civil and criminal cases involving firearms since the 1960s. I have also testified on technical firearms matters in legislative hearings before committees of the United States Congress and various States and localities.

7. I am very familiar with firearms used for target shooting, competitions, hunting, and other sporting purposes, as well as military firearms. Contemporary military rifles are selective fire "assault rifles." Selective fire means that the rifle has the capability to fire both fully automatic, meaning that it continues to fire as long as the trigger is pulled,[1] as well as semiautomatic, meaning that a separate pull of the trigger is required for each shot. *Small Arms Identification and Operation Guide--Eurasian Communist Countries* (1966 edition), page 105 5/, states: "Assault rifles are short, compact, selective-fire weapons that fire a cartridge intermediate in power between submachinegun

---

[1] Some also fire automatically in bursts, *e.g.*, a three-shot burst with a single pull of the trigger.

2

and rifle cartridges.  Assault rifles have mild recoil characteristics and, because of this, are capable

of delivering effective full automatic fire at ranges up to 300 meters."

8.  I have testified in several legislative hearings and judicial proceedings on bills or

enactments concerning "assault weapons."  Reported judicial decisions regarding "assault weapon"

laws in which I rendered affidavits or testified orally include *Springfield Armory v. City of*

*Columbus*, 805 F. Supp. 489 (S.D. Ohio 1992), *rev'd*, 29 F.3d 250 (6th Cir. 1994); *Peoples Rights*

*Organization v. City of Columbus*, 925 F. Supp. 1254 (S.D. Ohio 1996), *aff'd in part and rev'd in*

*part*, 152 F.3d 522 (6th Cir. 1998); and *Robertson v. Denver*, 874 P.2d 325 (Colo. 1994) (on

remand).  These decisions declared all or portions of "assault weapon" laws to be unconstitutionally

vague.

9.  I have carefully studied the definitions of "assault weapon" in D.C. Code § 7-

2501.01(3A)(A) (see Addendum herein).  That provision begins: "'Assault weapon' means: (i) The

following semiautomatic firearms . . . ."  There follows a long list of "specified rifles," such as "All

AK series," "Colt AR-15 series," and "Armalite AR-180," and shorter lists of specified pistols and

shotguns.  After that is a list of generically-defined firearms, beginning with:

> (IV) A semiautomatic, rifle that has the capacity to accept a detachable magazine and
> any one of the following:
> (aa) A pistol grip that protrudes conspicuously beneath the action of the weapon;
> (bb) A thumbhole stock;
> (cc) A folding or telescoping stock;
> (dd) A grenade launcher or flare launcher;
> (ee) A flash suppressor; or
> (ff) A forward pistol grip . . . .

10.  Following the above are further generic definitions including a "semiautomatic pistol

that has the capacity to accept a detachable magazine" with certain characteristics and "a

3

semiautomatic shotgun" with certain characteristics.  Also included are: "All other models within a series that are variations, with minor differences, of those models listed in subparagraph (A) of this paragraph, regardless of the manufacturer . . . ."

11.  All of the above firearms are designated as "semiautomatic."  The only other firearms defined as "assault weapons" are "any shotgun with a revolving cylinder" and "any firearm that the Chief may designate as an assault weapon by rule . . . ."

12.  The following concerns all of the definitions in D.C. Code § 7-2501.01(3A)(A) which specify *rifles*, whether designated by model name or generically, as being "assault weapons."  All of them are described as "semiautomatic."  As noted, the term "semiautomatic" means that the trigger must be pulled for each shot.

13.  By contrast, the term "automatic" is commonly applied to a firearm which shoots automatically more than one shot, without manual reloading, by a single function of the trigger.  D.C. Code § 7-2501.01(10) follows Federal law in designating such firearm as a "machine gun."

14.  As noted above, "Assault rifles are . . . selective-fire weapons . . . . Assault rifles . . . are capable of delivering effective full automatic fire . . . ."  *Small Arms Identification and Operation Guide--Eurasian Communist Countries* (1980 edition), page 105.  Although firearm models used by military forces throughout the world have undergone design changes since that was published, it remains the case that today's military forces throughout the world continue to utilize selective-fire rifles as their standard service rifles.  They have done so since the end of World War II, and will continue to do so for the foreseeable future.

15.  Semiautomatic rifles, including all of those designated by the D.C. Code as "assault weapons," are not made or designed for offensive military use.  They are not used as service rifles

4

by any military force in the world, nor are they preferred by irregular forces or terrorists.  They do not allow rapid and spray firing.

16.  Since they fire only once per trigger pull, semiautomatic rifles are useful, and are widely used throughout the United States, for target shooting, competitions, some forms of hunting, and self defense.

17.  Some of the rifles designated by the D.C. Code as "assault weapons" have cosmetic similarities with military rifles.  For instance, some have a pistol grip that protrudes beneath the action, which allows the rifle to be fired accurately from the shoulder.  Such pistol grips are *not* designed to allow the shooter to spray-fire from the hip position.

18.  As noted, the D.C. Code designates certain semiautomatic pistols and shotguns, by name or by generic definition, as "assault weapons."  None of these are designed for offensive military use and none are known to be issued to any military force in the world.

I declare under penalty of perjury that the foregoing is true and correct.


HAROLD E. JOHNSON

Date: August 28, 2009

5

ADDENDUM

D.C. Code § 7-2501.01. Definitions.

As used in this unit the term:
. . .
(3A)(A) "Assault weapon" means:

(i) The following semiautomatic firearms:

(I) All of the following specified rifles:
(aa) All AK series including, but not limited to, the models identified as follows:
(1) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S;
(2) Norinco (all models);
(3) Poly Technologies (all models);
(4) MAADI AK47 and ARM; and
(5) Mitchell (all models).
(bb) UZI and Galil;
(cc) Beretta AR-70;
(dd) CETME Sporter;
(ee) Colt AR-15 series;
(ff) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR110 C;
(gg) Fabrique Nationale FAL, LAR, FNC, 308 Match, and Sporter;
(hh) MAS 223.
(ii) HK-91, HK-93, HK-94, and HK-PSG-1;
(jj) The following MAC types:
(1) RPB Industries Inc. sM10 and sM11; and
(2) SWD Incorporated M11;
(kk) SKS with detachable magazine;
(ll) SIG AMT, PE-57, SG 550, and SG 551;
(mm) Springfield Armory BM59 and SAR-48;
(nn) Sterling MK-6;
(oo) Steyer AUG, Steyr AUG;
(pp) Valmet M62S, M71S, and M78S;
(qq) Armalite AR-180;
(rr) Bushmaster Assault Rifle;
(ss) Calico --900;
(tt) J&R ENG --68; and
(uu) Weaver Arms Nighthawk.

(II) All of the following specified pistols:
(aa) UZI;
(bb) Encom MP-9 and MP-45;

6

(cc) The following MAC types:
(1) RPB Industries Inc. sM10 and sM11;
(2) SWD Incorporated -11;
(3) Advance Armament Inc. --11; and
(4) Military Armament Corp. Ingram M-11;
(dd) Intratec TEC-9 and TEC-DC9;
(ee) Sites Spectre;
(ff) Sterling MK-7;
(gg) Calico M-950; and
(hh) Bushmaster Pistol.

(III) All of the following specified shotguns:
(aa) Franchi SPAS 12 and LAW 12; and
(bb) Striker 12. The Streetsweeper type S/S Inc. SS/12;

(IV) A semiautomatic, rifle that has the capacity to accept a detachable magazine and any one of the following:
(aa) A pistol grip that protrudes conspicuously beneath the action of the weapon;
(bb) A thumbhole stock;
(cc) A folding or telescoping stock;
(dd) A grenade launcher or flare launcher;
(ee) A flash suppressor; or
(ff) A forward pistol grip;

(V) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following:
(aa) A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer;
(bb) A second handgrip;
(cc) A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning his or her hand, except a slide that encloses the barrel; or
(dd) The capacity to accept a detachable magazine at some location outside of the pistol grip;

(VI) A semiautomatic shotgun that has one or more of the following:
(aa) A folding or telescoping stock;
(bb) A pistol grip that protrudes conspicuously beneath the action of the weapon;
(cc) A thumbhole stock; or
(dd) A vertical handgrip; and

(VII) A semiautomatic shotgun that has the ability to accept a detachable magazine; and

(VIII) All other models within a series that are variations, with minor differences, of those models listed in subparagraph (A) of this paragraph, regardless of the manufacturer;

7

(ii) Any shotgun with a revolving cylinder; provided, that this sub-subparagraph shall not apply to a weapon with an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition; and

(iii) Any firearm that the Chief may designate as an assault weapon by rule, based on a determination that the firearm would reasonably pose the same or similar danger to the health, safety, and security of the residents of the District as those weapons enumerated in this paragraph.