UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DICK ANTHONY HELLER, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 08-01289 (RMU) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants (collectively, "the District"), by and through undersigned counsel, hereby briefly reply to plaintiffs' Opposition to Defendants' Motion for Summary Judgment, in accordance with LCvR 7(d) and the minute order of June 29, 2009.

*Plaintiffs Failed to Meet Their Burden.*

There are no material facts at issue here, and plaintiffs have not identified any, hence summary judgment is appropriate for the District. Plaintiffs failed to meet their burden—to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). *See also Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (on summary judgment, non-movant, having the burden at trial, must respond with a showing of "affirmative evidence.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

To the extent plaintiffs argue that the Council's actions are unsupported by empirical evidence, such a claim is of no moment. "The fact that a congressional directive reflects unprovable assumptions about what is good for the people . . . is not a sufficient reason to find that statute unconstitutional." *National Ass'n of Manufacturers v. Taylor*, ___ F.3d ___, 2009 WL 2851387 (D.C. Cir. Sept. 8, 2009) (quoting *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 61 (1973)).

Plaintiffs fail to identify any material fact in dispute here, and their latest declaration does not do so. That declaration does no more than disagree with the conclusions of the Council (and many state legislatures) and, as such it is "insufficient to create issues of material fact." *Hinson v. Merritt Educational Center*, 579 F.Supp.2d 89, 92 (D.D.C. 2008). *See also Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F.Supp.2d 1, 28 n.11 (D.D.C. 2006) (affidavits "are entirely conclusory, supported by no evidence in the record; as such, they fall under the kind of affidavit typically insufficient to avoid summary judgment."). *Cf. Aguillard*, 482 U.S. at 595 ("[T]he existence of 'uncontroverted affidavits' does not bar summary judgment. [T]he postenactment testimony of outside experts is of little use in determining the [legislature's] purpose in enacting this statute.") (footnote omitted)).

Plaintiffs disparage the idea of "states-as-laboratories" and mock federalism as allowing "localities to decide which arms are not constitutionally protected." P.Opp. at 25. Despite plaintiffs' fixation on the Supreme Court's words, the Second Amendment guarantees the right of *people*, not weapons. The Supreme Court long ago recognized that certain decisions are best left to local legislatures. In *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), a citizen had challenged the state's compulsory smallpox vaccinations, offering testimony from his own medical experts, who would testify that such vaccinations had "little or no value" in preventing

the spread of the disease, and would, in fact, cause other diseases. *Id*. at 30. The Supreme Court affirmed the rejection of the offer. *Id*. at 31 ("It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain"). Moreover, the court indicated that the state was not required to prove that the statute would be effective, and acknowledged the importance of allowing states to learn from other jurisdictions' efforts.

> Nearly every state in the Union has statutes to encourage, or directly or indirectly to require, vaccination; and this is true of most nations of Europe . . . . A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts . . . . The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country, where the government is by the people, through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the Constitution, and would sanction measures opposed to a Republican form of government.

*Id*. at 35 (quoting *Viemester v. White*, 72 N.E. 97 (N.Y. 1904)).

Plaintiffs also insist that the test articulated in *United States v. Salerno*, 481 U.S. 739, 745 (1987), for facial challenges should not be applied here, but that conclusion is incorrect. *See, e.g., Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 699–700 (1995) (a party can demonstrate that a statute is facially invalid *only* by showing that it is unconstitutional in all of its applications). The laws at issue here have a "plainly legitimate sweep," *Washington State Grange v. Washington State Republican Party*, ___ U.S. ___, 128 S. Ct. 1184, 1190 (Mar. 18, 2008), and plaintiffs have not shown otherwise, hence their facial

challenge should be rejected. *See also id*. at 1195 (a facial challenge fails where "at least some" constitutional applications exist) (quoting *Schall v. Martin*, 467 U.S. 253, 264 (1984)); *Nebraska v. EPA*, 331 F.3d 995, 998 (D.C. Cir. 2003) (rejecting facial constitutional challenge to statute; plaintiffs "fall well short of satisfying that considerable burden.") (citing and quoting *Salerno*).

*The Right Identified in* Heller *is Not Fundamental.*

Plaintiffs continue to misread *Heller v. District of Columbia*, ___ U.S. ___, 128 S. Ct. 2783 (Jun. 26, 2008). The Supreme Court did not hold that the Second Amendment right identified there is fundamental. While the Court used the word "fundamental" three times in its decision, it did not use it in its conclusion or holding. The relevant portion of that opinion (on the standard of review) makes clear that the Court was declining to decide such issues. *Id*. at 2817–18. *See also United States v. Moore*, 2009 WL 1033363, * 3 (W.D.N.C. Apr. 17, 2009) ("the *Heller* Court did not explicitly declare this right to be fundamental."); *United States v. Miller*, 604 F.Supp.2d 1162, 1170 (W.D. Tenn. Feb. 26, 2009) (same); *United States v. Radencich*, 2009 WL 127648, * 4 (N.D.Ind. Jan. 20, 2009) (same); *United States v. Schultz*, 2009 WL 35225, * 5 (N.D. Ind. Jan. 5, 2009) (same).

Plaintiffs appear to argue that the cases cited by the District for the proposition that the right here is not fundamental were decided "because" the right was not personal, but a collective militia power. P.Opp. at 2–3. That conclusion is incorrect. *See, e.g., Mosby v. Devine*, 851 A.2d 1031, 1044 (R.I. 2004) (finding an individual right to keep and bear arms under state constitution, "whether a fundamental liberty interest or not"); *Kalodimos v. Village of Morton Grove*, 470 N.E.2d 266, 277–78 (1984) (state constitution grants individual right to bear arms, but it is not a fundamental right).

*The District's Firearms Laws are Reasonable.*

The overwhelming weight of local and federal case law mandates that "reasonableness review" be applied here, and plaintiffs have failed to demonstrate otherwise. Plaintiffs purport to be unclear as to how that test differs from rational basis, but their arguments amount to no more than semantics.

Reasonableness review properly allows legislatures to act when the evident bases for the legislation are reasonable. This is unlike rational-basis review, in which a court need not even consider why a legislature acted.[1] A legislature's reasons for acting can be discovered in explicit findings, but also from context and the substance of the legislation itself.

> In determining the legislative purpose of a law or government practice, courts generally look to the text of a statute or rule, legislative history, administrative interpretations, testimony of parties who participated in the enactment or implementation of the challenged law or practice, historical context, and the sequence of events leading to the passage of the law or the initiation of the practice.

*Bonham v. District of Columbia Library Admin.*, 989 F.2d 1242, 1244–45 (D.C. Cir. 1993) (citing *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987)). *See also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) ("Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.") (citations omitted).

---

[1] Reasonableness review is also not the same as "interest balancing." *See* P.Opp. at 3–4 (citing *Heller*, 128 S. Ct. at 2821). The Court need not conduct any balancing here; the District agrees that the core right cannot be balanced away.

Here, the Council plainly acted to limit gun violence while respecting the core right recognized in *Heller*. Plaintiffs state that they "do not challenge the types of regulation that the District shares with the States generally and the United States." P.Opp. at 9. Plaintiffs thus concede, as they must, that restrictions on Second-Amendment rights are a matter of *degree*, not kind. *Cf. Capitol Sq. Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'Connor, J., concurring) ("reasonable person" in tort law is "a personification of a community ideal of reasonable behavior, determined by the [collective] social judgment.") (alteration in original) (citation omitted). Again, plaintiffs failed to cite any cases invalidating similar "restrictions" imposed by other jurisdictions on the bases they assert here.

"Reasonableness" inevitably results in a spectrum of permissible regulation; one jurisdiction necessarily has to be at each end of that range. To the extent that plaintiffs argue that the District may, somehow, be shown empirically to be the "most restrictive" jurisdiction, there is ample evidence in the legislative record (and the public record) to support the *sui generis* nature of the District of Columbia as the nation's capital, all of which reinforces the reasonableness of the "restrictions" challenged here. Such policy decisions belong to the elected branches of government and not the courts. *See Gonzalez v. Carhart*, 550 U.S. 124, 163–64 (2007) (legislature should receive deference in absence of expert consensus); *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 544 (1989) ("Local officials, by virtue of their proximity to, and their expertise with, local affairs, are exceptionally well qualified to make determinations of public good 'within their respective spheres of authority.'") (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 244 (1984)).

The District does not argue that a legislature's assertion that a gun regulation is reasonable is conclusive. The question is what the core right is; the handgun prohibition in *Heller*

plainly infringed on that core right, the regulations at issue here do not. Plaintiffs never explain how it is part of their "core right" not to have their guns registered, or not to have their vision tested.

Plaintiffs pick nits with the cases cited by the District, but do not cite any themselves that find "registration," as defined by the District or otherwise, is "unreasonable" or unconstitutional. Plaintiffs' opposition quibbles with many of the examples of state and local law cited by the District, but provides no basis to invalidate the District's reasonable regulation.

Plaintiffs insist—again, without support—that "core rights" like those under the Second Amendment are fundamental and subject to strict scrutiny. P.Opp. at 4. Plaintiffs never define that amorphous term, but, at bottom, it is another method of discussing "reasonableness," *i.e.*, there is a range of permissible approaches that may be valid, so long as "they do not impair the core conduct upon which the right was premised." *Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007).[2]

In any event, that right cannot be broader than that already found by the Supreme Court, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 128 S. Ct. at 2821. The District's laws allow the exercise of this right with minimal intrusions.

---

[2] The closest plaintiffs come is when they assert that "the Second Amendment protects the core, fundamental right to keep commonly-possessed firearms in the home." P.Opp. at 9. That statement unhelpfully conflates several distinct ideas discussed at length in *Heller*, in a failed attempt to expand that decision's holding well beyond its boundaries. The Supreme Court explicitly noted that its decision in *Heller* was not meant to reveal everything the Second Amendment *allowed*, 128 S.Ct. at 2816, but only decided the single issue before the Court—the District's prohibition which "totally bans handgun possession in the home." *Id.*, 2817. If that decision had, in fact, determined that the Second Amendment authorizes persons to keep all "commonly possessed firearms" in their homes, the District avers that some authority—in the 15 months since the decision—would have noted that fact. Plaintiffs' assertion may therefore be categorized as "wishful thinking."

Plaintiffs continue to maintain that "registration violates the Second Amendment," P.Opp. at 11, but again fail to cite any controlling or persuasive case that supports their myopic view.[3] Contrary to plaintiffs' claim, the District has not argued that registration is "not unusual," but, rather, that registration is not the clearly unconstitutional practice implied by plaintiffs. The idea of "reasonableness" is founded on the idea of collective judgment, which will vary depending on local context and other factors.

Plaintiffs again claim that "[a] state may not impose a charge for the enjoyment of a right granted by the federal constitution." P.Opp. at 15 (quoting *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943)). Notwithstanding that the "right" at issue here pre-dated the Constitution, *Heller*, 128 S. Ct. at 2797, the *dicta* offered by plaintiffs does not advance the Court's understanding. Indeed, plaintiffs' unqualified argument is, in addition to being outdated, simply wrong. *See, e.g., Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 21 (1989) (disavowing the "unnecessarily sweeping statements" in *Murdock*).[4]

Plaintiffs have not distinguished longstanding law, which holds that the government "may exact fees from citizens for many different kinds of licenses." *M.L.B. v. S.L.J.*, 519 U.S. 102, 123 & n.14 (1996) (quoting *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 668 (1966)). Plaintiffs argue that New York City's considerably higher registration fees do not show that the

---

[3]   Plaintiffs similarly misread *United States v. Miller*, 307 U.S. 174 (1939). That decision did not implicitly or explicitly hold that registration is not permissible.

[4]   The Court in *Bullock* noted that *Murdock* struck down, under the Free Exercise Clause, a license fee charged to missionaries soliciting door-to-door. *Bullock*, 489 U.S. at 23 & n.10. The challenged fees were $20 for three weeks, assessed on "itinerant preachers whose average earnings totaled only $32.50 per month before income taxes . . . ." *Id*. The *Murdock* court found that the challenged "fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors." *Id*. (quoting *Murdock*, 489 U.S. at 116). The District avers that, even if *Murdock* controlled here, the instant fees do not come close to meeting that decision's threshold.

District's fees are reasonable. P.Opp. at 16. But this argument epitomizes the fatal flaw in plaintiffs' case; plaintiffs assert that New York City's fees are a "more severe violation of a constitutional right," *id.*, but do not cite to any cases from that (or any other) jurisdiction finding that imposing *any fees at all* on gun registration violates the Second Amendment.

Similarly, plaintiffs offer only hypotheticals, and no cases where training, testing, or vision requirements unreasonably infringed on any right to bear arms. Plaintiffs also fail to provide any case law support for their challenges to the District's one-gun-per-month, fingerprints and photographs, and ballistics-testing requirements. *See* P.Opp. at 18–20.

*The District Regulation of Assault Weapons is Reasonable.*

Plaintiffs take issue with the findings of the Committee Report cited by the District, calling them "unsupported allegations," P.Opp. at 21, and provide yet another conclusory declaration in opposition.

For example, the declaration broadly states "Semiautomatic rifles, including all of those designated by the D.C. Code as 'assault weapons,' are not made or designed for offensive military use. They are not used as service rifles by any military force in the world, nor are they preferred by irregular forces or terrorists. They do not allow rapid and spray firing." Declaration of Harold E. Johnson (Aug. 28, 2009), ¶ 15. That entire paragraph is copied, word-for-word, in the opposition. *See* P.Opp. at 22. Notwithstanding that the term "rapid" is subjective, "[p]laintiff's own unsubstantiated beliefs amount to nothing more than hearsay, self-serving

statements and speculation, and are insufficient as such to defeat summary judgment." *Hinson*, 579 F.Supp.2d at 102 n.5 (citations omitted).[5]

*Heller*'s "common use" test applies to banning an entire *class* of firearms—there, handguns. It has no application to particular models or sub-classes. A contrary conclusion would lead to absurd results, as the District has argued. Plaintiffs do not articulate how the District's prohibition on assault weapons implicates a "core right."

Plaintiffs, just as they did in their registration arguments, claim that "not one of the cited states has as complete a ban as does the District." P.Opp. at 26. Again, reasonableness implies a comparison of different methods, with a range of permissible approaches.

*Conclusion*

Plaintiffs speak of their rights under the Second Amendment in absolute terms, as if their unlimited exercise of those rights would have no impact on others. Such a proposition does not find support in the Constitution, case law, or common sense.

> [T]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to be equal enjoyment of the same right by others. It is then liberty regulated by law.

*Crowley v. Christensen*, 137 U.S. 86, 89–90 (1890).

---

[5] *See, e.g.,* Bureau of Alcohol, Tobacco & Firearms, *Department of the Treasury Study on the Sporting Suitability of Modified Semiautomatic Assault Rifles*, at 24 (Apr. 1998) ("a semiautomatic copy of an AK47 and 75-round magazines fired 106 rounds in less than 2 minutes.") (available online at *http://www.atf.gov/pub/treas_pub/assault_rifles/index.htm*); Mark A. Westrom, "Rapid Semiautomatic Fire and the Assault Rifle: Firing Rate Versus Accuracy," (discussing firing rates of 30 shots per minute to 120 shots per minute) (available online at http://www.dtic.mil/ndia/2001smallarms/westrom.pdf).

DATE: September 24, 2009                    Respectfully submitted,

                                                                                  PETER J. NICKLES
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

     /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

     /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov