IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, | ) |
| ABSALOM F. JORDAN, JR., | ) |
| WILLIAM CARTER, | ) |
| WILLIAM L. SCOTT, | ) |
| ASAR MUSTAFA | ) |
| | ) |
| and | ) |
| | ) |
| JEROME PARSON | ) |
| 6413 N. Capitol Street | ) |
| Washington, D.C. 20012 | ) |
| | ) |
| and | ) |
| | ) |
| BURNELL BROWN | ) |
| 3400 Commodore Joshua Barney Drive | ) |
| Apt. 301W | ) |
| Washington, D.C. 20018 | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | )   1:08-cv-01289 |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) |
| and | ) |
| | ) |
| VINCENT C. GRAY, Mayor | ) |
| District of Columbia | ) |
| | ) |
| Defendants | ) |

**FOURTH AMENDED COMPLAINT**

**(For Declaratory Judgment, Injunctive
Relief, and Writ of Mandamus)**

1) This is an action to vindicate the right of the people of the District of Columbia to keep

and bear arms under the Second Amendment to the United States Constitution, which prohibits

-1-

infringement of the right of law-abiding citizens to keep commonly-possessed firearms in the home for lawful purposes.

## Parties

2) Plaintiff Dick Anthony Heller is a resident of the District of Columbia and a citizen of the United States.

3) Plaintiff Absalom F. Jordan, Jr. is a resident of the District of Columbia and a citizen of the United States.

4) Plaintiff William Carter is a resident of the District of Columbia and a citizen of the United States.

5) Plaintiff William L. Scott is a resident of the District of Columbia and a citizen of the United States.

6) Plaintiff Asar Mustafa is a resident of the District of Columbia and a citizen of the United States.

7) Plaintiff Jerome Parson is a resident of the District of Columbia and a citizen of the United States.

8) Plaintiff Burnell Brown is a resident of the District of Columbia and a citizen of the United States.

9) All plaintiffs are eligible under the laws of the United States and of the District of Columbia to receive and possess firearms, except that Plaintiffs Jerome Parson and Burnell Brown are "blind" within the meaning of D.C. Code § 7-2502.03(a)(11) and D.C. Code § 7-1009(1).

10) Defendant District of Columbia ("the District") is the Seat of the Government of the United States and a municipality organized under the Constitution and laws of the United States.

11) Defendant Vincent C. Gray is the Mayor of the District of Columbia whose principal place of business is in Washington, D.C. He is being sued in his official capacity.

### Jurisdiction

12) Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under of color of the laws, statute, ordinances, regulations, customs and usages of the District of Columbia, of rights, privileges or immunities secured by the United States Constitution.

13) This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391.

### Background

14) *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." Thereafter, the District enacted several acts further restricting possession of firearms, in some cases more stringently than before the *Heller* decision.

15) On January 6, 2009, former Mayor Adrian Fenty signed into law the Firearms Registration Emergency Amendment Act of 2008, which became effective immediately and which expired on April 6, 2009.  On December 28, 2008, Mayor Fenty signed the Firearms Control Amendment Act of 2008, which was transmitted to Congress on February 10, 2009, and which became effective on or about April 1, 2009.

16) On May 15, 2012, Mayor Vincent Gray signed the Firearms Amendment Act of 2011,

B19-0614, which was transmitted to Congress on May 24, 2012, and became law on September 26, 2012 (L19-0170).

### Unduly Burdensome Registration Requirements

17) The District requires that a person register to exercise Second Amendment rights: "no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm."   D.C. Code § 7-2502.01(a). (Unless otherwise indicated, all cited section numbers herein refer to the provisions of the D.C. Code effective as of the date of this filing.)

18) The term "firearm" includes handguns (including pistols) and long guns, i.e., rifles and shotguns.

19) Possession of an unregistered firearm is punishable by imprisonment for one year and a $1,000 fine, and by imprisonment for five years and a $5,000 fine for a second offense.   § 7-2507.06.

20) The requirement that a person must register a firearm to possess or control it is a novel, not historic, requirement which applies to handguns, rifles, and shotguns, and its effect on the exercise of Second Amendment rights is not *de minimis*.

21) No registration certificate shall be issued unless the Chief of the Metropolitan Police Department determines, *inter alia*, that the applicant meets several criteria, whether registering a handgun, a rifle, or a shotgun.

22) The applicant:

> Has not failed to demonstrate satisfactorily, in accordance with a test prescribed by the Chief, a knowledge of the laws of the District of Columbia pertaining to firearms and, in particular, the requirements of this act, the

responsibilities regarding storage, and the requirements for transport . . . .

§ 7-2502.03(a)(10).

23) The "[t]he type of test and its content shall be at the sole discretion of the Director [the commanding officer or acting commanding officer of the Identification and Records Division of the Metropolitan Police Department]."  D.C. Municipal Regulations § 24-2311.3.

24) The test requirement is a novel, not historic, registration requirement and applies to handguns, rifles, and shotguns.

25)  An applicant must not be "blind," as defined in D.C. Code § 7-1009(1).   § 7-2502.03(a)(11).

26) The term "blind" refers to:

[A] person who is totally blind, has impaired vision of not more than 20/200 visual acuity in the better eye and for whom vision cannot be improved to better than 20/200, or who has loss of vision due wholly or in part to impairment of field vision [*sic*] or to other factors which affect the usefulness of vision to a like degree.

D.C. Code § 7-1009(1).

27)  The prohibition on registering a firearm applies even to a "blind" person who wishes merely to possess a firearm as an inheritance, a collector's item, to preserve for descendants, or other lawful purpose, and not for actual discharge or other use.

28)  The prohibition on registering a firearm by a "blind" person, and hence on mere possession of a firearm by a "blind" person, is a novel, not historic, registration requirement and applies to handguns, rifles, and shotguns.

29) No registration certificate shall be issued unless the Chief determines that the applicant:

(A) Has completed a firearms training and safety class provided free of charge by the Chief; or

(B) Has submitted evidence of any of the following:
(i) That the applicant has received firearms training in the United States military;
(ii) A license from another state for which firearms training is required, where the training, as determined by the Chief, is equal to or greater than that provided under subparagraph (A) of this paragraph; or
(iii) That the applicant has otherwise completed a firearms training or safety course conducted by a firearms instructor that, as determined by the Chief, is equal to or greater than that conducted under subparagraph (A) of this paragraph . . . .

§ 7-2502.03(a)(13).

30) The prohibition on registering a firearm unless the applicant has complied with the training requirements of § 7-2502.03(a)(13) is applicable even to a person who wishes merely to possess a firearm as an inheritance, a collector's item, to preserve for descendants, or other lawful purpose, and not for discharge or other actual use.

31) The prohibition on registering a firearm unless the applicant has complied with the training requirements of § 7-2502.03(a)(13) is a novel, not historic, registration requirement and applies to handguns, rifles, and shotguns.

32) An applicant must provide on a form, *inter alia*, his/her present business or occupation and the address and phone number of the employer, where the firearm will generally be kept, and "[s]uch other information as the Chief determines is necessary to carry out the provisions of this unit."  § 7-2502.03(b).

33) The prohibition on registering a firearm unless the applicant has provided the information required by § 7-2502.03(b), including his/her present business or occupation and the address and phone number of the employer, where the firearm will generally be kept, and "[s]uch other information as the Chief determines is necessary," is a novel, not historic, registration requirement and applies to handguns, rifles, and shotguns.

34) "The Chief shall register no more than one pistol per registrant during any 30-day period," with an exception for new residents. § 7-2502.03(e).

35) The prohibition on registering not more than one pistol per registrant during any 30-day period is a novel, not historic, registration requirement.

36) § 7-2502.04 provides in part:

> (a) The Chief shall require any person applying for a registration certificate to be fingerprinted in order to conduct an efficient and adequate investigation into the matters described in section 203 and to effectuate the purposes of this act. . . .

> (b) The Chief shall take a digitalized, full-face photograph of each applicant, other than an organization, to be included as part of a person's firearms registration application.  Such photo shall be taken simultaneously with the filing of the application.

> (c) Every applicant . . . shall appear in person at a time and place prescribed by the Chief, and may be required to bring with him the firearm for which a registration certificate is sought . . . .

37) A fee of $35 is charged to conduct the fingerprinting.

38) The prohibitions on registering a firearm unless the applicant has been fingerprinted, photographed, appeared in person, brought the firearm with him, and paid the fee for fingerprinting are novel, not historic, registration requirements and apply to handguns, rifles, and shotguns.

39) "Each application required by this subchapter shall be accompanied by a nonrefundable fee to be established by the Mayor . . . ." § 7-2502.05(b).  No limit is set on the amount of the fee. The fee is currently $13 for each firearm registered.

40) The prohibition on registering a firearm unless a fee is paid is a novel, not historic, registration requirement and applies to handguns, rifles, and shotguns.

41) Further requirements to register a firearm are imposed by Chapter 23 of Title 24, District

-7-

of Columbia Municipal Regulations.  See §§ 24-2305 *et seq*.

42) The applicant must report to the Firearms Registration Section (FRS) of the Metropolitan Police Department (MPD) in person to submit the application to register, must pay fees for fingerprinting and registration, and submit to fingerprinting.  The applicant must then await notification by mail from the FRS that the registration requirements have been satisfied.  No time limit is prescribed.  The person must then return to the FRS in person to complete the process and obtain the MPD seal on the registration certificate.

43) The requirements to register a firearm imposed by Chapter 23 of Title 24, District of Columbia Municipal Regulations, are novel, not historic, are not *de minimis*, and apply to handguns, rifles, and shotguns.

44) Having a firearm registered does not prevent a person from being prosecuted for possession of an unregistered firearm because: "Registration certificates shall expire 3 years after the date of issuance unless renewed in accordance with this section for subsequent 3-year periods." § 7-2502.07a(a).

45) To renew a registration, the applicant must submit a statement attesting to the registrant's possession of the registered firearm, address, and "continued compliance with all registration requirements set forth in § 7-2502.03(a)." § 7-2502.07a(c).  This information duplicates information already in the original registration and in any notice of changed information filed pursuant to § 7-2502.08(a).

46) The requirement to renew a registration is a novel, not historic, registration requirement which applies to handguns, rifles, and shotguns.

47) A registrant is required to notify the Chief in writing (A) immediately of the loss, theft,

-8-

or destruction of a firearm, (B) of any change in name or address, and (C) of the sale, transfer or other disposition of the firearm within 2 business days.  § 7-2502.08(a).

48) The requirements of § 7-2502.08(a) are novel, not historic, registration requirements which apply to handguns, rifles, and shotguns.

49) Each registrant must "have in the registrant's possession, whenever in possession of a firearm, the registration certificate, or exact photocopy thereof, for such firearm, and exhibit the same upon the demand of a member of the Metropolitan Police Department, or other law enforcement officer."  § 7-2502.08(c).

50) The requirements of § 7-2502.08(c) are novel, not historic, registration requirements which apply to handguns, rifles, and shotguns.

51) A registrant is subject to "a civil fine of $100 for the first violation or omission of the duties and requirements imposed by this section"; (2) for the second violation or omission, a civil fine of $500, revocation of the registration, and prohibition of possessing or registering a firearm for five years; and (3) for the third violation or omission, a civil fine of $1,000, revocation of the registration, and a permanent prohibition on possessing or registering any firearm.  § 7-2502.08(e). Thus, a registrant may be penalized and may lose his or her Second Amendment rights altogether for, *e.g.*, failure to notify the Chief of any change in the registrant's name or address, or for failure to exhibit a registration certificate upon the demand of a law enforcement officer.

52) If a registration expires and is inadvertently not renewed, such as due to sickness, travel, or lost mail, possession of an unregistered firearm is punishable by imprisonment for one year and a $1,000 fine.  § 7-2507.06.  Unless the person is in his/her dwelling place, place of business, or on other land possessed by the person, and the firearm could otherwise be registered, a second offense

is punishable by imprisonment for five years and a $5,000 fine.  § 7-2507.06.

53) Plaintiffs have been subjected to the District's registration requirements in the past and will continue to be subjected to them in the future, with respect to handguns, rifles, and shotguns, including both those they have obtained in the past or will obtain in the future, causing them to incur expenses, to suffer burdens, and to cost them an inordinate amount of time to exercise the constitutional right to keep and bear arms.

54) The information provided by Plaintiffs on the application may be disclosed to the public because D.C. Code § 2-532 provides: "Any person has a right to inspect, and at his or her discretion, to copy any public record of a public body, except as otherwise expressly provided by § 2-534." No express exemption exists for firearm registration information.  The sole potentially applicable exemption, § 2-534(a)(2), states only that "[t]he following matters *may* be exempt from disclosure under the provisions of this subchapter: . . . (2) Information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy . . . ." (Emphasis added).  Disclosure of registration information could expose Plaintiffs to increased risk of burglary, identity theft, and armed intrusion.

55) The registration and re-registration requirements are not limited to basic registration because they do not require only a modicum of information about the registrant and his firearm, and, individually and in combination, impose a substantial burden upon Plaintiffs' exercise of the core right of self-defense in the home and otherwise infringe on Plaintiffs' Second Amendment rights.

56)  In addition, requiring registration of rifles and shotguns as provided above or otherwise, including basic registration, is novel, not historic, and constitutes an infringement of Plaintiffs' rights under the Second Amendment.

57) Administration and enforcement of the provisions at issue are by agents and employees of the District of Columbia under the supervision of Defendant Gray.  As a proximate cause of the administration and enforcement of above provisions of the Act as aforesaid, Plaintiffs have been, and will continue to be, subjected to irreparable harm.

### Prohibition of Commonly-Possessed Firearms Denigrated as "Assault Weapons"

58) The Firearms Control Amendment Act of 2008 (hereafter "the Act") prohibits possession of a wide array of commonly-possessed rifles, shotguns, and pistols which it pejoratively and incorrectly calls "assault weapons."  "A registration certificate shall not be issued for a: . . . (6) An assault weapon . . . ."  D.C. Code § 7-2502.02(a)(6).

59) "Assault weapon" is defined to include numerous semiautomatic firearms with specified model names and others with certain generic features.  § 7-2501.01(3A)(A)(i).  They include:

*"(I) All of the following specified rifles:"*, following which are a long list of named rifles, such as "Colt AR-15 series" and "Armalite AR-180."  *"(VIII) All other models within a series that are variations, with minor differences, of those models listed in subparagraph (A) of this paragraph, regardless of the manufacturer . . . ."*  The Act does not define "series," "variations," or "minor differences."

60) The above-referenced "AR-15 series" and its "variations" include rifles that are widely used in the Civilian Marksmanship Program (CMP), which is controlled by the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety.  P.L. 105-225, 112 Stat. 1253, 1335 (1998).  The CMP functions "(1) to instruct citizens of the United States in marksmanship; [and] (2) to promote practice and safety in the use of firearms . . . ."  112 Stat. at 1337.

61) On or about March 19, 2009, Plaintiff Heller submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Bushmaster XM-15-E2S, .223 caliber, rifle, "For use in the Civilian Marksmanship Program, kept in my home." By letter dated March 19, 2009, the Metropolitan Police notified Heller that the pistol is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

62) On or about February 17, 2009, Plaintiff Jordan submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for an Armalite AR-180 .223 caliber semiautomatic rifle, to be used for "personal protection."  By letter dated February 18, 2009, the Metropolitan Police notified Jordan that the rifle is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

*"(II) All of the following specified pistols:",* following which are a list of named pistols beginning with "UZI." UZI is the first name of the famed Jewish firearm designer Uzi Gal, and is not the name of any specific model with any specific features. The District thus purports to prohibit a firearm based solely on the name of the designer without regard to any characteristics of the firearm.

63) On or about March 19, 2009, Plaintiff Heller submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Baby Eagle UZI, 9mm semiautomatic pistol, for "self-defense in the home." This is an ordinary pistol similar to other 9mm pistols. By letter dated March 19, 2009, the Metropolitan Police notified Heller that the pistol is

unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01."

*"(III) All of the following specified shotguns:"*, following which are a list of named shotguns.

*"(IV) A semiautomatic, [sic] rifle that has the capacity to accept a detachable magazine and any one of the following:"*, following which are generic listings such as "(aa) A pistol grip that protrudes conspicuously beneath the action of the weapon; (bb) A thumbhole stock; (cc) A folding or telescoping stock . . . ." Such rifles are commonly possessed for lawful purposes throughout the United States.

64) Before passage of the Act, Plaintiff Carter ordered and paid for an LMT Defender 2000 .223 caliber semiautomatic rifle for $1,806.94. Upon the rifle being shipped to and received by a licensed firearms dealer, on or about February 24, 2009, Carter submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for the rifle for "recreational activity, NRA range." By letter dated February 24, 2009, the Metropolitan Police notified Carter that the rifle is unregisterable because: "The listed weapon is defined as an 'assault weapon' and prohibited from being registered in the District of Columbia per the Firearms Registration Act of 2009, amendment 12-22-08, D.C. Code 7-2501.01." Such determination was made on the basis that the rifle has a pistol grip that protrudes conspicuously beneath the action of the weapon and a telescoping stock.

*"(V) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following:"*, following which are generic listings such as "A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer," and "The capacity to accept a detachable

magazine at some location outside of the pistol grip . . . ."  The former would include threading for target-style barrel weights or muzzle brakes to reduce recoil.

"*(VI) A semiautomatic shotgun that has both of the following:*", including certain stock and grip features.

"*(VII) A semiautomatic shotgun that has the ability to accept a detachable magazine.*"

65) The term "assault weapon" is also defined to include:  "*Any firearm that the Chief may designate as an assault weapon by rule, based on a determination that the firearm would reasonably pose the same or similar danger to the health, safety, and security of the residents of the District as those weapons enumerated in this paragraph.*"  § 7-2501.01(3A)(A)(iii).  This empowers the Chief to ban any firearm of any kind whatever without regard to any defined feature, or to ban all firearms simply by designating them with the label "assault weapon."

66) Excluded from the term "assault weapon" are a list of pistols "designed expressly for use in Olympic target shooting events, sanctioned by the International Olympic Committee and by USA Shooting, the national governing body for international shooting competition in the United States," and "new models of competitive pistols" exempted by the Chief "based either on recommendations by USA Shooting consistent with the regulations contained in the USA Shooting Official Rules or on the recommendation or rules of any other organization that the Chief considers relevant."  § 7-2501.01(3A)(B), (C).  No exemption exists for pistols designed for other types of target shooting events, hunting, or self defense.

### Prohibition of Commonly-Possessed Magazines for Firearms

67) The Act enacted § 7-2506.01(b), which provides: "No person in the District shall possess,

sell, or transfer any large capacity ammunition feeding device regardless of whether the device is attached to a firearm." That term is defined as any magazine or other device that "has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." Violation is punishable by a $1,000 fine and one year in prison. § 7-2507.06.

68) Magazines that have a capacity of more than 10 rounds of ammunition are commonly possessed by law-abiding citizens throughout the United States for self defense, target shooting, hunting, and other lawful purposes. Such magazines would be useful for militia purposes. Many firearms are designed for and sold with magazines that hold more than 10 rounds.

69) The need for and usefulness of magazines holding more than 10 rounds for lawful defense of self and others is demonstrated by the fact that they are issued to the police. In 1989, the District Metropolitan Police Department adopted the Glock 17 as its service pistol, magazines for which hold 17 rounds, and later adopted the Glock 19, magazines for which hold 15 rounds.

70) On or about March 19, 2009, Plaintiff Heller submitted to the Metropolitan Police Department an Application for Firearms Registration Certificate for a Sig Sauer P226 9mm pistol. On the form under "No. of Shots" is written the number "15," which means that the magazine has a capacity of 15 rounds of ammunition. The intended use of the firearm is specified as "self-defense in the home." By letter dated March 19, 2009, the Metropolitan Police disapproved the application for the following reason: "Unregisterable firearm (15 round ammunition capacity is defined as a 'large capacity ammunition feeding device' and exceeds 10 rounds as required by D.C. Code 7-2506.01(b))."

71) Administration and enforcement of the provisions at issue are by agents and employees of the District of Columbia under the supervision of Defendant Gray. As a proximate cause of the

administration and enforcement of above provisions of the Act as aforesaid, Plaintiffs have been, and will continue to be, subjected to irreparable harm.

## COUNT ONE

### (Unduly Burdensome Registration Requirements Violative of the Second Amendment)

72) Paragraphs 1 through 71 are realleged and incorporated herein by reference.

73) The District's firearm registration and re-registration requirements are not limited to basic registration because they do not require only a modicum of information about the registrant and his firearm, and, both individually and in combination, infringe on the constitutional right of the people, including Plaintiffs, to keep and bear arms because they impose a substantial burden upon Plaintiffs' exercise of the core right of self-defense in the home.

74) The District's requirement of registration of rifles and shotguns, including basic registration, is novel, not historic, and constitutes an infringement of Plaintiffs' rights under the Second Amendment.

75) Plaintiffs are subject to various prohibitions in the federal Gun Control Act, 18 U.S.C. § 921 *et seq*., as well as the D.C. Code, both of which forbid potentially dangerous categories of persons from possession of firearms.  To obtain firearms, Plaintiffs are subject to record checks under the National Instant Criminal Background Check System (NICS), which accesses records of criminal convictions and indictments, mental disabilities, illegal alien status, and other prohibited categories.  These provisions of law are more than adequate to ensure that Plaintiffs and other persons are eligible lawfully to exercise their constitutional right to keep and bear arms.

76) All, or some, of the plaintiffs have been and will continue to be subjected to the following requirements, in violation of said Second Amendment rights:

-16-

a. The duty to register for the mere possession of a handgun, rifle, or shotgun, with criminal penalties for violation.  D.C. Code §§ 7-2502.01(a), 7-2507.06.  Plaintiff Heller has registered one (1) rifle and two (2) handguns.  Plaintiff Jordan has registered two (2) shotguns, two (2) rifles, and three (3) handguns.  Plaintiff Snyder has registered one (1) rifle.  Plaintiff Scott has registered two (2) shotguns and one (1) rifle.  Plaintiff Mustafa has registered one (1) handgun.

b. The duty to demonstrate knowledge concerning the firearms laws of the District to be permitted to register a firearm.  § 7-2502.03(a)(10).

c. The requirement not to have impaired vision of not more than 20/200 visual acuity in the better eye, or not to have loss of vision due wholly or in part to impairment of field vision (*sic*) or to other factors which affect the usefulness of vision to a like degree.  § 7-2502.03(a)(11).  Plaintiff Parson was denied registration of a pump shotgun on February 6, 2013 on this basis alone, and Plaintiff Brown was denied registration of a revolver on February 11, 2013 on this basis alone.

d. The duty to complete a firearms training and safety class, or to provide evidence of any of other forms of training.  § 7-2502.03(a)(13).

e. The duty to disclose present business or occupation and the address and phone number of the employer, to report where each firearm will be kept, and to report other information determined by the Chief.  § 7-2502.03(b).

f. The prohibition on registration of more than one pistol per registrant during any 30 day period.  § 7-2502.03(e).  This provision prevented Plaintiff Jordan from registering two other handguns when he registered a handgun on July 6, 2009.

g. Fingerprints, photographs, and personal appearance of the applicant with the firearm sought to be registered (§ 7-2502.04), including payment of a $35 fingerprinting fee.  This

requirement necessitates multiple trips to the FRS, which particularly burdens applicants who have difficulty taking time off work and/or who lack financial resources.

h. The registration fee established by the Mayor.  § 7-2502.05(b).  This requirement burdens all applicants, particularly those who lack financial resources, such as Plaintiff Scott (who lives in public housing) and Plaintiff Mustafa (who was only able to purchase a very inexpensive firearm and had to borrow funds to pay the fee to the licensed dealer so that he would have funds to pay registration and fingerprinting fees).

i. The expiration of registration certificates after three years and requirement of renewal, including the charging of a fee.  § 7-2502.07a.

j. The duty to notify the Chief in writing (A) immediately of the loss, theft, or destruction of a firearm, (B) of any change in name or address, and (C) of the sale, transfer or other disposition of the firearm within 2 business days.  § 7-2502.08(a).

k. The duty to exhibit the registration certificate upon the demand of a member of the Metropolitan Police Department, or other law enforcement officer, without regard to the basis for such demand.  § 7-2502.08(c).

l. Subjecting registrants to fines, revocations of registration, and prohibitions on possession of firearms for violations or omissions under § 7-2502.08.

m. Exposure to disclosure of registration information.

Accordingly, the above provisions, individually and in combination, and facially and as applied, substantially and unduly burden, impede, and infringe on the Second Amendment right of the people, including Plaintiffs, to keep and bear arms, and are void.

## COUNT TWO

### (Prohibition on Commonly-Possessed Firearms and Magazines)

77) Paragraphs 1 through 76 are realleged and incorporated herein by reference.

78) The District prohibits two classes of items which are commonly possessed by law-abiding persons throughout the United States for lawful purposes: firearms the District pejoratively calls "assault weapons"; and magazines that have the capacity to accept more than 10 rounds of ammunition.

79) As set out above, the District denied an application by Plaintiffs Heller, Jordan, and Carter to register rifles, a pistol, and a shotgun because the District denigrates them as "assault weapons"; and denied an application by Plaintiff Heller to register a pistol because it has a magazine which holds more than ten rounds of ammunition.

80) Accordingly, the following provisions facially, and as applied, infringe on the right of the people, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution: D.C. Code § 7-2502.02(6), which prohibits registration of an "assault weapon"; and D.C. Code § 7-2506.01(b), which prohibits possession, sale, and transfer of an ammunition feeding device with a capacity of more than ten rounds.

## COUNT THREE

### (Americans with Disabilities Act)

81) Paragraphs 1 through 80 are realleged and incorporated herein by reference.

82) 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." "The District

of Columbia firearms registration system is a service, program, or activity of a public entity within the meaning of 42 U.S.C. § 12132.

83) The District of Columbia is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

84) Plaintiffs Parson and Brown are "qualified individuals with a disability" as defined in 42 U.S.C. § 12131(2).

85) 42 U.S.C. § 12102(1) defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," and defines "major life activities" to include "seeing."

86) 28 CFR § 35.130(b)(6) provides that a "public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability . . . ."

87) 28 CFR § 35.130(b)(8) provides that a "public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

88) Firearms are useful in connection with the core Second Amendment right of self-defense, even if they are not fired, because displaying the firearm may prevent a crime from being committed.

89) A blind person has no less right than a sighted person to possess a firearm for self-defense and other lawful purposes, and to defend hearth and home by displaying a firearm.

90) Simply because an individual is blind does not mean that he/she is careless, irresponsible,

negligent, or lacking in good judgment.

91) The District has denied Plaintiffs Parson and Brown the benefits of its services, programs, or activities, and subjected Plaintiffs Parson and Brown to discrimination, by denying them the opportunity to register a firearm only because they were "blind" within the meaning of D.C. Code § 7-2502.03(a)(11) and D.C. Code § 7-1009(1).

92) D.C. Code § 7-2502.03(a)(11) is a licensing or certification program that subjects Plaintiffs Parson and Brown to discrimination on the basis of their disability, in violation of 28 CFR § 35.130(b)(6).

93) D.C. Code § 7-2502.03(a)(11) imposes or applies an unnecessary eligibility criterion that screens out Plaintiffs Parson and Brown from fully and equally enjoying the right to own and possess firearms, in violation of 28 CFR § 35.130(b)(8).

94) Accordingly, D.C. Code § 7-2502.03(a)(11) facially, and as applied, violates 42 U.S.C. § 12132, 28 CFR § 35.130(b)(6), and 28 CFR § 35.130(b)(8).

WHEREFORE, Plaintiffs pray that the court:

1) Enter a declaratory judgment that the following provisions infringe on the right of the people to keep and bear arms, in violation of the Second Amendment to the United States Constitution and are void: the substantially and unduly burdensome registration and re-registration requirements as alleged in Count One; and the prohibitions on "assault weapons," and on magazines holding more than ten rounds as alleged in Count Two.

2) Enter a declaratory judgment that D.C. Code § 7-2502.03(a)(11) facially, and as applied, violates 42 U.S.C. § 12132, 28 CFR § 35.130(b)(6), and 28 CFR § 35.130(b)(8).

3) Issue preliminary and permanent injunctions enjoining Defendants District of Columbia,

Vincent Gray, and their officers, agents, and employees from administration and enforcement of the provisions alleged herein to violate the Second Amendment.

4) Issue preliminary and permanent injunctions enjoining Defendants District of Columbia, Vincent Gray, and their officers, agents, and employees from administration and enforcement of D.C. Code § 7-2502.03(a)(11).

5) In the alternative, issue preliminary and permanent injunctions and a writ of mandamus requiring Defendants District of Columbia, Vincent Gray, and their officers, agents, and employees to register firearms which the District defines as "assault weapons," and firearms with magazines holding more than ten rounds.

6) Order Defendants to refund and reimburse to Plaintiffs all fees, costs, and expenses paid by Plaintiffs arising out of the District's firearm registration requirements.

7) Grant such other and further relief as may be proper.

8) Award Plaintiffs attorney's fees and costs.

<div style="margin-left: 40%">

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
William Scott
Asar Mustafa
Jerome Parson
Burnell Brown
By Counsel

/s/Stephen P. Halbrook
Stephen P. Halbrook
D.C. Bar No. 379799
protell@aol.com

</div>

/s/Richard E. Gardiner
Richard E. Gardiner
D.C. Bar No. 386915
regardiner@cox.net

Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)