IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:08-cv-01289 |
| | ) | |
| THE DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

I.
Filing An Amended Complaint Will Not Prejudice
<u>The District Nor Unduly Delay The Litigation</u>

Defendants contend that they "will be prejudiced if Plaintiffs are granted the leave they seek,

as the PFAC [Proposed Fourth Amended Complaint] clearly 'expand[s] the allegations' at issue in

this matter beyond the scope of the TAC [Third Amended Complaint] and will delay the resolution

of the litigation." Opp. 5.  Neither assertion provides a basis for denying Plaintiffs' motion.

As a general principle, the Supreme Court has explained of Rule 15(a):

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so
> requires"; this mandate is to be heeded.  See generally, 3 Moore, Federal Practice (2d
> ed. 1948), ¶¶ 15.08, 15.10.  If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity
> to test his claim on the merits. In the absence of any apparent or declared reason —
> such as undue delay, bad faith or dilatory motive on the part of the movant, repeated
> failure to cure deficiencies by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the amendment, futility of amendment,
> etc. — the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).[1]

The "underlying facts or circumstances" relied upon by Plaintiffs here, *i.e.*, that D.C. Code § 7-2502.03(a)(11) violates the Second Amendment and the Americans with Disabilities Act ("ADA"), are certainly "proper subject[s] of relief . . . ." Thus, Plaintiffs Parson and Brown should presumptively be "afforded an opportunity to test [their] claim[s] on the merits."

The concept expressed in *Lover* v. *District of Columbia*, 248 F.R.D. 319 (D.D.C. 2008) , that a Rule 15 motion may be denied because it will "expand the allegations," is taken from *Parish* v. *Frazier*, 195 F.3d 761 (5th Cir. 1999). In *Parish*, "Parish sued the defendants for Fair Debt Collection Practices Act (FDCPA) violations. . . . After the defendants filed their summary judgment motion, Parish sought to amend the instant complaint to allege improper fee splitting and unauthorized practice of law by the defendants." 195 F.3d at 763. The court affirmed the district court's denial of the motion to amend because "we more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." 195 F.3d at 764. Notably, the court did not find that merely seeking to expand the allegations of the complaint was a basis for denying the motion to amend; it was the fact that the motion came on the heels of the defendant's motion for summary judgment that impelled the court to affirm the district court. Indeed, in light of the holding of *Foman v. Davis*, *supra*, that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits," expansion of the allegations cannot alone be the basis for denying a motion for leave to amend.

---

[1] "The non-moving party generally bears the burden of persuading the court that it would be prejudiced by the amendment or that one of the other factors set forth in *Foman* are present." *Lover v. District of Columbia,* 248 F.R.D. 319, 322 (D.D.C 2008).

Defendants' reliance on *Lover* is also misplaced because of the dissimilarity of the amendments sought. In that case, the plaintiff sought to amend his Complaint to join five additional plaintiffs and ten additional defendants. Thus, the proposed amendment would "drastically expand the scope of this litigation . . . ." 248 F.R.D. at 324. By contrast, in the case at bar, Plaintiffs do not seek to join any new defendants and seek to add only two new plaintiffs. The D.C. Code sections being challenged remain the same, and the remand order from the D.C. Circuit directed this Court to consider whether a similar provision prohibiting registration of a firearm based on eyesight is consistent with the Second Amendment. See discussion *infra*. To minimize or obviate any delay, Plaintiffs have informed Defendants' counsel that Plaintiffs' answers to Defendants' discovery, as they apply to the two new plaintiffs, will be supplemented within 14 days of the filing of the amended complaint.

The fact that the District would purportedly have to "expend additional resources to defend the case" and "will also have to incur the cost of retaining an expert to render an opinion with respect to the District's requirement that a firearms registrant not be blind" (Opp. 5) is not a legitimate basis, under *Foman v. Davis*, *supra*, to deny Plaintiffs' motion. If a claim is a "proper subject of relief," a plaintiff "ought to be afforded an opportunity to test his claim on the merits." 371 U.S. at 182. Moreover, as to the latter reason, Defendants do not offer any reason for needing "an expert to render an opinion with respect to the District's requirement that a firearms registrant not be blind" (Opp. 5) nor even attempt to explain to what an expert would testify.[2] The issue of the validity of D.C.

---

[2] Defendants assert that they will have to expend additional resources to "retain[] an expert witness to establish the affirmative defense of 'fundamental alteration.'" Defendants offer no explanation as to how or why the affirmative defense of "fundamental alteration" would be applicable to this case, nor do they explain why they would have to retain an expert to raise that defense.

Code § 7-2502.03(a)(11) under the Second Amendment and the ADA are questions of law which do not depend upon the opinion of an expert.  With respect to the Second Amendment, "the District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.'"  *Heller v. District of Columbia,* 670 F.3d 1244, 1258 (D.C. Cir. 2011).  With respect to the ADA, the question is whether Parson and Brown are "qualified individuals with a disability" as defined in 42 U.S.C. § 12131(2) and whether D.C. Code § 7-2502.03(a)(11) subjects them to "discrimination on the basis of disability" (28 CFR § 35.130(b)(6)) or "impose[s] or appl[ies] eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  28 CFR § 35.130(b)(8).

The District's assertion that permitting Plaintiffs' proposed amendments "will necessitate a considerable extension of discovery" (Opp. 5) is not true, and not a meritorious basis for denying Plaintiffs' motion.  Depositions have not even been formally scheduled yet.  As noted, Plaintiffs have informed Defendants' counsel that Plaintiffs' answers to Defendants' discovery, as they apply to the two new plaintiffs, will be supplemented within 14 days of the filing of the amended complaint.  Furthermore, the only parties who suffer any harm from allowing additional time for discovery are Plaintiffs.  The absence of a decision by the court on Plaintiffs' claims merely leaves the challenged law in place, which is Defendants' goal.  Defendants are certainly not "undu[ly] prejudice[d]" by that

result, or prejudiced at all.[3]

Defendants assert that "Plaintiffs have not adequately explained why they have waited until now—ten months after the challenged requirement became effective—to seek to amend their pleading in the manner that they have proposed."   Opp. 5.   The real question is:   why have Defendants waited for years to bring up the (alleged) issue of standing?

This case was first filed in 2008.   The original vision requirement was added to the D.C. Code by the Firearms Control Amendment Act of 2008, which became effective in the spring of 2009.   Plaintiffs challenged that vision requirement in their Second Amended Complaint, filed on March 25, 2009.   Dkt. No. 15.   Defendants did not argue standing, either in the district court summary judgment proceedings or in the appeal to the D.C. Circuit.

The D.C. Circuit held that the vision requirement in D.C. Code § 7-2502.03(a)(11) was a "novel" not "historic" registration requirement, and expressly remanded that issue (along with most of the other registration issues) for further evidentiary proceedings in this court.   *Heller v. District of Columbia,* 670 F.3d 1244, 1255-56, 1260, 1264 (D.C. Cir. 2011).

The first time the issue of blindness of any of the Plaintiffs was raised was in the District's First Request for Admissions on September 24, 2012, in which the District sought an admission that none of the current Plaintiffs was "blind."   Anticipating a standing challenge, Plaintiffs' counsel, within about 6 weeks, identified Mr. Parson and Ms. Brown as persons possibly interested in becoming plaintiffs in this action because they are "blind" and wished to register a firearm. Plaintiffs' counsel spoke with Ms. Brown on November 8, 2012 and Mr. Parson on November 14,

---

[3]   Plaintiffs, of course, do not object to a reasonable extension of discovery to accommodate Defendants.

2012.  Mr. Parson and Ms. Brown both agreed on December 7, 2012 to become plaintiffs. Arrangements then had to be made for each of them to purchase a firearm outside the District.[4] Because of the holidays and their disability, those arrangements could not be completed until late January, 2013.  As a result, Mr. Parson attempted to register a firearm on February 6, 2013 and was denied because of D.C. Code § 7-2502.03(a)(11) (see attached letter); Ms. Brown attempted to register a firearm on February 8, 2013 and was denied because of D.C. Code § 7-2502.03(a)(11) (see attached letter).  The denial of registration of Mr. Parson and Ms. Brown because of D.C. Code § 7-2502.03(a)(11) gave rise, in addition to a Second Amendment claim, a claim under the ADA. The following week, Plaintiffs' counsel inquired of Defendants' counsel whether Defendants would consent to the filing of the PFAC; Defendants' counsel informed Plaintiffs counsel that Defendants objected.  The instant motion was filed on February 21, 2013.  There was thus no "undue delay" in seeking leave to amend the complaint.

In summary, Defendants failed to raise standing on the vision requirement until years after this lawsuit was filed.  The D.C. Circuit expressly remanded the case for evidentiary proceedings on the vision issue.  After standing was implicitly raised by the District at the end of September 2012, "blind" plaintiffs were identified with reasonable expedition and leave was timely sought to file the Fourth Amended Complaint.  There is no prejudice to the District  stemming from the filing of the Fourth Amended Complaint.  Any expansion of the scope of the suit is minimal.  Delays are unlikely given the stage of discovery and Plaintiffs have volunteered to expedite discovery regarding the two plaintiffs to be added.  Accordingly, the motion for leave should be granted.

---

[4] There are no stocking gun dealers inside the District.

II.

<u>The PFAC States A Cause Of Action</u>

Defendants assert that Plaintiffs "proposed ADA claim is futile because the PFAC does not contain sufficient factual allegations to show that Parson and Brown are 'qualified individuals with a disability'" because a "qualified individual with a disability" is defined as "an individual who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Opp. 6. Defendants contend that Mr. Parson and Ms. Brown do not meet the "essential eligibility requirements" because "the requirement that a registrant be able to safely operate a firearm is an essential part of the District's firearm registration program." Opp. 8.[5]  In support of this contention, Defendants cite to the findings in the Firearms Control Regulations Act of 1975 and a purported finding of the D.C. Council. Opp. 8.[6]  Neither finding, however, is of any relevance because being able to "safely operate a firearm" is not an "essential eligibility requirement" for registration of a firearm. Unlike the driver's permit at issue in *Briggs* v. *Walker*, 88 F. Supp. 2d 1196 (D. Kan 2000), which authorized the holder to "'drive any motor vehicle upon a highway'" (88 F. Supp. 2d 1196) (quoting K.S.A. 8-235(a)), in the District,

---

[5]  There is no dispute that Mr. Parson and Ms. Brown meet all other "essential eligibility requirements" as the PFAC alleges that "[a]ll plaintiffs are eligible under the laws of the United States and of the District of Columbia to receive and possess firearms, except that Plaintiffs Jerome Parson and Burnell Brown are 'blind' within the meaning of D.C. Code § 7-2502.03(a)(11) and D.C. Code § 7-1009(1)." PFAC ¶ 9.

[6]  The finding in the Firearms Control Regulations Act of 1975 states nothing whatever concerning "blind" persons; it makes only a very general finding that the Act is intended to "[a]ssure that only qualified persons are allowed to possess firearms." The finding by the Committee on the Judiciary that there is "an obvious correlation between not being blind and being able to handle a firearm safely, especially for self-defense in the home" is, self-evidently, not a finding of the D.C. Council. Moreover, it is, as discussed further below, exactly the type of "speculation, stereotype[], or generalization" (28 C.F.R. § 35.130(h)) concerning sight-impaired persons that the ADA was enacted to eliminate.

a person must register a firearm merely to *possess* it in his/her home, even if it is unloaded and the possessor has no ammunition for it.[7] For example, a person must register a firearm which he/she has inherited and never intends to use, but wishes to pass on to a heir, or if it is a valuable collector's item which he/she never intends to use. Moreover, firearms are useful in connection with the core Second Amendment right of self-defense, even if they are not loaded, because merely displaying the firearm may prevent a crime from being committed. Because the District's law does not relate to possession of loaded firearms, it is simply untrue that being able to operate a firearm safely "is an essential part of the District's firearm registration program." Thus, the PFAC need not allege that Parson and Brown "are capable of safely handling and operating a firearm, notwithstanding the fact that they are blind." Opp. 8.

Defendants assert that the PFAC:

also fails to contain any allegations at all that would support the notion that sight is not an essential eligibility requirement to handle a firearm safely. As a result, like in *Briggs*, the PFAC fails to allege that Parson and Brown meet the "essential eligibility requirements" of a firearms registration certificate, and therefore fails to set forth an actionable cause of action under the ADA.

Opp. 8.

Because the District requires a firearm to be registered merely to possess it in the home unloaded, sight is not an essential eligibility requirement. Notably, this requirement is very much *unlike* in *Briggs*, which concerned operating a motor vehicle on the highway.

That D.C. Code § 7-2502.03(a)(11) is contrary to the ADA is evidenced by 28 C.F.R. § 35.130(h), which states:

---

[7] By way of comparison, there is no requirement in D.C. Code § 50-1501.02 (registration of motor vehicles and trailers) that a registrant not be "blind," even though a blind person could not operate a motor vehicle.

A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

Prohibiting the mere possession of a firearm in the home by a 'blind" person runs directly counter to this prohibition in that there is no risk whatever in the mere *possession* of a firearm by a blind person, unless it is assumed, based on speculation, stereotypes, or generalizations about blind persons, that they are careless, irresponsible, negligent, or lacking in good judgment.[8] A blind person is no more likely to act carelessly, irresponsibly, negligently, or without good judgment than a sighted person and would recognize the limits on his/her abilities to use a firearm. The District has offered nothing to show that D.C. Code § 7-2502.03(a)(11) is based on anything other than the speculation, stereotypes, or generalizations about "blind" persons that the ADA was enacted to eliminate. The PFAC thus states a cause of action under the ADA.

## CONCLUSION

The court should grant Plaintiffs' motion and grant Plaintiffs leave to file the Fourth Amended Complaint.

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
William Scott
Asar Mustafa
Jerome Parson
Burnell Brown
By Counsel

---

[8] A sighted person in the dark is in very much the same position as a "blind" person. Yet nothing in the registration law prohibits possession of a firearm in the dark since it is assumed that sighted persons will act carefully, responsibly, non-negligently, and with good judgment.

/s/Stephen P. Halbrook
Stephen P. Halbrook
D.C. Bar No. 379799
protell@aol.com

/s/Richard E. Gardiner
Richard E. Gardiner
D.C. Bar No. 386915
regardiner@cox.net

Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)