UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICK ANTHONY HELLER, *et al.*,

    Plaintiffs,

        v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 08-1289 (JEB)

## MEMORANDUM OPINION

Buoyed by his success in District of Columbia v. Heller, 554 U.S. 570 (2008), Dick Heller joined with others to bring this second suit almost five years ago, challenging under the Second Amendment a long list of D.C. restrictions on gun ownership, many of which were implemented following the Supreme Court's invalidation of the D.C. handgun ban. After cross-motions for summary judgment, a 30-page opinion by the original district court judge, 97 pages of opinions by the D.C. Circuit, and now five months of discovery, Plaintiffs want to amend their Complaint a fourth time in order to add two more plaintiffs and a new count under the Americans with Disabilities Act. Because they have waited too long before urging those amendments, and because such weighty amendments at this late stage would unduly prejudice Defendants, the Court will deny leave.

I.    **Background**

Three weeks after the Heller Court struck down D.C.'s prohibition of handguns on June 26, 2008, the District imposed fresh restrictions on gun ownership. Plaintiffs filed their original Complaint in this action on July 28 of that year, claiming that a variety of the limits on gun ownership (including many newly enacted) violated the Second Amendment and exceeded the

legislative power that Congress had granted the District.  They filed their First Amended

Complaint the next day, correcting typos and deleting a plaintiff.  The case then sat for eight

months while the parties awaited further changes in the law.  After the District again modified its

firearm laws, Plaintiffs moved to file a Second Amended Complaint on March 25, 2009.  That

proposed Complaint added plaintiffs and challenged additional provisions – including the prior

version of D.C. Code § 7-2502.03(a)(11), which limited firearm registration to people with

vision sharp enough to drive.  <u>See</u> Second Am. Compl., ¶¶ 16, 23, 71(c).  It persisted in raising

questions based only on the District's authority and the Second Amendment.  When Defendants

took no position on the motion, the Court gave leave to amend.  The parties then filed pre-

discovery cross-motions for summary judgment, and the Court granted summary judgment to the

Government.  <u>See</u> <u>Heller v. District of Columbia</u>, 698 F. Supp. 2d 179 (D.D.C. 2010).  The D.C.

Circuit affirmed in part and reversed in part, agreeing that the District had the power to enact its

laws and that many passed Second Amendment muster, but remanding for consideration of the

constitutionality of certain firearm-registration requirements.  <u>See</u> <u>Heller v. District of Columbia</u>,

670 F.3d 1244 (D.C. Cir. 2011).

On remand, the case once again went cold while the D.C. Council considered further

changes to its firearm laws.  The District made those changes in May 2012 with two new acts –

the Firearms Emergency Amendment Act of 2012 and the Firearms Amendment Act of 2012.  In

July, it added the Firearms Amendments Congressional Review Emergency Amendment Act of

2012.  (Emergency legislation takes effect immediately but expires within 90 days, <u>see</u> D.C.

Code § 1-204.12(a), while nonemergency legislation is transmitted to Congress and becomes law

unless Congress acts in a specified time period.  <u>See</u> § 1-206.02(c).)  A Third Amended

Complaint, filed with Defendants' consent on July 31, 2012, took these changes into account.

On the same day, the case was transferred from a retiring judge of this court to the current judge.

The Third Amended Complaint again added plaintiffs and challenges – this time relying

only on the Second Amendment.  Among the provisions called into question is the new version

of D.C. Code § 7-2502.03(a)(11), which bars blind people from registering firearms.  <u>See</u> Third

Am. Compl., ¶¶ 27-30, 78(c).  After Defendants answered, discovery finally commenced on

September 24, 2012.  <u>See</u> Scheduling Order, Sept. 19, 2012, ECF No. 46.[1]  Six months were

initially blocked off for discovery.  <u>Id.</u>  By consent, the parties twice extended the discovery

deadlines, and the current schedule requires the parties to exchange expert reports by March 25,

2013, and to complete all discovery by June 10, 2013.  <u>See</u> Minute Order, Feb. 20, 2013; <u>see also</u>

Minute Order, Jan. 16, 2013.

Plaintiffs, by a Motion filed on February 21, 2013, now move to file a Fourth Amended

Complaint.  Their requests to remove a Plaintiff and to correct a few mistakes go unopposed.

<u>See</u> Opp. at 1 n.2.  But the Government does object to the more substantial amendments

Plaintiffs seek: First, they want to add Jerome Parson and Burnell Brown, who are allegedly

blind for purposes of the D.C. Code, to their ranks.  <u>See</u> Proposed Fourth Am. Compl., ¶¶ 7-9.

Second, they desire to tack on a count under the Americans with Disabilities Act, alleging that

the ADA compels the District to permit gun ownership by the blind.  <u>See id.</u>, ¶¶ 81-94.

## II.    Legal Standard

A plaintiff may amend her complaint once as a matter of course within 21 days of serving

it or within 21 days of being served a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  Otherwise,

---

[1] In the joint report preceding the initial scheduling conference, the parties said that they were "unaware of a need for further joinder of additional parties or of any particular need for further amendments to the pleadings at this time," Local Rule 16.3 Report at 1, ECF No. 45, so the Court included no deadline for such joinder or amendment in its Scheduling Order.  <u>See</u> ECF No. 46.

the plaintiff must seek consent from the defendant or leave from the court.  See Fed. R. Civ. P.

15(a)(2).  "The court should freely give leave when justice so requires."  Id.  In deciding whether

to grant leave to file an amended complaint, the court may consider "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In this

Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason."

Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Furthermore, under Rule 15, "the

non-movant generally carries the burden in persuading the court to deny leave to amend."

Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile.  In

other words, if the proposed amendment would render the complaint deficient, the court need not

grant leave.  See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010)

("[A] district court may properly deny a motion to amend if the amended pleading would not

survive a motion to dismiss."); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir.

1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim

would not survive a motion to dismiss.").

## III.    Analysis

Defendants have consented to the small changes Plaintiffs propose – removing Mark

Snyder as a Plaintiff and making technical corrections to the pleadings.  See Opp. at 1 n.2.

Plaintiffs may thus amend their Complaint in those ways.  See Fed. R. Civ. P. 15(a)(2).  The

Government asserts, however, that Plaintiffs should not be allowed to add Parson, Brown, and

the ADA claim because those changes follow undue delay by Plaintiffs and will unduly prejudice the Government at this late stage.  See Foman, 371 U.S. at 182.

Undue delay "is a valid reason to reject a party's attempt to add a new theory of liability to a complaint."  Elkins v. District of Columbia, 690 F.3d 554, 565 (D.C. Cir. 2012).  Because "[c]onsideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice," Atchinson v. District of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996), the significance of a delay depends on the prejudice it causes.

Deciding whether an amendment will cause undue prejudice "entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted."  6 Charles A. Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 1487 (3d ed. 2010) (footnote omitted).  A case's position along the litigation path proves particularly important in that inquiry: the further the case has progressed, the more likely the opposing party is to have relied on the unamended pleadings. See id. ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").  The D.C. Circuit has "given weight to whether amendment of a complaint would require additional discovery."  Atchinson, 73 F.3d at 426.

The Court finds both undue delay and undue prejudice here.  Beginning with delay: Plaintiffs offer no justification for their tardiness in seeking these amendments.  This is not a case where facts unearthed during discovery revealed new claims or defects in the pleadings. Arguably, nothing relevant has changed since the exhaustively litigated Second Amended

Complaint filed in 2009, which impugned the old vision requirement but included no ADA claim and (apparently) no plaintiffs with disqualifying vision.  At the very least, nothing relevant has changed since the filing of the Third Amended Complaint on July 31, 2012, which included a Second Amendment challenge to the new D.C. Code § 7-2502.03(a)(11).

Instead of explaining their delay, Plaintiffs try to shift the blame to Defendants.  See Reply at 5 ("The real question is: why have Defendants waited for years to bring up the (alleged) issue of standing?").  Yet that pointing finger retracts under gentle scrutiny.  While the Second Amended Complaint mentioned the prior vision requirement, Plaintiffs' arguments against it were, according to the D.C. Circuit, "so cursory [that] we might, in other circumstances, consider them forfeit."  Heller, 670 F.3d at 1256 n.*.  Once the Third Amended Complaint took exception to the new blindness restriction, moreover, the Government inquired about Plaintiffs' vision on the first day of discovery.  Nor should that inquiry have surprised Plaintiffs – in federal court, a constitutional challenge to a statute obviously requires a plaintiff who alleges injury from it.  Plaintiffs nonetheless sat on their hands for almost seven months from the filing of the Third Amended Complaint.  Whether this delay is "undue" depends on "the actions of other parties and the possibility of any resulting prejudice."  Atchinson, 73 F.3d at 426.

Discovery began on September 24, 2012 – about five months before Plaintiffs asked to amend their Complaint.  Throughout discovery, the District has reasonably assumed that the prohibition on gun ownership by the blind would not be an issue in the case: While the Third Amended Complaint argued that this prohibition ran afoul of the Second Amendment, it never alleged that any Plaintiff was blind nor that any Plaintiff had been denied firearm registration on this ground.  Seeking to confirm those facts, on the first day of discovery the Government requested that Plaintiffs admit that none of them is blind; Plaintiffs so admitted on October 24,

2012.  See Mot. at 2 n.1; Opp. at 3.  Since this admission, the Government "has not taken or

sought to take any additional discovery, including expert discovery, with respect to Plaintiffs'

claim that D.C. Code § [7-]2502.03(a)(11) is unconstitutional."  Opp. at 3.  The District,

similarly, never sought discovery related to the ADA claim.  As even Plaintiffs seem to

recognize, the Government acted reasonably in setting § 7-2502.03(a)(11) aside after the

admission.  See Mot. at 2 n.1 ("A reasonable inference from that Request for Admission is that

Defendants intend to contest the standing of the existing plaintiffs to challenge the requirement

that a person must not be 'blind' to register a firearm.").

       Plaintiffs nonetheless argue that the District will not be prejudiced because discovery

lasts until June 10, 2013, no depositions have been scheduled, and Plaintiffs will supplement

their discovery answers relating to Parson and Brown within 14 days of filing the amended

complaint.  See Mot. at 3.  The Government disagrees.  If Plaintiffs are permitted make the

amendments, not only will the Second Amendment challenge to D.C. Code § 7-2502.03(a)(11)

spring back to life, but the Government will also have to grapple with an ADA claim that bears

little resemblance to the claims made in the last four and a half years of litigation.  Plaintiffs' suit

assails – all on Second Amendment grounds – 13 different subsections of the D.C. Code, ranging

from a ban on high-capacity magazines to the duty to take a firearm-safety class before

registering a gun.  To now add an entirely different ADA claim at this late hour would transform

the nature of the case.

       Transformative or not, it is the prejudice the Court must focus on.  See Wright & Miller

*et al.*, Federal Practice and Procedure § 1487 ("[I]f the court is persuaded that no prejudice will

accrue, the amendment should be allowed.").  For five months of fact discovery, the Government

has planned and prepared for litigation on the assumption that D.C. Code § 7-2502.03(a)(11)

would not be an issue.  It has retained experts and commissioned expert reports – due to be exchanged less than a week from today – on the same assumption.  Further, the Government says that it would assert an affirmative defense unique to the ADA claim – "fundamental alteration" – which would entail completely different discovery, including a new expert.  See Sch. Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 287 n.17 (1987) (even when ADA requires "reasonable accommodation," accommodation is not reasonable if it "requires a fundamental alteration in the nature of the program") (brackets and internal quotation marks omitted).  The Court credits the Government's representations about how it has proceeded in this litigation.  We would be in a different spot if Plaintiffs had sought these amendments as part of the Third Amended Complaint.  But because they instead waited for five months of discovery to pass, and the Government heavily relied on the unamended Complaint, the Court concludes that the amendment sought here would cause undue prejudice.

　　　　The Court will therefore deny Plaintiffs' Motion to add Parson, Brown, and an ADA claim because these amendments would effect undue delay and prejudice.  The Court thus need not consider the Government's alternative argument that the proposed amendment should be denied as futile.  Parson and Brown can still contest D.C. Code § 7-2502.03(a)(11) in a separate suit.  Not every Second Amendment challenge need be captioned Heller v. District of Columbia.

## IV.　　Conclusion

　　　　For the aforementioned reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Leave to File Fourth Amended Complaint.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  March 20, 2013