IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-01289 |
| | ) | |
| THE DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' MOTION TO STRIKE
EXPERT REPORT OF MARK D. JONES**

COME NOW Plaintiffs, by counsel, and move the court, pursuant to Fed. R. Civ. P. 37(c)(1)(C)
and (b)(2)(A)(iii),  to strike the purported expert report of Mark D. Jones.  The court should strike the Jones
Report because it fails to comply with the Rules requiring that an expert report include "the facts or data
considered by the witness in forming" his opinions and because it is not the "product of reliable principles
and methods," which have been applied "reliably to the facts of the case."  Furthermore, the Jones Report
is wholly inadequate to satisfy the standard of review and evidentiary requirements that the D.C. Circuit
has specifically declared must be applied on this remand.

ISSUES TO BE CONSIDERED ON REMAND AND STANDARD OF REVIEW

The D.C. Circuit remanded this case for evidentiary proceedings regarding the constitutionality of
several specific sections of the D.C. firearms laws, including the "novel registration requirements, and all
registration requirements as applied to long guns."  *Heller v. District of Columbia*, 670 F.3d 1244, 1260
(D.C. Cir. 2011).  On remand, this Court must consider at least the following:[1]

- All registration requirements for long guns, including § 7-2502.01(a) (basic registration),

---

[1] These issues vary somewhat from the D.C. Circuit's list due to changes to the firearms laws made
by the District after the Court of Appeals opinion was issued.  *See* Third Amended Complaint for a
complete list of sections challenged.

and § 7-2502.03(b), the requirement that an applicant for registration must provide name, address, occupation and employer, date and place of birth, sex, previous denials or revocations of a firearm permit or license, any firearm mishaps, firearm description, firearm transferor, where the firearm is kept, other registrations, and other information the Chief deems necessary.

- § 7-2502.03(a)(10) – requirement that the applicant demonstrate knowledge of D.C. firearms laws

- § 7-2502.03(a)(11) – vision requirement

- § 7-2502.03(a)(13)(A) – training requirement

- § 7-2502.03(e) – ban on registering more than one pistol in 30 days

- § 7-2502.04 – requirement that applicants be fingerprinted and photographed, that application must be made in person, and that the firearm must be brought to police headquarters to register it

- § 7-2502.07a – registration expires every three years, and affirmative renewal of registration is required for every firearm every three years

The D.C. Circuit noted that the District had advanced two "governmental interests it may have in the registration requirements, *viz.*, to protect police officers and to aid in crime control." *Heller v. District of Columbia*, 670 F.3d at 1258. Under intermediate scrutiny, the District is required to demonstrate "a *close fit* between those requirements and its governmental interests." *Id.* (emphasis added). "[T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.'" *Id.* (citation omitted). Although the District had presented "cursory rationales" for some registration requirements, the District had "fail[ed] to present *any data or other*

-2-

*evidence* to substantiate its claim that these requirements can reasonably be expected to promote" the

asserted governmental interests. *Id.* at 1259 (emphasis added).  Observing that in the prior proceedings the

District had "not supplied evidence adequate to show a substantial relationship between any of the novel

registration requirements and an important governmental interest," the D.C. Circuit stressed that on remand

"the District needs to present some *meaningful evidence, not mere assertions*, to justify its predictive

judgments." *Id.* at 1259 (emphasis added).

## APPLICABLE LAW REGARDING EXPERTS

Fed. R. Civ. P. 26(a)(2)(B) provides:

Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied
by a written report — prepared and signed by the witness — if the witness is one retained
or specially employed to provide expert testimony in the case or one whose duties as the
party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis
> and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored
> in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness
> testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony
> in the case.

Fed. R. Civ. P. 37(c)(1)(C) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),
the party is not allowed to use that information or witness to supply evidence on a motion,
at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In
addition to or instead of this sanction, the court, on motion and after giving an opportunity
to be heard:

* * *

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(b)(2)(A)(iii) provides that the court may sanction a party by "(iii) striking pleadings in whole or in part . . . ."

Fed.R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to *understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (Emphasis added).

Fed.R. Evid. 704(a) provides:

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The facts which the trier of fact here must consider is "evidence adequate to show a substantial relationship between any of the novel registration requirements and an important governmental interest." *Heller v. District of Columbia,* 670 F.3d at 1259.  See also discussion above.  For the reasons that follow, Jones' Report does not comply with Fed. R. Civ. P. 26(a)(2)(B) or Fed.R. Evid. 702, and should be stricken. See *Filing* v. *Phipps,* No. 11–4157, 2012 WL 5200375, *3 (6th Cir. 2012) (affirming striking of expert report and quoting *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir.1997) ("testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable" under Rule 702)).

## ARGUMENT

### 1.  The Report contains no facts or data supporting the expert's opinions.

The Report is devoid of "facts or data considered by the witness" in forming his "opinions."  Fed.

R. Civ. P. 26(a)(2)(B).[2]  The court is not required to "admit opinion evidence that is connected to existing

data only by the ipse dixit of the expert."  *Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997), quoted in

*Estate of Gaither v. District of Columbia,* 831 F. Supp.2d 56, 66 (D. D.C. 2011) (precluding purported

expert from testifying as to her opinion).  Here, there are no data at all, only the ipse dixit.

A) The closest the Report comes to "facts or data" is the following statement purporting to support

firearms registration:

> A recent example is found in the December 24, 2012 murder of two firefighters in Webster,
> New York.  According to the Federal complaint, Dawn Nguyen bought a rifle and shotgun
> that she subsequently provided to the accused murderer, William Spengler.  The firearms
> were traced back to Nyguen and she has been charged with violations of Federal law for
> making a false statement in the acquisition of the firearms, and for giving or selling the
> firearms to someone not legally entitled to possess them.  *Registration of the weapons in
> New York allowed for a quick and decisive investigation of how the convicted felon –
> Spengler – obtained the firearms he used in the murder of two public servants and the
> wounding of two others*. (Emphasis added).

Report 6-7.

The last (italicized) sentence is patently inaccurate as New York does not require registration of

rifles and shotguns.  See New York Penal Law, Art. 265 (Firearms).  Indeed, nothing in the federal criminal

complaint (copy attached) mentions registration of the weapons in New York.  Rather, it states that the

affiant:

> caused a trace to be completed by the ATF National Tracing Center of these two (2)
> firearms. . . .  Several hours later, a completed ATF Trace revealed the above-referenced two
> (2) firearms were purchased on June 6, 2010, by Dawn NGUYEN . . . .

Affidavit of Sean J. Martineck (attached to Criminal Complaint) at ¶ 4, *United States* v. *Dawn Nguyen*, No.
13-cr-6044 (W.D.N.Y.)

ATF conducts traces by providing Federal Firearm Licenses with information on a firearm to

---

[2]   Thus, the Report also does not comply with the requirement of Fed.R. Evid. 702 that an opinion
be "based upon sufficient facts or data . . . ."

determine the purchaser.  18 U.S.C. § 923(g)(7).  Thus, it was not registration of the rifle and shotgun which

assisted in the investigation of the crime.[3]  Even if it was accurate, a single anecdote is not the kind of data

required for an expert report, or required by the D.C. Circuit to support the District's registration laws.

B) Jones also states:

> Through experience and research *I believe* that the single greatest risk factor for being
> murdered with a firearm, committing suicide with a firearm, or being injured by
> unintentional discharge of a firearm, is the easy availability of a firearm.  (Emphasis added).

Report 8.

In a footnote, Jones cites to "Hemenway, D. *Risks and Benefits of a Gun in the Home*, American

Journal of Lifestyle Medicine; accessed on line December 21, 2012."  Report 8, n.4.  Any conclusions

reached by that study do not constitute an expert opinion by Jones himself, and cannot be offered as expert

testimony by him, because in that regard the Report provides no "facts or data considered by the witness

in forming" the "opinions the witness will express" as required by Fed. R. Civ. P. 26(a)(2)(B) (emphasis

added).[4]

C) Similarly, Jones states: "Many studies have concluded that U.S. residents in homes that contain

a firearm are statistically more likely to die by gunshot that their neighbors who live in homes without a gun

present."  Report 8.  Jones does not, however, cite a single study supporting this assertion. More

importantly, it is plainly not his opinion, which is a requirement of Fed. R. Civ. P. 26(a)(2)(B) because it

refers to "the facts or data *considered by the witness* in forming" the "opinions *the witness* will express."

---

[3]  Indeed, even the tracing of the rifle and shotgun had nothing to do with solving any crime as the
the rifle and shotgun "lay within several feet of the deceased body of William Spengler."  Affidavit of Sean
J. Martineck (attached to Criminal Complaint) at ¶ 3, *United States* v. *Dawn Nguyen*, No. 13-cr-6044
(W.D. N.Y.).

[4]  There is nothing in the Report that shows that the Hemenway study is the "product of reliable
principles and methods" or that Jones has "applied the principles and methods reliably to the facts of the
case."

(Emphasis added).

D) Jones states: "U.S. children are at particular risk, specifically those between the ages of 5 and 14, who are eleven times more likely to die by unintentional gunshot than their peers in other developed countries" and, in a footnote, cites to "Richardson EG, Hemenway D. *Homicide, Suicide, and Unintentional Firearm Fatality: comparing the United States with other high-income countries:* Accessed on line December 21, 2012." Report 8. No facts or data underlying the conclusion of the Richardson and Hemenway study are provided in the Report. Thus, not only does the Report fail to comply with Fed. R. Civ. P. 26(a)(2)(B) and Fed.R. Evid. 702, but it is not even Jones' opinion.[5]

E) Also citing the Richardson and Hemenway study, Jones states that "the number of deaths involving firearms represent only a portion of the problem, since for every person killed with a firearm, twenty are wounded, require emergency medical attention and often extensive follow-up care." Once again, no facts or data are provided in the Report.

F) Jones states:

In my experience laws that limit the quantity of firearms that can be purchased or registered during a given time period make it more difficult for firearm traffickers to acquire and resell guns from that municipality or state.

Report 8.

Again, Jones fails to provide "the facts or data considered by the witness in forming" the "opinions the witness will express." As in *Estate of Gaither*, *supra*, the court "is left only with [Jones'] unvarnished opinion . . . ." 831 F. Supp.2d at 66.

The D.C. Circuit has mandated that, for each separate registration requirement at issue, the District must present "data" and "meaningful evidence" that establishes a "tight" or "close" fit between its

---

[5] Nothing in the Report shows that the Richardson and Hemenway study is the "product of reliable principles and methods" or that Jones has "applied the principles and methods reliably to the facts of the case."

requirement and the governmental interest allegedly subserved.  Putting mere conclusions in the mouth of an expert witness, without supporting data, cannot substitute for actual evidence.

    2.  The Report contains no principles or methods to arrive at conclusions, but relies on unsupported assertions and  anecdotes.

The Report is not "the product of reliable principles and methods" and Jones has not "applied the principles and methods reliably to the facts of the case."[6]  On the contrary, the Report is bereft of any "principles and methods" of analysis, let alone "reliable principles and methods," and is nothing more than the expression of Jones' personal legislative policy preferences or subjective conclusions.[7]   All the examples which follow fail to provide "the facts or data considered by the witness in forming" the "opinions the witness will express."

A) Jones baldly states that, "[i]n my experience, firearm-registration requirements help to prevent criminals or others who pose a safety risk to themselves or the public from easily obtaining firearms." Report 6.  As another example, he conclusorily states:

> In my opinion, registration requirements also provide a framework within which public safety agencies may formulate firearms safety, training and education programs focused on the needs of their constituent legal firearms owners and based on the types and quantities of firearms possessed in a given jurisdiction.

Report 6.

No principles or methodologies are applied to reach this conclusion.

B) Another example of Jones' failure to comply with Fed. R. Evid. 702 by omitting any showing

---

[6]  It is the duty of the court to "'evaluate the reliability of the testimony before allowing its admission at trial.'  *United States* v. *Frazier*, 387 F.3d 1244, 1262 (11th Cir.2004) (*en banc*), *cert. denied*, 544 U.S. 1063, 125 S.Ct. 2516, 161 L.Ed.2d 1114 (2005)." *Estate of Gaither,* 831 F. Supp.2d at 62.

[7]  Experience alone is not "'a sufficient foundation rendering reliable any conceivable opinion the expert may express.' *Frazier*, 387 F.3d at 1261.  Even when an expert relies upon her experience, 'the reliability criterion remains a discrete, independent, and important requirement for admissibility.' *Id*." *Estate of Gaither,* 831 F. Supp.2d at 68-69.

that his opinion is "the product of reliable principles and methods" and that he has "applied the principles and methods reliably to the facts of the case" is the statement: "In my observation a well-regulated firearms registration process increases the likelihood that law enforcement may successfully trace guns they recover" (Report 6) and the statement that "[a]ll firearms, be they rifles, shotguns or handguns, pose a similar threat to public safety in the wrong hands and, in my opinion, should be regulated similarly." Report 6.

C) Further examples of Jones' failure to comply with Fed.R. Evid. 702 are the following: "In my opinion, the most effective method of limiting misuse of firearms, including homicide, suicide and accidental injuries, is to limit the number of firearms present in a home" (Report 7-8); "I believe that the District's current robust regulatory scheme permitting registration of just one pistol every 30 days will successfully control the number of legal firearms permitted within its borders and help identify the sources of illegal firearms encountered there" (Report 8); "It is also my opinion that the District's requirement that a registrant appear in-person is entirely logical and in the public interest" (Report 9);[8] "In my opinion requiring firearms registrants to periodically renew their firearms registrations, every three years in the case of the District, has important benefits for public safety in that it compels a systemic review of all legally registered firearms and registrants" (Report 9); "I believe the three-year renewal requirement offers important mandatory accountability to both District public safety officials and residents since many individuals who become ineligible to possess firearms do not necessarily voluntarily report their disqualification to the authorities" (Report 9);[9] "In my opinion requiring potential firearms owners to take

---

[8] Jones' "opinion" concerning the District's requirement that a registrant appear in-person does not require "scientific, technical, or other specialized knowledge" as evidenced by the statements in support of that conclusion: "allows District authorities to make a more thorough evaluation of that person" and the "indisputable identification of the aspiring registrant as the actual owner of the firearm." Thus, his opinion is a lay opinion and will not "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702.

[9] Jones' example of Cook County, Illinois ("the sheriff's office has identified nearly 5000 residents whose state Firearm Owners Identification Card has been revoked but who have failed to turn in their card

a safety course addressing the safe handling, use, and storage of their firearms is a fundamental requirement encouraging responsible gun ownership" (Report 10)[10]; "I believe that instructing District registrants in the widely accepted methods of safe storage, particularly in homes with children, is vitally important to both limiting access to the firearms only to authorized users and reducing theft, accidents and other unintended consequences of bringing a firearm into the home" (Report 10)[11]; and "[t]he requirement in District law that firearms owners must immediately notify the police of any theft, loss, destruction, sale, or other transfer of their firearm(s) is another common sense facet of responsible gun ownership" (Report 11).[12]

These are precisely the sorts of "cursory rationales" and "mere assertions" condemned as insufficient by the D.C. Circuit, and do not constitute the kind of "data" or "meaningful evidence" that the D.C. Circuit required for the District to justify its registration requirements.   *Heller v. District of Columbia*, 670 F.3d at 1259.  Data must be marshaled before reliable principles and methods can be reliably applied.  Here,

---

as required by law") is based on a "[p]ersonal conversation with Margaret Egan, Director of Policy and External Affairs for the Cook County Illinois Sheriff's Office, 01/22/2013." Report 10, n.7. This does not comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) as it does not provides "the facts or data considered by the witness . . . ."

[10]  Jones' support for this statement is that it is "common sense" and that he has "observed or studied countless instances of unintentional discharge of firearms by trained law enforcement officials and every one of those individuals had received far more training in safe firearms use than the vast majority of civilian firearms owners, yet they still made had accidents." Report 10. These statements do not comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) as they do not provide "the facts or data considered by the witness . . . ."

[11]  Jones states in support of this belief: "Academic studies have repeatedly shown that the risk of injury or death by gunshot is dramatically increased in homes with firearms present and that risk, in my opinion, may be somewhat mitigated if gun owners are trained and their firearms are properly stored." Report 10. This statement does not comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) as it does not provide "the facts or data considered by the witness . . . ."

[12]  Jones offers no facts or data to support what he believes is "common sense." He states only that, "in my observation and experience, a requirement to report the loss/theft/transfer of registered firearms is an important step in reducing firearms trafficking because it eliminates the most common excuses (loss and theft) offered by erstwhile gun owners whose weapons have been recovered by the police" (Report 11), without offering a single fact or datum to support the statement.

there are no data, and no attempt whatsoever to apply accepted analytic methodologies of criminology or social science to any data.

Other than as discussed above, there is nothing substantive in the Report.  The parts discussed that are "substantive" are based on no facts or data, consist of mere assertions, and apply no social science or criminological principles or methodologies.   Accordingly, Jones' Report is grossly deficient under the express requirements of the Rules of Civil Procedure and Rules of Evidence, contravenes the standards enunciated by the D.C. Circuit for this remand, and should be stricken.

<u>CONCLUSION</u>

As Jones' Report manifestly fails to comply with the requirements for experts and expert reports, it should be stricken.

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
William Scott
Asar Mustafa

By counsel

/S/Stephen P. Halbrook
Stephen P. Halbrook
D.C. Bar No. 379799

/S/ Richard E. Gardiner
Richard E. Gardiner
D.C. Bar No. 386915

Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)