IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, *et al.* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | No. 1:08-cv-01289 |
| ) | |
| THE DISTRICT OF COLUMBIA, *et al.* ) | |
| ) | |
| Defendants ) | |

**PLAINTIFFS' MOTION TO STRIKE
EXPERT REPORT OF CATHY L. LANIER**

COME NOW Plaintiffs, by counsel, and move the court, pursuant to Fed. R. Civ. P. 37(c)(1)(C) and (b)(2)(A)(iii), to strike the purported expert report of Cathy L. Lanier. The court should strike the Lanier Report because it fails to comply with the Rules requiring that an expert report include "the facts or data considered by the witness in forming" her opinions and because it is not the "product of reliable principles and methods," which have been applied "reliably to the facts of the case." Furthermore, the Lanier Report is wholly inadequate to satisfy the standard of review and evidentiary requirements that the D.C. Circuit has specifically declared must be applied on this remand.

The parties discussed the motion as required by LcvR 7(m) and the motion is opposed.

<u>ISSUES TO BE CONSIDERED ON REMAND AND STANDARD OF REVIEW</u>

The D.C. Circuit remanded this case for evidentiary proceedings regarding the constitutionality of several specific sections of the D.C. firearms laws, including the "novel registration requirements, and all registration requirements as applied to long guns." *Heller v. District of Columbia*, 670 F.3d 1244, 1260 (D.C. Cir. 2011). On remand, this Court must consider at least the following:[1]

---

[1] These issues vary somewhat from the D.C. Circuit's list due to changes to the firearms laws made by the District after the Court of Appeals opinion was issued. *See* Third Amended Complaint for a complete list of sections challenged.

- All registration requirements for long guns, including § 7-2502.01(a) (basic registration), and § 7-2502.03(b), the requirement that an applicant for registration must provide name, address, occupation and employer, date and place of birth, sex, previous denials or revocations of a firearm permit or license, any firearm mishaps, firearm description, firearm transferor, where the firearm is kept, other registrations, and other information the Chief deems necessary.

- § 7-2502.03(a)(10) – requirement that the applicant demonstrate knowledge of D.C. firearms laws

- § 7-2502.03(a)(11) – vision requirement

- § 7-2502.03(a)(13)(A) – training requirement

- § 7-2502.03(e) – ban on registering more than one pistol in 30 days

- § 7-2502.04 – requirement that applicants be fingerprinted and photographed, that application must be made in person, and that the firearm must be brought to police headquarters to register it

- § 7-2502.07a – registration expires every three years, and affirmative renewal of registration is required for every firearm every three years

The D.C. Circuit noted that the District had advanced two "governmental interests it may have in the registration requirements, *viz*., to protect police officers and to aid in crime control." *Heller v. District of Columbia*, 670 F.3d at 1258.  Under intermediate scrutiny, the District is required to demonstrate "a *close fit* between those requirements and its governmental interests." *Id.*  (emphasis added).  "[T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.'" *Id.* (citation omitted).  Although the District had

presented "cursory rationales" for some registration requirements, the District had "fail[ed] to present *any data or other evidence* to substantiate its claim that these requirements can reasonably be expected to promote" the asserted governmental interests. *Id.* at 1259 (emphasis added). Observing that in the prior proceedings the District had "not supplied evidence adequate to show a substantial relationship between any of the novel registration requirements and an important governmental interest," the D.C. Circuit stressed that on remand "the District needs to present some *meaningful evidence, not mere assertions*, to justify its predictive judgments." *Id.* at 1259 (emphasis added).

## APPLICABLE LAW REGARDING EXPERTS

Fed. R. Civ. P. 26(a)(2)(B) provides:

Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 37(c)(1)(C) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity

to be heard:

\* \* \*

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(b)(2)(A)(iii) provides that the court may sanction a party by "(iii) striking pleadings in whole or in part . . . ."

Fed.R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to *understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. (Emphasis added).

Fed.R. Evid. 704(a) provides:

(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The facts which the trier of fact here must consider is "evidence adequate to show a substantial relationship between any of the novel registration requirements and an important governmental interest." *Heller v. District of Columbia,* 670 F.3d at 1259. See also discussion above. For the reasons that follow, Lanier's Report does not comply with Fed. R. Civ. P. 26(a)(2)(B) or Fed.R. Evid. 702, and should be stricken. See *Filing* v. *Phipps,* No. 11–4157, 2012 WL 5200375, *3 (6th Cir. 2012) (affirming striking of expert report and quoting *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable" under Rule 702)).

## ARGUMENT

<u>1. The Report contains no facts or data supporting the expert's opinions.</u>

The Report is devoid of "facts or data considered by the witness" in forming her "opinions." Fed. R. Civ. P. 26(a)(2)(B).[2] The court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997), quoted in *Estate of Gaither v. District of Columbia,* 831 F. Supp.2d 56, 66 (D. D.C. 2011) (precluding purported expert from testifying as to her opinion). Here, there are no data at all, only the ipse dixit.

The closest the Report comes to "facts or data" are the following bald unsupported statements.

A) In explaining the "first objective of the District's firearms regulations" – "to keep firearms out of the hands of individuals who, experience has shown, pose the greatest threat to the public, such as felons and the mentally ill" (Report 4) – Lanier states:

> For example, the assault on Congresswoman Gabrielle Gifford in January 2011, during which six individual were killed, the Virginia Tech massacre, during which 33 people were killed, and the 2012 shooting at a movie theater in Aurora, Colorado, during which 12 were killed, were all committed by individuals with a history of mental illness.

Report 4.

This sentence presents no facts or data showing that laws like the District's firearms regulations would have kept firearms out of the hands of the individuals who committed the crimes mentioned by Lanier. This is equally true with respect to Lanier's statement that, "[i]n the District, an attempt was made on the life of the President as recently as 2011 by a man with a history of mental illness who used a high-powered rifle to shoot at the White House." Report 4. Indeed, given that the challenged regulations were in effect in 2011, Lanier's statement demonstrates that the District's firearms regulations did not keep firearms out of the hands of the mentally ill.

B) Lanier states:

---

[2] Thus, the Report also does not comply with the requirement of Fed. R. Evid. 702 that an opinion be "based upon sufficient facts or data . . . ."

> An initial in-person registration and background check are the best means to verify an applicant's eligibility to possess a firearm. Further, the criminal background check performed by MPD, which is based on fingerprints, is more effective than that performed by a gun dealer, which is merely based on a social security number.

Report 4-5.

There is not a single fact or datum cited to support this opinion.

C) Lanier cites to a "2008 study" which purportedly "found that states that perform local-level background checks for firearms have lower rates of homicide and suicide than states that simply rely on a federal background check," citing Medical College of Wisconsin (2008, June 3). *Firearm Suicide and Homicide Rates Associated with Level of Background Check. ScienceDaily.* http://www.sciencedaily.com/releases/2008/06/080603155227.htm. Report 5. Any conclusions reached by that study do not constitute an expert opinion by Lanier herself, and cannot be offered as expert testimony by her, because in that regard the Report provides no "facts or data considered by the witness in forming" the "opinions the witness will express" as required by Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).[3] The document to which Lanier cites is not even the study itself, but rather a popular website that merely reports on the study.

D) The Report states that "[a]nyone who possesses and registers a firearm should be aware of the laws and requirements for responsible gun ownership, as well as key safety principles." Report 5. The Report does not provide any facts or data supporting this opinion.[4]

---

[3] There is also nothing in the Report that shows that the Medical College of Wisconsin study is the "product of reliable principles and methods" or that the study's authors, and certainly Lanier, have "applied the principles and methods reliably to the facts of the case."

[4] The statement that these "common-sense requirements . . . have been adopted" in "California, Connecticut, Hawaii, Massachusetts, and Michigan," which "all have laws requiring some sort of training or safety certification as part of the registration process" (Report 5), is not a statement of facts or data supporting Lanier's opinion that the District's laws "reduc[e] firearms accidental discharges" or "ensuring that guns are safely stored . . . ." Report 5. This statement is similar to Lanier's legislative testimony, concerning which the D.C. Circuit held that "the District fails to present any data or other evidence to

E) The Report states:

> The District's requirement that an applicant provide evidence of the completion of a firearms training and safety class, which can be completed online, and demonstrate knowledge of the District's laws pertaining to firearms, "in particular, the safe and responsible use, handling, and storage of the same" is, in my opinion, a reasonable and effective means of reducing gun-related accidents.

Report 5.

Again, the Report does not provide any facts or data supporting this opinion.

F) The Report asserts that "a registration certificate with photo identification, as required by District law, is critical to protecting the safety of police officers and the public." Report 5. As with the above opinions, this opinion is not supported by any facts or data.

G) The Report states:

> Studies have shown that laws restricting the registration or purchase of multiple firearms in a given period are effective in disrupting illegal interstate trafficking of firearms. Accordingly, in my opinion, the District's restriction on registering more than one firearm in a thirty-day period is helpful in controlling the trafficking of firearms into the District.

Report 6.

Only one study is cited: "D. WElL, R. KNOX, *Effects of Limiting Handgun Purchases on Interstate Transfer of Firearms*, 275:22 JAMA 1759-1761 (1996)." Report 6, n.3. Any conclusions reached by that study do not constitute an expert opinion by Lanier herself, and cannot be offered as expert testimony by her, because in that regard the Report provides no "facts or data considered by the witness in forming" the "opinions the witness will express" as required by Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).[5]

All of these statements fail to comply with Fed. R. Civ. P. 26(a)(2)(B)(ii). As in *Estate of Gaither*,

---

substantiate its claim that these requirements can reasonably be expected to promote either of the important governmental interests it has invoked . . . ." *Heller v. District of Columbia,* 670 F.3d at 1259.

[5] There is nothing in the Report that shows that the JAMA study is the "product of reliable principles and methods" and that the study's authors, and certainly Lanier, have "applied the principles and methods reliably to the facts of the case."

*supra*, the court "is left only with [Lanier's] unvarnished opinion . . . ." 831 F. Supp.2d at 66.

The D.C. Circuit has mandated that, for each separate registration requirement at issue, the District must present "data" and "meaningful evidence" that establishes a "tight" or "close" fit between its requirement and the governmental interest allegedly subserved. Putting mere conclusions in the mouth of an expert witness, without supporting data, cannot substitute for actual evidence.

2. <u>The Report contains no principles or methods to arrive at conclusions, but relies on unsupported assertions and anecdotes.</u>

The Report is not "the product of reliable principles and methods" and Lanier has not "applied the principles and methods reliably to the facts of the case."[6] On the contrary, the Report is bereft of any "principles and methods" of analysis, let alone "reliable principles and methods," and is nothing more than the expression of Lanier's personal legislative policy preferences or subjective conclusions.[7]

For example, Lanier states:

In my professional opinion, the District's firearms registration laws, identified above, significantly aid MPD's efforts to prevent violent crime, ensure the security of the Nation's Capitol, and protect the safety of law enforcement officers and members of the public.

Report 4.

As another example, the Report states:

An initial in-person registration and background check are the best means to verify an applicant's eligibility to possess a firearm. Further, the criminal background check performed by MPD, which is based on fingerprints, is more effective than that performed by a gun dealer, which is merely based on a social security number.

---

[6] It is the duty of the court to "'evaluate the reliability of the testimony before allowing its admission at trial.' *United States* v. *Frazier*, 387 F.3d 1244, 1262 (11th Cir.2004) (*en banc*), *cert. denied*, 544 U.S. 1063, 125 S.Ct. 2516, 161 L.Ed.2d 1114 (2005)." *Estate of Gaither,* 831 F. Supp.2d at 62.

[7] Experience alone is not "'a sufficient foundation rendering reliable any conceivable opinion the expert may express.' *Frazier*, 387 F.3d at 1261. Even when an expert relies upon her experience, 'the reliability criterion remains a discrete, independent, and important requirement for admissibility.' Id." *Estate of Gaither,* 831 F. Supp.2d at 68-69.

Report 4-5.

Yet another example is the following statement:

The District's requirement that an applicant provide evidence of the completion of a firearms training and safety class, which can be completed online, and demonstrate knowledge of the District's laws pertaining to firearms, "in particular, the safe and responsible use, handling, and storage of the same" is, in my opinion, a reasonable and effective means of reducing gun-related accidents.

Report 5.

No principles or methods applied to factual data are used to support these statements.

The Report's assertion that "a registration certificate with photo identification, as required by District law, is critical to protecting the safety of police officers and the public" (Report 5) is not "the product of reliable principles and methods" and Lanier has not "applied the principles and methods reliably to the facts of the case." The opinion that "I believe that long guns in the District should be subject to the same regulations as handguns" (Report 6) is also not "the product of reliable principles and methods" and Lanier has not "applied the principles and methods reliably to the facts of the case."

These are precisely the sorts of "cursory rationales" and "mere assertions" condemned as insufficient by the D.C. Circuit, and do not constitute the kind of "data" or "meaningful evidence" that the D.C. Circuit required for the District to justify its registration requirements. *Heller v. District of Columbia*, 670 F.3d at 1259. Data must be marshaled before reliable principles and methods can be reliably applied. Here, there are no data, and no attempt whatsoever to apply accepted analytic methodologies of criminology or social science to any data.

Other than as discussed above, there is nothing substantive in the Report. The parts discussed that are "substantive" are based on no facts or data, consist of mere assertions, and apply no social science or criminological principles or methodologies. Accordingly, Lanier's Report is grossly deficient under the express requirements of the Rules of Civil Procedure and Rules of Evidence, contravenes the standards

enunciated by the D.C. Circuit for this remand, and should be stricken.

## CONCLUSION

As Lanier's Report manifestly fails to comply with the requirements for experts and expert reports, it should be stricken.

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
William Scott
Asar Mustafa

By counsel

/S/Stephen P. Halbrook
Stephen P. Halbrook
D.C. Bar No. 379799

/S/ Richard E. Gardiner
Richard E. Gardiner
D.C. Bar No. 386915

Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)