UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civil Action No. 08-1289 (JEB) |

### MEMORANDUM OPINION

In this successor suit to District of Columbia v. Heller, 554 U.S. 570 (2008), Plaintiffs Dick Anthony Heller and others bring a Second Amendment challenge to a long list of D.C. restrictions on gun ownership. After lengthy proceedings before the original district court judge, the Court of Appeals for the D.C. Circuit remanded the matter for this Court to consider the constitutionality of certain of these provisions. In preparation for trial, Plaintiffs now separately move *in limine* to exclude three of Defendants' proposed experts – Mark D. Jones, Cathy L. Lanier, and Joseph J. Vince, Jr. – arguing both that their expert reports fall short of the disclosure requirements under Fed. R. Civ. P. 26(a) and that their proposed testimony is too unreliable to be admitted under Fed. R. Evid. 702. While the reports may not be paragons, they are sufficient to withstand Plaintiffs' Motions.

I.  **Background**

Very soon after the Supreme Court invalidated D.C.'s handgun ban in Heller, the City Council imposed new restrictions on gun ownership, chiefly through a series of registration requirements. Plaintiffs then immediately filed this action, claiming that these new restrictions still violated the Second Amendment and were in excess of the District's home-rule authority.

1

Judge Ricardo M. Urbina, to whom this case was previously assigned, ultimately granted summary judgment to the District, see Heller v. District of Columbia, 698 F. Supp. 2d 179 (D.D.C. 2010), but the D.C. Circuit reversed his decision in part and remanded the case to this Court for further consideration of certain of the registration requirements for handguns and all registration requirements for long guns.  See Heller v. District of Columbia, 670 F.3d 1244, 1260 (D.C. Cir. 2011).  After additional amendments to the Complaint, the parties began discovery, which is to conclude July 31, 2013.  See Minute Order, June 27, 2013.

On April 19, 2013, the District served Plaintiffs with expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2), identifying Mark D. Jones, Cathy L. Lanier, and Joseph J. Vince, Jr. as expert witnesses.  See Opp. at 2.  Jones is "a former agent for the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), with more than 30 years['] experience in law enforcement, who was assigned to the District of Columbia for more than [seven] years and has participated in more than 100 Federal, state, and local law-enforcement arrests involving unlawful firearms possession, illegal firearms trafficking, misuse of firearms, and firearm-related violence."  See Opp. at 2 (citing Mot. to Strike Expert Testimony of Mark D. Jones, Exh. 1 (Expert Report of Mark D. Jones) at 1).  He proffers opinions on the importance of the one-gun-per-thirty-day-period limitation, the in-person registration and renewal requirements, the safety and training requirements, and the requirement to inform law-enforcement officials of the sale, transfer, or loss of ownership of a firearm.  See id.  Lanier is "the Chief of Police for the Metropolitan Police Department of the District of Columbia ("MPD"), with over 20 years of law-enforcement experience (all of it in the District) and is responsible for overseeing MPD's efforts to prevent gun violence, and arrest and prosecute violent criminal offenders."  See Opp. at 2 (citing Mot. to Strike Expert Testimony of Cathy L. Lanier, Exh. 1 (Expert Report of Cathy L.

Lanier) at 1). She opines about law-enforcement challenges unique to the District and about the importance of in-person background checks, safety and training requirements, and registration certificates. See id. Vince is "also a former ATF agent with nearly 30 years['] experience investigating the illegal trafficking of firearms and the diversion of firearms for illegal purposes." See Opp. at 2 (citing Mot. to Strike Expert Testimony of Joseph J. Vince, Jr., Exh. 1 (Expert Report of Joseph J. Vince, Jr.) at 1). Vince opines regarding the benefits and burdens of several of the registration requirements, including long-gun registration, the thirty-day rule, in-person registration and renewal, safety training, and the notification obligation. See id.

Plaintiffs now move *in limine* to strike the reports and exclude the proposed expert testimony. Although Plaintiffs' Motions were filed before any of Defendants' experts could be deposed, the parties have represented to the Court in a conference call on June 27, 2013, that these depositions have now taken place.

**II.     Analysis**

Plaintiffs challenge Defendants' proposed expert testimony under two similar, but distinct, legal regimes. First, Plaintiffs assert that Defendants' expert reports fail to comply with the disclosure requirements of Fed. R. Civ. P. 26(a). Second, they contend that the proposed expert testimony fails to meet the reliability requirements of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). The Court will consider each in turn.

    A.  Rule 26(a)

Plaintiffs first argue that Defendants' proposed expert testimony must be struck because the disclosure statements they served for Jones, Lanier, and Vince do not satisfy the requirements of Fed. R. Civ. P. 26(a). Each expert report, in Plaintiffs' view, "is devoid of 'facts or data considered by the witness' in forming his 'opinions.'" See Jones Mot. to Strike at 5 (quoting

Fed. R. Civ. P. 26(a)(2)(B)); Lanier Mot. to Strike at 5; Vince Mot. to Strike at 5. Defendants take issue with this characterization, contending that "each of the challenged reports is rife with facts and data." See Opp. at 6. Defendants have the better of this argument: while the expert reports may be terse, they provide sufficient information to comply with the goals and requirements of Rule 26(a).

Fed. R. Civ. P. 26(a)(2) provides that a "party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Id. Disclosures must ordinarily be supplemented by a written report, prepared and signed by the witness, including the substance of the opinions the expert plans to offer and the facts and data he relies upon. Id. For proposed experts who regularly provide expert testimony or have been specifically retained to do so, the report must also detail the witness's qualifications, his past history as an expert, and his compensation. Id. "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial." Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 5-6 (D.D.C. 2005); see also Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007) ("The purpose of the rule is to eliminate 'unfair surprise to the opposing party.'") (quoting Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995)).

Under Rule 37(c)(1), if a party fails to comply with these disclosure requirements, "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction," courts may provide alternative sanctions, including

informing the jury of the party's failure, awarding costs and attorney fees to the prejudiced party, or any of the other sanctions listed in Rule 37(b)(2)(A)(i)-(vi).  Id.

The reports here do comply with the requirements of Rule 26(a)(2).  Each contains a complete list of the expert's opinions and the "facts and data considered by the witness."  See Rule 26(a)(2).  For example, the Vince report outlines each of his opinions and provides a comprehensive list of documents he reviewed in reaching such opinions.  See Vince Report at 2. He goes on to state that "[t]he opinions that I articulate in this report are based on my experience, my review of numerous studies and books, the District of Columbia's firearms laws and regulations, and discovery materials from this case made available to me.  The materials I used to formulate my opinions are listed above."  See id.  Jones and Lanier make identical claims.  See Jones Report at 4; Lanier Report at 2.  Each expert further describes – at great length – the experience he or she drew upon in reaching these opinions.  See Jones Report at 1-3; Lanier Report at 1-2; Vince Report at 1-2, 8-10.  Because all of these experts explain their experience and the knowledge they have accumulated over many years in the field, the reports provide Plaintiffs with precisely the kind of notice envisioned by Rule 26(a) – notice sufficient to "prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial."  Minebea Co., 231 F.R.D. at 5-6.

Other courts within this jurisdiction have arrived at similar conclusions, rejecting the idea that "an expert report must be sufficiently complete that no deposition of the expert should be needed to prepare to cross examine him," and denying motions to strike expert testimony where the expert's "opinions . . . are all in the report and [the opposing party] had the opportunity to depose [the expert] to examine more fully the bases for his opinions."  Evans v. Washington

Metro. Area Transit Auth., 674 F. Supp. 2d 175, 180-81 (D.D.C. 2009) (emphasis removed). Indeed, the D.C. Circuit has clearly stated that Rule 26 "'does not limit an expert's testimony simply to reading his report. . . .  The rule contemplates that the expert will supplement, elaborate upon, [and] explain . . . his report' in his oral testimony." Muldrow, 493 F.3d at 167 (quoting Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006) (alteration in original)). The expert report, then, is not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own.

In this case, Plaintiffs have had an opportunity to depose these experts and examine more fully the bases for their opinions.  They will also be able to present opposing lay and expert testimony, as well as have the opportunity, absent summary judgment, to cross-examine Defendants' experts at trial.  Where Defendants have provided adequate notice of the opinions they expect these experts to offer and Plaintiffs have had and continue to have opportunities to challenge these conclusions, the goals of Rule 26(a) are satisfied, and there is no basis for striking the reports and preventing these experts from testifying.

    B.  *Daubert* and Rule 702

Plaintiffs next argue that the proposed testimony of Lanier, Jones, and Vince must be excluded under Rule 702 because none of the opinions is "'the product of reliable principles and methods,'" nor have the experts "'applied the principles and methods reliably to the facts of the case,'" their opinions instead being "'nothing more than the expression of . . . personal legislative policy preferences or subjective conclusions.'"  See Lanier Mot. to Strike at 8 (quoting Estate of Gaither ex rel. Gaither v. District of Columbia, 831 F. Supp. 2d 56, 61 (D.D.C. 2011); Jones Mot. to Strike at 6; Vince Mot. to Strike at 5.  Plaintiffs further contend that the

6

proposed expert testimony must be excluded because it is not "the kind[] of evidence that the District must present [according to the D.C. Circuit's opinion remanding the case] to attempt to justify the District's firearms registration requirements." See Rep. at 3 (emphasis removed). Neither argument is availing.

      A district court has "'broad discretion in determining whether to admit or exclude expert testimony.'" United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 608 F.3d 871, 895 (D.C. Cir. 2010) (quoting United States v. Gatling, 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Federal Rule of Evidence 702, which governs the admissibility of such testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, trial courts are required to act as gatekeepers who may only admit expert testimony if it is both relevant and reliable. See Daubert, 509 U.S. at 589; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (applying Daubert's holding to non-scientific expert testimony).

      Expert testimony is relevant if it will assist the trier of fact to understand the evidence presented. See Fed. R. Evid. 401, 702; see also Daubert, 509 U.S. at 592-93 (citing Fed. R. Evid. 104(a)); Kumho, 526 U.S. at 141. While the way in which "reliability is evaluated may vary from case to case," United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (*en banc*), in all cases, "[t]he trial judge . . . must find that [the proffered testimony] is properly grounded,

7

well-reasoned and not speculative before it can be admitted." Fed. R. Evid. 702 advisory committee's note. The trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho, 526 U.S. at 152; see also Groobert v. Pres. and Dirs. of Georgetown Coll., 219 F. Supp. 2d 1, 7 (D.D.C. 2002) (describing standard set forth in Rule 702 as "a liberal and flexible one") (internal citation omitted).

"In considering Rule 702 motions, the court assumes only a 'limited gate-keep[ing] role' directed at excluding expert testimony that is based upon 'subjective belief' or 'unsupported speculation.'" Harris v. Koenig, 815 F. Supp. 2d 6, 8 (D.D.C. 2011) (quoting Ambrosini v. Labarraque, 101 F.3d 129, 135-36 (D.C. Cir. 1996)). Courts are not permitted to "pass on the merits of the expert's scientific conclusions . . . [and] must refrain from 'evaluat[ing] the credibility of opposing experts and the persuasiveness of competing [] studies.'" Lakie v. SmithKline Beecham, 965 F. Supp. 49, 54-55 (D.D.C. 1997) (quoting Ambrosini, 101 F.3d at 140). Further, courts have recognized that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996). "Rejection of an expert's testimony is the exception rather than the rule." Geico Cas. Co. v. Beauford, No. 05-697, 2007 WL 2412974, at *3 (M.D. Fla. Aug. 21, 2007).

While the Court's role is admittedly limited, it cannot "toss the [sic] 'the decision to receive expert testimony . . . off to the jury under a let it all in philosophy.'" Boyar v. Korean Air Lines Co., Ltd., 954 F. Supp. 4, 7 (D.D.C. 1996) (quoting Joy v. Bell Helicopter Textron Inc., 999 F.2d 549, 569 (D.C. Cir. 1993)); see also Tyger Constr. Co. v. Pensacola Constr. Co.,

29 F.3d 137, 143 (4th Cir. 1994) (recognizing that "court may not abdicate its responsibility to ensure that only properly admitted evidence is considered by the jury"); United States v. Libby, 461 F. Supp. 2d 3, 18 (D.D.C. 2006) (noting need for court to remain vigilant, as abdicating such responsibility would "leave the gate this Court is obligated to protect unguarded and without a sentry").

"The issue for the Court to determine is whether this is a case where [the expert's] assumptions amount to 'rampant speculation' and should be excluded, or whether his assumptions merely represent a weak factual basis for his testimony that is appropriately challenged on cross examination." Boyar, 954 F. Supp. at 7; see also Daubert, 509 U.S. at 596 ("vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). "A court may refuse to admit expert testimony if it concludes that 'there is simply too great an analytical gap between the data and the opinion proffered.'" Groobert, 219 F. Supp. 2d at 6 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). It is not proper, however, for the Court to exclude expert testimony "merely because the factual bases for an expert's opinion are weak." Joy, 999 F.2d at 567; see also U.S. v. Philip Morris USA Inc., No. 99-2496, 2004 WL 5643764, at *1 (D.D.C. July 29, 2004) ("[E]ven though the testimony of an expert witness may carry little weight and little persuasiveness because of the weakness of its factual underpinnings, that fact in and of itself does not render the testimony inadmissible.") (citing Little v. Nat'l R.R. Passenger Corp., 865 F.2d 1329 (D.C. Cir. 1998), and Polk v. Ford Motor Co., 529 F.2d 259, 271 (8th Cir. 1976)).

Daubert's gatekeeping obligations apply to "all expert testimony, including testimony based on technical or other specialized knowledge." Clay v. Ford Motor Co., 215 F.3d 663, 667

9

(6th Cir. 2000) (citing <u>Kumho Tire</u>, 526 U.S. at 141) (emphasis in original). "In [some] cases, the relevant reliability concerns may focus upon personal knowledge or experience . . . [as] there are many different kinds of experts, and many different kinds of expertise." <u>Kumho Tire</u>, 526 U.S. at 150. The trial court's role, then "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," but "the law grants the trial judge broad latitude to determine" what reasonable measures of reliability are in any given case. <u>Id.</u> at 152-53. This inquiry is not to be aimed at "the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." <u>Daubert</u>, 509 U.S. at 597. That said, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable <u>any</u> conceivable opinion the expert may express. . . . Quite simply, under Rule 702, the <u>reliability</u> criterion remains a discrete, independent, and important requirement for admissibility." <u>Frazier</u>, 387 F.3d at 1261 (emphasis in original).

  Each of the experts here uses the same methodology, one that has been approved by courts in a variety of cases involving experts whose experience forms the basis of their opinions. In each case, the expert "observed the relevant evidence" and "applied their specialized knowledge" to the case at hand. <u>Russell v. Whirlpool Corp.</u>, 702 F.3d 450, 457 (8th Cir. 2012). Indeed, this methodology has been deemed reliable for a variety of types of experience-based experts, including fire investigators, <u>id.</u>, accident-reconstruction experts, <u>Desrosiers v. Flight International of Florida, Inc.</u>, 156 F.3d 952, 962 (9th Cir. 1998), and, most notably, law-enforcement officials. See <u>United States v. Walker</u>, 657 F.3d 160, 176 (3d Cir. 2011).

  In <u>Walker</u>, the Third Circuit approved a trial judge's admission of testimony from a law-

enforcement official who had worked as a narcotics investigator in Harrisburg, Pennsylvania, for some thirty years. Id. The expert's testimony regarding the geographic origins of cocaine trafficked in Pennsylvania was based upon his experience "regularly particpat[ing] in investigations involving the importation of cocaine . . . [speaking] with drug traffickers on a daily basis . . . work[ing] with a variety of other law enforcement agencies . . . [and teaching] courses and seminars on drug trafficking and drug identification." Id. The Third Circuit held "that [the expert's] method for reaching these conclusions was reliable," id., and noted that it "ha[d] previously recognized that law enforcement officials can rely upon their specialized knowledge or experience to offer expert testimony on various aspects of drug trafficking . . . [and may] testify in a Hobbs Act case regarding whether goods had originally been produced in another state." Id. (citations omitted).

Although the testimony at issue here concerns a different subject from the testimony at issue in Walker, it is fundamentally of the same kind: a distinguished law-enforcement official with a long history of specialized experience in a particular area opining on issues within that particular area. Just as Walker involved an expert in drug trafficking testifying on the behavior of drug traffickers, the experts here know gun trafficking and gun violence and seek to testify on the behavior of gun owners and users in response to certain gun-control policies. This case is a far cry from one where the opinion evidence "is connected to existing data only by the *ipse dixit* of the expert," such that "there is simply too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146.

Indeed, it appears here that the opinion evidence is connected to the existing facts – the registration requirements and the state of gun violence in the District – by a methodology precisely contemplated by Daubert and Rule 702: each expert's professional judgment obtained

11

through long experience in the field. Each of the reports specifically identifies this experience as being the basis for the opinions proffered, and each provides some justification – in the form of information gained from the expert's relevant experience – for those opinions. See, e.g., Lanier Report at 4-5 (supporting opinion that "[a]n initial in-person registration and background check are the best means to verify an applicant's eligibility to possess a firearm" with claim that "the criminal background check performed by MPD, which is based on fingerprints, is more effective than that performed by a gun dealer, which is merely based on a social security number [because i]dentity theft is rampant, and gun dealers are not necessarily well trained in identifying false documents"); Jones Report at 6 (opining that "[i]n my observation a well-regulated firearms registration process increases the likelihood that law enforcement may successfully trace guns they recover").

Plaintiffs' concerns about the conclusions these experts' experience led them to, and the believability of those conclusions, go to the weight of the testimony and can be appropriately addressed through cross-examination. See U.S. v. H&R Block, Inc., 831 F. Supp. 2d 27, 34 (D.D.C. 2011) (noting that "technical deficiencies that can be adequately explored on cross-examination generally go to the weight, rather than the admissibility, of the evidence, unless the methodological deficiencies are so sweeping or fundamental as to render the survey wholly unreliable and therefore inadmissible"); see also Groobert, 219 F. Supp. 2d at 9 (recognizing that "[t]he D.C. Circuit has stated that, 'by attempting to evaluate the credibility of opposing experts and the persuasiveness of competing studies, the district court conflate[s] the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony by a factfinder'") (quoting Ambrosini, 101 F.3d at 141); Barnes v. District of Columbia, --- F. Supp. 2d ---, 2013 WL 541148, at *20 (D.D.C. Feb. 14, 2013) ("If the District has an issue with how

Mr. Day classified certain late releases, it may address this on cross-examination."); Harris v. Koenig, 815 F. Supp. 2d 6, 10 (D.D.C. 2011) ("Whether or not [expert's testimony] is based on 'unreasonable assumptions' will be determined at trial after full cross-examination."); S.E.C. v. Johnson, 525 F. Supp. 2d 70, 76 (D.D.C. 2007) ("It is for the jury, not the Court, to determine whether [expert's] opinions are suspect because the facts upon which he relied were shown to be inaccurate or unproven").

Plaintiffs' points regarding the D.C. Circuit's directives on remand similarly go to the weight of the evidence, not its admissibility, and are more appropriately raised on summary judgment or at trial. Plaintiffs are correct in noting that the D.C. Circuit remanded this case "'to develop a more thorough factual record,'" Heller, 670 F.3d at 1260 (quoting Heller, 512 U.S. at 664-68), to allow the District to "present some meaningful evidence . . . to show a substantial relationship between . . . the novel registration requirements and an important governmental interest," id. at 1259, and to present similar testimony regarding registration requirements for long guns. Id. And while Plaintiffs may conceivably be correct that the expert testimony proffered here is not exactly the kind sought by the D.C. Circuit, a motion *in limine* is neither the time nor the place for those arguments. Essentially, Plaintiffs ask the Court to exclude the proposed expert testimony because, they believe, such evidence is inadequate to make the showing required by the D.C. Circuit to sustain the registration requirements under intermediate scrutiny. In this sense, Plaintiffs seek to "cloak[] a motion for summary judgment in the form of a motion *in limine*." Williams v. Johnson, 747 F. Supp. 2d 10, 20 (D.D.C. 2010). In doing so, they "misconstrue[] the purpose of [such] a motion, which should not be used to resolve factual disputes among the parties." Id.

Plaintiffs are free to raise these arguments at summary judgment and, if need be, at trial. "Even where an expert's evidence is ruled admissible under the Daubert standards, a district court remains free to decide that the evidence amounts to no more than a mere scintilla . . . [and] remains free to grant summary judgment." Hirsch v. CSX Transp., Inc., 656 F.3d 359, 362 (6th Cir. 2011) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 750 n.21 (3d Cir. 1994)). If, at such a stage, the District cannot carry its burden of showing "a substantial relationship between . . . the novel registration requirements and an important governmental interest," Heller, 670 F.3d at 1259, the Court will resolve dispositive motions accordingly, but it will not do so now.

Finding the proposed testimony of Jones, Lanier, and Vince sufficiently reliable for purposes of its admission, the Court will allow their reports and their testimony at trial to assist the finder of fact in its evaluation of the evidence.

**III.    Conclusion**

For the foregoing reasons, the Court will deny Plaintiffs' Motions to Strike the testimony of Cathy L. Lanier, Mark D. Jones, and Joseph J. Vince, Jr.  A separate Order consistent with this Opinion shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 8, 2013