# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 08-01289 (JEB) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF JOSEPH J. VINCE, JR.

Pursuant to 28 U.S.C. § 1746, I, Joseph J. Vince, Jr., declare and state as follows:

1. I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2. I am providing my opinions in this matter to the District of Columbia on a *pro bono* basis. I submitted an expert report on February 13, 2013, and was deposed by plaintiffs' counsel on June 13, 2013. The views I state herein are drawn from my report, my professional experience, and my deposition testimony.

3. At the invitation of the Office of the Attorney General for the District of Columbia, I provided a statement regarding D.C. Bill 19-614 (the "Firearms Amendment Act of 2011"), to the Committee on the Judiciary of the Council of the District of Columbia in January of 2012, and my opinions in this case elaborated and expanded on those in that statement.

**Background & Qualifications**

4. I am the head of the Criminal Justice Program at Mount St. Mary's University in Emmitsburg, Maryland, and also teach courses on criminal justice and law enforcement. I have a Master's Degree in Criminal Justice. I am also the President of Crime Guns Solutions, LLC, a

private consulting firm dedicated to assisting and training law enforcement and other groups in reducing firearm-related violent crime. Prior to my current positions, I spent the majority of my career with the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), where I held several positions over the course of nearly 30 years, including Chief of the Firearms Enforcement Division and Chief of the Crime Gun Analysis Branch. My *curriculum vita is* attached hereto.

5. During my time at the ATF, I oversaw numerous investigations targeting the illegal trafficking of firearms, including by organized crime figures, major narcotic distributors, and domestic and foreign terrorists. My later work at the ATF focused on crime-gun tracing and analysis, and helping local law-enforcement agencies develop information about illegal trafficking of firearms. Because of my experience involving the diversion of firearms for illegal purposes, I was appointed the United States' representative to the United Nations Working Group on Small Arms Proliferation, and was also assigned to the U.S. negotiating team under the direction of the Office of National Drug Policy to attempt to obtain an agreement with Mexico regarding the cross-border flow of drugs and guns. I have provided training to law enforcement officials throughout the United States, as well as in Europe, South America, and Mexico.

6. I have testified as an expert with regards to firearms-related violent crime in a number of cases in federal and local courts, and currently am a member of the Firearms Committee of the International Association of Chiefs of Police. I am also on the American Bar Association's National Task Force on Stand Your Ground Laws. I am familiar, generally, with most of the major empirical studies regarding firearms, and attempt to keep abreast of such studies as they are published.

2

7. I have testified or been deposed in the following cases within the last four years: *Johnson v. Bryco Arms*, 03 CV 2582, 02 CV 3029 (E.D.N.Y.) (JBW); *City of New York v. Beretta U.S.A. Corp.*, 00 CV 3641 (E.D.N.Y.) (JBW); *City of New York V. A-1 Jewelry & Pawn, Inc., et al*, 06 CV 2233; *Frank and Linda Varone v. Kane's Ace Hardware*, Circuit Court of Fifth Circuit, Citrus County, Florida, Case No.: 2010 – CA – 3995; *Illinois Association of Firearms Retailers, Kenneth Pacholski, Kathryn Tyler, and Michael Hall, v. The City of Chicago and Richard M. Daley, Mayor of the City of Chicago*, United States District Court for the Northern District of Illinois Eastern Division, Civil Action No. 10-cv-04184; *Carolyn Tuft v. Rocky Mountain Enterprises, Inc.*, Third Judicial District, Salt Lake County, State of Utah, Civil No. 080907281; *Sonja Woods; and William Woods v. Steadman's Hardware, Inc.*, Montana First Judicial District Court, County of Lewis and Clark, Montana, Cause No. BDV-2009-58. My normal rate for preparing expert reports and testifying is $350 per hour.

**Materials Reviewed**

8. I reviewed the following documents in preparation for opining in this matter:

   a. Plaintiffs' Third Amended Complaint (For Declaratory Judgment, Injunctive Relief, and Writ of Mandamus) July 31, 2012.
   b. The parties' written responses and documents provided in discovery in this case.
   c. D.C. Official Code §§ 7-2501.01 *et seq.* (2012 Supp.), *as amended.*
   d. Title 24, D.C. Municipal Regulations, Ch. 23, *as amended.*
   e. The materials found at the Metropolitan Police Department's website regarding firearms registration, *http://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/firearms_reg_req.pdf*, including the Online Firearms Safety Training Course and "Firearms Registration: General Requirements and Study Guide" *(available at http://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/firearms_reg_req.pdf).*
   f. Statement of Joseph J. Vince, Jr. re: Bill 19-614 (the Firearms Amendment Act of 2011), before the Committee on the Judiciary, Council of the District of Columbia (Jan. 30, 2012) (and the documents referenced therein).
   g. *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011), *affirming in part Heller v. District of Columbia*, 698 F.Supp.2d 179 (D.D.C. 2010).
   h. Anything otherwise referenced in this report.

3

**My Opinions**

9. In summary, based on my experience in law enforcement, I believe that the registration requirements currently in place in the District serve the goals of enhancing public safety and reducing firearm-related crime. Further, I do not believe that the provisions of the District's firearms registration requirements are "overly burdensome" or too onerous. The District's firearms laws and regulations are a reasonable, practicable, and enforceable manner of reducing firearms-related violence and protecting the safety of the District's residents, visitors, and law enforcement professionals.

*Firearms Registration Generally*

10. In my statement almost two years ago to the Council of the District Columbia on the Firearms Amendment Act of 2011, I discussed the many benefits of strong firearm-registration requirements, perhaps the main one being to keep weapons out of the hands of criminals or others who pose a safety risk to themselves or the public. The District's firearms-registration law, like others in my experience, has and will achieve those benefits.

11. Firearm registration fosters greater accountability among gun owners, and provides important information for law enforcement, allowing officials to identify persons who subsequently become disqualified from ownership. Registration requirements make it more difficult for criminals, juveniles, and other prohibited persons to acquire guns. Registration also makes it easier to trace guns used in crime to their last known legal owner, and to investigate possible illegal transactions, providing law-enforcement officers with critical information to track firearms when investigating gun crimes and gun smuggling. Registration has proven to be effective in keeping weapons away from criminals. For instance, since 1934, the National

4

Firearms Act has required the registration of weapons like machine guns and sawed-off shotguns, and I learned at the ATF that NFA-registered weapons are very rarely used in crime.

Urban v. Rural

12. The burden of firearm-related death, crime, and injury is not evenly distributed through the population. It has been my experience that urban, poorer neighborhoods have higher rates of gun violence than wealthier, rural areas. In fact, while homicide rates and violent crime has generally been falling nationwide, firearms homicide rates are highest among young men in urban areas and have been increasing in this population. Consequently, firearms-registration laws in highly dense populated urban areas like the District are (and should be) different than those governing rural areas.

13. Rural areas afford persons a safer area in which to discharge a firearm without endangering others. Rural spaces have large tracts of land where humans do not reside; thereby lessening the danger of accidental or inadvertent discharges of a weapon, especially long guns whose ammunition can travel great distances. Rural dwellers can and do safely discharge firearms for hunting or sporting purposes. Hunting is not allowed in the District, so there is not a need for your average citizen to carry a long gun in public within city limits for purposes of hunting because of the increased danger this would impose.

Long-Gun Registration

14. Long guns, like rifles and shotguns, are the most popular type of firearm in the United States, amounting for almost two-thirds of all privately owned guns. The United States has required the registration of certain types of long-guns, such as machine guns, since the 1930s. This has proved highly effective in reducing the use of automatic weapons in crime.

5

15. The same benefits of firearms registration (enhanced public safety, violence prevention, and law enforcement) apply to long guns as well as hand-guns. Both types of weapons present the same risks, so it makes sense to subject them to the same regulatory requirements.

16. In addition, the registration of long-guns makes particular sense here, given the District's unique status as the Nation's Capitol. History has shown that high-powered rifles are the preferred tool of political assassins. In light of the dense concentration of high-ranking government officials, ambassadors, and visiting foreign dignitaries in the District, it makes particular sense for the District to require the registration of long guns in order to track their presence and keep them out of the hands of criminals and terrorists.

*Restricting Handgun Registration to One Per 30-Day Period*

17. In my opinion, one of the most effective methods of disrupting illegal interstate trafficking of firearms are state and local laws that limit the quantity of firearms that can be purchased or registered during a given time period. For example, studies have shown that state and local laws that limit the purchase of firearms by an individual to one gun in a 30-day period are highly effective in disrupting illegal interstate trafficking of firearms. Put another way, handguns purchased in multiple-gun purchases on the same day were more likely to be traced by the ATF than were single-purchase handguns. In my research at ATF of multiple sale restrictions, I saw dramatic reductions in the trafficking of crime-guns originating from the State of Virginia to other more restrictive states when they instituted one-gun-a-month regarding the purchase of handguns.

18. I believe that the District's current law, which limits an individual to registering no more than one pistol during a 30-day period, is an effective means of limiting the illegal trafficking of guns into (or out of) the District. Further, this requirement makes particular sense for the District,

given the fact that the majority of illegal firearms found in the District are illegally trafficked from other states. Research that I have participated in or examined has always shown that the District does not have a problem with firearms from the District, but they do have crime-related problems with firearms that are trafficked or transported from Maryland and Virginia. Unfortunately, the District cannot legislate for the States that surround them; however, doing everything that is humanly possible to prevent ready accessibility of firearms to traffickers and prohibited persons in their jurisdiction will have positive effects toward reducing firearms-related violent crime.

*In-Person Registration*

19. It is also my opinion that the District's requirement that a registrant appear in-person is entirely reasonable. One of the most effective ways to ensure that criminals do not circumvent the firearm-registration process is to require in-person appearance and ID verification as part of registration. In my experience, jurisdictions that do not require in-person registration and ID verification are far less effective at preventing the diversion of firearms for illegal purposes. For example, the State of Florida issues carry/conceal permits via the mail to individuals across the United States without the benefit of an in-person examination by a government official. In a case I'm familiar with, the Philadelphia Police Department denied an individual the right to purchase a handgun because of information uncovered locally regarding violence issues. Florida, via their by-mail system, issued a permit whereupon this individual purchased a handgun in Florida and returned to Pennsylvania and shot and killed another.

20. Having a registrant appear in-person in front of a government employee provides an opportunity to verify the intentions and accuracy of information for person obtaining a permit. In other words, the government employee becomes a final line of defense – the "gatekeeper" – for

7

insuring responsible citizens' rights to possess and use a firearm while denying prohibited persons an inherently dangerous product. This will deter persons from using false identifications and other ruses that could be easily employed if not for in-person registration. Indeed, the firearms industry itself endorses the in-person approach, in their "Don't Lie for the Other Guy" program, where they provide materials to firearms retailers to help them identify and deter illegal straw purchases. *See* www.dontlie.org.

21. Without such a system, the District might just as well have kiosks dispense registration permits. While the in-person registration requirement will clearly not prevent *all* unauthorized persons from obtaining guns, it will certainly assist in deterring all but the most desperate.

*Three-Year Renewal of Registration*

22. Requiring firearms registrants to renew their registrations every three years also has important benefits for law enforcement—it puts the burden on registrants to provide updated information to the MPD concerning their continuation of responsible citizenship or loss of firearm ownership based upon irresponsible actions. Within the space of three years, an unreliable person can display actions that would prohibit the ownership of a firearm and revocation of their permit. Renewal of firearm permits allows for the culling of persons whose actions (usually convictions) have demonstrated a potential for irresponsible ownership and license revocation.

*Demonstrated Knowledge of District Firearm Law and the Safe Use and Storage of Firearms/Completed Firearms Training or Safety Course*

23. Requiring citizens who want to register their firearms to take a course to learn about the safe use, handling, and storage of those firearms is just common sense. Every person who owns a gun should be required to take such a course. Because every firearm has the potential to seriously injure or kill, those who want to use such weapons should be trained in how to do so safely, to

8

reduce the risk of accidental discharges. Moreover, numerous studies show that having guns in homes with children seriously increases the risk of deadly accidents. Requiring gun owners to know how to safely handle and store their weapons clearly reduces the risk of potentially fatal accidents. I do not know of one firearm expert or law enforcement trainer who has not strongly recommended attending and successfully passing a safety course prior to owning or using a firearm. One must remember that the proper use of a firearm is an acquired skill that can diminish over time without practice and refresher courses. The requirement of safe use and storage of firearms and successful completion of a training or safety course is one that should be embraced by all responsible gun owners. As a society, we have found it prudent and beneficial for citizens to obtain training and a license before operating a motor vehicle. Common sense tells us that it cannot be "more burdensome" for one to be equally skilled in the handling of a firearm.

*Notification to the Police of Theft, Loss, Destruction, Sale, or Transfer of Firearms*

24. Again, the requirement in District law that firearms owners must immediately notify the police of any theft, loss, destruction, sale, or other transfer of their weapon(s) is just common sense. Firearms can be deadly—law enforcement cannot track them effectively if the weapons' owners are not required to keep the police apprised of the weapons' location and status. As I learned from my experiences at the ATF, such requirements also aid in reducing illegal firearm trafficking. In order for law enforcement to have the opportunity at recovering a firearm prior to an unlawful use occurring, timely notification of the firearm's stolen status is crucial. I have seen first-hand how failing to notify police agencies of the theft of a weapon has resulted in homicides that might have been prevented with proper notification. At the ATF, we investigated a gun that had been used in a triple homicide. Our investigation showed that, months before the incident,

the gun had been stolen, but the owner didn't report it because his daughter was dating one of the criminals and he didn't want to make trouble for them.

25. When people don't report lost or stolen guns, they deprive law enforcement of the opportunity to do an investigation, which might lead to the recovery of the guns or their return to the rightful owner. Responsible citizens desire to immediately report their firearms stolen or lost in order that the public can be protected and for proper notification to insurance companies. The key is responsible gun ownership and good citizens report the theft or loss of firearms immediately. The State of Michigan has had handgun registration since the 1930s and many citizens have been able to properly report the correct description of their stolen firearms because the State maintained accurate information in their registration files. This requirement has on numerous occasions resulted in the return of stolen firearms to their proper owners that otherwise would not have occurred.

*Summary*

26. I have examined the District's firearms laws and regulations and find them to be reasonable, sensible, and enforceable. If the District, or for that matter any other jurisdiction, is going to have success in reducing the numbers of firearm-related violent crimes, three strategies need to be implemented: Prevention, Intervention, and Enforcement. Exceptional public policy and policing tactics should always favor preventing a crime from occurring over arresting a violator after the crime occurs. The District's firearms laws and regulations allow responsible citizens to own guns, but make it more difficult for criminals and others in prohibited categories to acquire a firearm, thereby reducing the harm they can inflict with the most dangerous weapon, a firearm. Studies have shown that victims of crime face serious injury or death when confronted by a criminal with a gun over all other weapons combined. Major cities must provide their police

departments with tools that allow them to be proactive in reducing firearms-related crimes by keeping guns from criminal hands, instead of continuing to only react to shooting scenes. I have found nothing in the District's laws and regulations that is overly burdensome on individual gun owners, and those laws and regulations help to achieve safer neighborhoods.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on __10|1|13__    _____
                           JOSEPH J. VINCE, JR.

11

Appendix A (cv)

# Joseph J. Vince, Jr.
2214 W. Greenleaf Drive
Frederick, MD 21702
(301) 631-2950•JVincecgs@msn.com

**Education**          1979   M. A., *University of Detroit*, Detroit, MI
                              Criminal Justice

                       1970   B. A., *Youngstown State University*, Youngstown, OH
                              Major: Criminal Justice
                              Minor: History and Education

**Formal Managerial Training**

| | |
|---|---|
| January 1994 | *Senior Executive Service Candidate*, SES, Washington, DC |
| March 1987 | *Leadership Development Program*, Center for Creative Leadership, Greensboro, NC |
| August 1981 | *Executive Development Seminar*, OPM, Kings Point, NY |
| February 1980 | *Supervision and Group Performance*, OPM, St. Louis, MO |

**Experience**

| | | |
|---|---|---|
| January 1999-Present | President | **Crime Gun Solutions LLC** |
| May 2002-Present | Faculty | **Professor – Mount St. Mary's Univ., Emmitsburg, MD** |
| 2010 to Present | Member | **Board Member-Frederick Comm. College-CJ Depart.** |
| January 2002–2004 | Member | **State and Local LE Advisory Board to the U.S. Counterdrug Intelligence Coordinating Group (CDX) US Department of Justice** |
| February 2001–2004 | Member | **Government Intelligence Training Initiative** |
| May 2005 – 2008 | Board of Dir. | **American Hunters and Shooters Association, Inc.** |
| September 2001–Pres. | Director | **The Father Delaney Center for Public Safety Practices at Mount Saint Mary's University** |

**US Bureau of Alcohol, Tobacco and Firearms**

| | | |
|---|---|---|
| July 1997-January 1999 | Chief | Crime Gun Analysis Branch, Falling Waters, WV |
| July 1995-July 1997 | Chief | Firearms Enforcement Division, Headquarters, Washington, DC |
| July 1993-July 1995 | Deputy Chief | Firearms Enforcement Division, Headquarters, Washington, DC |
| March 1991-July 1993 | Special Agent In Charge | Division Office, Chicago, IL |

October 1986-March 1991 Assistant Special Agent in Charge/Team Supervisor, ATF Southeast National Response Team (NRT); Division Office, Miami, FL

8 | P a g e

| | | |
|---|---|---|
| January 1985-October 1986 | Special Agent In Charge | Intelligence Branch, Headquarters, Washington, DC |
| November 1983-January 1985 | Special Agent | Firearms Tracing Branch, Headquarters, Washington, DC |
| June 1983-November 1983 | Operations Officer | Firearms Division, Headquarters, Washington, DC |
| August 1979-June 1983 | Resident Agent In Charge | Division Office, Omaha, NE |
| October 1974-August 1979 | Criminal Investigator | Special Agent, Division Office, Flint, MI |
| May 1971-October 1974 | Criminal Investigator | Special Agent, Division Office, Detroit, MI |

***Other Law Enforcement Experience***

| | | |
|---|---|---|
| June 1969-May 1971 | Deputy Sheriff | **Trumbull County Sheriff's Office, Warren, OH** |

## Awards

| | |
|---|---|
| 1997 *Innovations in American Government*, Finalist | Presented by the Ford Foundation and the John F. Kennedy School of Government at Harvard University for work on the project "Disarming the Criminal" |
| 1996 *Vice Presidential Hammer Award* | Three awards were presented for innovations in Federal Firearms Enforcement |
| 1997 *ATF Gold Star Award* | Awarded for wounds received in action |

Numerous other awards and recognition have been presented throughout 27 years of service for the United States Department of the Treasury, Bureau of Alcohol Tobacco and Firearms by the United States Government and by other law enforcement agencies for quality investigative work and courageous leadership

## Other Pertinent Experience
### Publications/Research

| | | |
|---|---|---|
| 2004 | Evidence Collection Toolbox & Field Guide | Criminal Justice textbook and field guide published by Jones & Bartlett in March 2005. |
| 1998 | Youth Crime Gun Interdiction Initiative | Crime Gun Analysis Reports of the Illegal Youth Firearms Markets in 27 Communities |
| 1997 | Youth Crime Gun Interdiction Initiative | Crime Gun Analysis Reports of the Illegal Youth Firearms Markets in 17 Communities |
| 1992 | Protecting America: The Effectiveness Of the Federal Armed Career Criminal Treasury Statutes | A Study by The Bureau of Alcohol, Tobacco and Firearms, United States Department of the |
| 1986 | The Encyclopedia of Police Science | Contributing writer |
| 1983 | "MERT – Response for the 80's" | Law Enforcement Periodical |
| 1980 | "Achievement Through Cooperation" | Nebraska Law Enforcement Magazine |

Authored or managed numerous studies and reports for ATF, which were utilized by the White House, Congress, other law enforcement agencies for policy and strategic matters.

***Organizations***

Member, International Association of Chiefs of Police
Member, International Association of Chiefs of Police, Firearms Committee Member & Consultant
Member, American Society of Law Enforcement Trainers

***Public Instruction***

Lectures, Speeches and Presentations Numerous Law Enforcement Groups

| | |
|---|---|
| Academies/Universities | In Reference to ATF's Mission, Findings and Accomplishments |
| Training Seminars (Both U.S. & Abroad) | |

***Media Appearances***

Quoted in newspapers as crime-gun/ law enforcement expert to include:
New York Times, Wall Street Journal, Washington Post, Washington Times, USA Today and other national and international publications.
Appeared on Radio and TV commenting on crime and law enforcement issues to include:
60 Minutes, CNN, ABC, CBS, FOX, PBS as well as local television stations across the U.S. and internationally to include: Canada, Great Britain, and Japan