IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-01289 (JEB) |
| | ) | |
| THE DISTRICT OF COLUMBIA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT
OF MATERIAL FACTS, AND PLAINTIFFS' STATEMENT OF GENUINE
ISSUES OF MATERIAL FACT NECESSARY TO BE LITIGATED**

Plaintiffs Dick Anthony Heller, Absalom Jordan, William Carter, William Scott, and Asar Mustafa, by counsel, hereby submit pursuant to Fed. R. Civ. P. 56 and LCvR 7(h) their Response to Defendants' Statement of Material Facts as to Which There Is No Genuine Dispute, and their Statement of Genuine Issues of Material Fact Necessary to be Litigated.

Local Civil Rule 7(h) provides, in pertinent part:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement . . . .  In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact

1

is controverted in the statement of genuine issues filed in
opposition to the motion.

Defendants' Statement of Material Facts As to Which There Is No Material
Dispute ("Def. Stmt.") contains almost no material facts that are relevant to the issues to
be determined by this Court.  In the opinion remanding this case, the D.C. Circuit noted
that the District had advanced two "governmental interests it may have in the registration
requirements, *viz.*, to protect police officers and to aid in crime control." *Heller v. District
of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011).  Most of the assertions in Def. Stmt.
are procedural history of the legal provisions at issue (¶¶ 1-13), are not relevant or
material to the decision of the issues on remand (¶¶ 15, 20, 21, 22, 23, 25, 26), are
speculation (¶¶ 18, 24), contradict what the Council itself has found (¶ 27), are statements
of law (¶ 28), or are sweeping conclusions (not facts) which are often based on poorly
conducted research and in general do not demonstrate any effect on protection of police
officers or crime control (¶¶ 18, 19, 20, 26).  The only paragraph in Def. Stmt. that
addresses the burdens imposed by the challenged registration provisions on Plaintiffs'
constitutional rights is ¶ 17, and no paragraph addresses whether the District could or
could not achieve its governmental interests by less restrictive laws with a tighter fit to
those interests, as required by enhanced scrutiny.

For these reasons, and the particular reasons stated in response to each numbered
paragraph, Plaintiffs will dispute a number of statements made in Def. Stmt., while
noting that they are not facts that need to be litigated in an evidentiary trial, but rather are
legal in nature, are conclusions or speculation rather than facts, are not supported by valid
research, or are not relevant and material to the issues on this remand.

**Def. Par. 1**:    In response to the Supreme Court's decision in *Heller v. Dist. Of Columbia*, 554U.S. 570 (2008), the Council of the District of Columbia amended the District's gun laws. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SAFETY & THE JUDICIARY, REPORT ON BILL 17-843, the "Firearms Control Amendment Act of 2008," Nov. 25, 2008, at 2 ("2008 REPORT") (Ex. A [App.], starting at 33); (*available online at* http://dcclims1.dccouncil.us/images/00001/20090513152155.pdf (accessed Dec. 10, 2013).

**Plaintiffs' Response:**

Plaintiffs do not dispute that the Council amended the District's gun laws.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 2:**    On September 18, 2008 and October 1, 2008, the Council's Committee on Public Safety and the Judiciary held public hearings during which it heard the testimony of twenty-one witnesses and considered the written statements of four others "in order to receive as much public comment as possible in crafting [the] bill." 2008 REPORT at 3, 11–14.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the hearings were held or that testimony and statements were received, and that Defendants have accurately quoted from the 2008 Report.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

3

**Def. Par. 3:**   The Firearms Registration Amendment Act of 2008 ("2008 Act") was passed by the Council, and signed by then-Mayor Adrian Fenty on January 28, 2009. *See* 56 D.C. REG. 3438 (May 1, 2009).

**Plaintiffs' Response:**

Plaintiffs do not dispute that the legislation at issue was passed and signed.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 4:**   After Congress declined to disapprove the 2008 Act during the prescribed period of congressional review, it became law on March 31, 2009. *See id*.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the challenged laws became law.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 5:**   After the D.C. Circuit's decision in *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011), the Council revisited the District's firearm registration laws by enacting Bill 19-614, the Firearms Amendment Act of 2012 (the "2012 Act," D.C. Law 19-170). *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SAFETY & THE JUDICIARY, REPORT ON BILL 19-614, at 23 (Feb. 29, 2012) ("2012 REPORT") (copy attached in App. starting at 120).

**Plaintiffs' Response:**

Plaintiffs do not dispute that these amendments were enacted in 2012.  The procedural history of this legislation is not a material fact that relates to the

constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 6:**    The 2012 Act repealed the requirements that an applicant submit "for ballistics identification procedure" each pistol to be registered (§ 7-2502.03(d)) and undergo a background check every six years (§ 7-2502.07a). 2012 REPORT at 13–14, 18.

**Plaintiffs' Response:**

This is a statement of law and procedural history, not of material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.  In addition, neither of these repealed provisions is at issue in this case, and this statement is thus irrelevant.

**Def. Par. 7:**    In addition, the 2012 Act:

a. revised the vision requirement to require only that a firearms registrant "is not blind" (§ 7-2502.03(a)(11));

b. eliminated the 5-hour training requirement with the range and classroom components, and instead directed the Chief of MPD to provide free safety training to firearms applicants (§ 7-2502.03(a)(13)(A));

c. clarified that the requirement to demonstrate knowledge of the District's firearms laws is a one-time requirement (§ 7-2502.03(a)(10)); and

d. extended the time frame for MPD to create a system for re-registration of firearms until January 1, 2014. 2012 REPORT at 23–24.

**Plaintiffs' Response:**

Plaintiffs do not dispute that certain changes were made to these provisions.  This is a statement of law and procedural history, not of material fact that relates to the

constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 8:**   On January 30, 2012, the Council's Committee on the Judiciary held a public hearing to receive testimony on the proposed legislation, as well as on "the gun laws of the District" in general. *See* 2012 REPORT at 22–23; 58 D.C. REG. 50 (Dec. 16, 2011).

**Plaintiffs' Response:**

Plaintiffs do not dispute that a hearing was held.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.


**Def. Par. 9:**   At this hearing, the Committee received oral testimony from 14 witnesses, including: Plaintiffs Dick Heller and Absalom Jordan; MPD Chief Cathy Lanier; Daniel W. Webster, the Co-Director of the Johns Hopkins Center for Gun Policy and Research; Benjamin Van Houten, the Managing Attorney at the Legal Community Against Violence; Daniel R. Vice, a Senior Attorney with the Brady Center to Prevent Gun Violence; George L. Lyon, Jr., the President of the D.C. Chapter, Community Association for Firearms Education ("CAFE"); Ricardo Royal, the National President & Chief Training Counselor for CAFE; and other members of the public. 2012 REPORT at 21–23.

**Plaintiffs' Response:**

Plaintiffs do not dispute that oral testimony was received at the hearing.  The procedural history of this legislation, and the identity of some but not all of the witnesses

who testified, is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 10:**  The Committee also received written statements concerning the District's firearm registration laws from these and other individuals, which were filed in the record. 2012 REPORT, Attach. No. 2 (written testimony and comments).

**Plaintiffs' Response:**

Plaintiffs do not dispute that written statements were received, but specifically dispute that Attachment No. 2 to the 2012 Report contained all of the written statements. Written materials submitted by persons generally opposed to the District's stringent firearms laws were not included or were included only in part.  *See* Pl. Ex. 22 (testimony of David Kopel and Emily Miller; supplemental testimony of National Rifle Association). The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 11:**  On February 29, 2012, the Committee issued a 29-page report, which made findings concerning the District's firearm-registration requirements. *See generally* 2012 REPORT.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the Committee issued a report which included findings.

**Def. Par. 12:**  The 2012 Act was unanimously adopted by the Council and subsequently signed by Mayor Vincent C. Gray on May 15, 2012. TAC ¶ 16.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the legislation at issue was passed and signed. The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 13:**  After the expiration of the prescribed period for congressional review, the law became effective on September 26, 2012.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the challenged laws became law.  The procedural history of this legislation is not a material fact that relates to the constitutionality of the challenged registration provisions, which are the issues on this remand.

**Def. Par. 14:**  None of the Plaintiffs in this matter are "blind" for purposes of D.C. OFFICIAL CODE § 7-2502.03(a)(11). Ex. E [Pltfs RFA Res.], Response No. 3.

**Plaintiffs' Response:**

Plaintiffs do not dispute that none of the Plaintiffs is blind.  Leave was sought to add blind plaintiffs to this suit, the District opposed permitting any blind plaintiffs, and leave was denied.  Dkt. Nos. 49, 50, 54.

**Def. Par. 15:**  All of the Plaintiffs have successfully registered at least one firearm in the District of Columbia. TAC ¶ 78a; Ex. F [Pltfs Interrog. Res.], Response No. 4.

**Plaintiffs' Response:**

Plaintiffs do not dispute that each Plaintiff has registered at least one firearm.  The fact that a registration was completed is not relevant or material to the constitutionality of the challenged registration provisions, which are the issues on this remand, including the

burdens incurred in the registration process, whether the provisions actually further the governmental interests, and whether they are tailored to provide a close or tight fit with those interests.

**Def. Par. 16**: MPD has determined that personally identifiable information provided by applicants on firearms-registration forms is exempt from disclosure to the public pursuant to D.C. OFFICIAL CODE § 2-534(a)(2), as a clearly unwarranted invasion of personal privacy. Shelton Decl. ¶ 13.

**Plaintiffs' Response:**

Plaintiffs do not dispute that Lt. Shelton stated that interpretation in his deposition, but dispute that D.C. Code § 2-534(a)(2) contains any express exemption for firearms registration information, or that that interpretation will always remain in effect.

**Def. Par. 17**: MPD charges $35 to take and process an applicant's fingerprints, and $13 per firearm for the registration itself. Shelton Decl. ¶ 8.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the stated fees are currently charged.

**Def. Par. 18**: Empirical evidence suggests that in-person registration for firearm purchasers reduces the diversion of guns to criminals. Webster Decl. ¶¶ 14–18.

**Plaintiffs' Response:**

Plaintiffs dispute this statement. The studies cited or conducted by Webster are not methodologically valid, do not measure "diversion" of guns to criminals, are not based on reliable evidence, and are not relevant or material to the issues in this case. This statement is also speculative on its face. Pl. Ex. 7 (Kleck Dec.) ¶¶ 27-35.

**Def. Par. 19**: Local-level background checks of an applicant's criminal and mental-health history have been shown to be more effective at reducing firearm-related crime than just using the federal background check. Lanier Decl. ¶ 19 (citing Steven A. Sumner, *et al.*, *Firearm Death Rates and Association with Level of Firearm Purchase Background Check*, AM. J. PREV. MED. (July 2008); 35(1) 1–6 (App. at 244–49)); Shelton Decl. ¶ 12.

**Plaintiffs' Response:**

Plaintiffs dispute this statement. The Sumner study relates to background checks, not to registration which is at issue in this case. It further relates only to "firearm death rates" which includes suicides and accidents that are not crimes.  It also does not show any reduction in overall death rates.  *See generally* Pl. Ex. 3 (Lanier Dep.) 29-40. Furthermore, neither Chief Lanier nor Lt. Shelton are qualified to judge the validity of such studies or to offer opinions regarding them.

**Def. Par. 20**: A study by the U.S. General Accounting Office concluded that "the instant background checks [required by federal law] do not positively identify purchasers of firearms," and "cannot ensure that the prospective purchaser is not a felon." Webster Decl. ¶ 10; App. at 226.

**Plaintiffs' Response:**

Plaintiffs do not dispute that the quoted statements appear in the GAO document, but dispute that it is a "study."  This report was based on a deliberate attempt by the U.S. Government to deceive licensed firearms dealers.  It is also not relevant or material because it relates to background checks at dealers, not registration; was based on old identification technology which has largely been superseded; and has no effect on crime

10

control or officer safety because only a tiny portion of criminals use false identification to obtain firearms from licensed dealers.

**Def. Par. 21**:  The use of fingerprints provides MPD with a means of biometric identification, which ensures that the applicant is who he says he is and that MPD is performing a background check on the correct person. Lanier Decl. ¶ 20.

**Plaintiffs' Response:**

Plaintiffs dispute this statement.   The fingerprints are submitted to the FBI for checking.  **[cite]**  The system does not ensure that the applicant is who he says he is, or that MPD is performing a background check on the correct person, unless his fingerprints are already on file with the FBI.  The District has also not had a problem with people using false IDs.  Pl. Ex. [E] (Shelton Dep.) 32-33.   Furthermore, criminals do not obtain their firearms through licit retail purchases Pl. Ex. 7 (Kleck Dec.) ¶ 16**,** and do not register their firearms.  Pl. Ex. 3 (Lanier Dep.) 12. Plaintiffs dispute that this statement is material to the issues of crime control or protection of officer safety.

**Def. Par. 22**: Individuals who legally register their firearms in the District are less likely to use those firearms for criminal purposes, and thus may pose less of a danger to law enforcement.  Lanier Decl. ¶ 27; Shelton Decl. ¶ 8.

**Plaintiffs' Response:**

Plaintiffs do not dispute that "[i]ndividuals who legally register their firearms in the District are less likely to use those firearms for criminal purposes" and "pose less of a danger to law enforcement" than those who do not register.  Plaintiffs dispute that any difference in the likelihood of criminal use or in danger to law enforcement officers is the result of the registration system.  Instead, it is because only the law-abiding register their

firearms, and criminals do not.  Pl. Ex. 3 (Lanier Dep.) 15. Plaintiffs dispute that the cited

paragraph of the Shelton Declaration supports the statement.

**Def. Par. 23**:  Training with respect to the safe handling and storage of a firearm

reduces the risk of accidental discharges. Vince Decl. ¶ 23; Lanier Decl. ¶ 23; Jones Decl.

¶ 25.

**Plaintiffs' Response:**

Plaintiffs do not dispute that training can reduce accidental discharges, but dispute

that the District provides "training," and further dispute that the video instruction on D.C.

firearms laws and safety provided by MPD, or the test administered by MPD, would

provide that benefit.  Pl. Ex. 13 (Webster Dep.) 142-43; Pl. Ex. 18.  Reduction of

accidental discharges by civilians is also not relevant or material to reducing crime or

protection of officers.

**Def. Par. 24**:  Promptly notifying law enforcement when a registered firearm is

lost or stolen provides law enforcement with the opportunity to investigate and

potentially recover the firearm before it is used in a crime. Lanier Decl. ¶ 28; Vince Decl.

¶ 24.

**Plaintiffs' Response:**

Plaintiffs dispute this statement because it is wholly speculative, and because

stolen property can be, and is, reported without any legal mandate.  Pl. Ex. 3 (Lanier

Dep.) 78-80; Pl. Ex. 13 (Webster Dep.) 136.

**Def. Par. 25**:  The majority of illegal firearms recovered in the District are

illegally trafficked from other states. Vince Decl. ¶ 18; Lanier Decl. ¶ 29.

**Plaintiffs' Response:**

Plaintiffs do not dispute this statement, but deny that Mr. Vince has any knowledge on the subject or cites any sources on the subject. **[check]** Chief Lanier also defined "illegal firearms" as unregistered firearms, Pl. Ex. 13 (Lanier Dep.) 9, so virtually all "illegal firearms" will come from out of the District since there are no stocking firearms dealers in the District.

**Def. Par. 26**: State and local laws that limit the purchase or registration of firearms by an individual to one gun in a 30-day period are effective in disrupting illegal interstate trafficking of firearms. Vince Decl. ¶¶ 17–18; Jones Decl. ¶¶ 18–20; Lanier Decl. ¶ 30. *See also* Douglas Weil & Rebecca Knox, *Effects of Limiting Handgun Purchases on Interstate Transfer of Firearms*, 275 J. AM. MED ASS'N 1759, 1760 (1996) (App. at 277) (concluding that one-gun-per-month restriction is an effective means of disrupting the illegal interstate transfer of firearms); *see also* Douglas Weil & Rebecca Knox, *Evaluating the Impact of Virginia's One-Gun-A-Month Law*, The Ctr. to Prevent Handgun Violence 1, 4–6 (Aug. 1995).

**Plaintiffs' Response:**

Plaintiffs dispute this statement.  The studies cited are not methodologically valid, are not based on reliable evidence, and are not relevant or material to the issues in this case.  Pl. Ex. 7 (Kleck Dec.) ¶ 71.  Furthermore, neither Chief Lanier, Vince, nor Jones is qualified to judge the validity of such studies or to offer opinions regarding them.  The studies are also not material because they relate only to "illegal trafficking" and the 30 day limitation applies only to registration of firearms, which will include only guns that were legally acquired or that were brought into the District by a lawful owner. D.C. Code § 7-2502.03(e).  In addition, the District admittedly does not have a problem with legally

purchased, registered firearms being illegally "trafficked" out of the District.  Pl. Ex. 13 (Webster Dep.) 106-07.  The District does not even have a stocking firearms dealer from whom multiple purchases could be made. See Pl. Ex. 17 (Carter Dec.) ¶ 5.

**Def. Par. 27**:  Historically, high-powered rifles have been the preferred tool of political assassins as they typically are more accurate over a longer range. Vince Decl. ¶ 16; Lanier Decl. ¶ 32; Jones Decl. ¶ 15.

**Plaintiffs' Response:**

Plaintiffs dispute this statement.  *See* Council Of The District Of Columbia, Committee On Public Safety & The Judiciary, *Report On Bill 19-614*, at 4 (Feb. 29, 2012) ("2012 Report") (citing assassinations and assassination attempts primarily committed with handguns, as well as incidents and conspiracies involving explosive devices).  Of all the major assassinations and assassination attempts in this country, the vast majority have involved handguns or other weapons or devices, not rifles.  Pl. Ex. 11. Plaintiffs further dispute that the cited paragraphs of the District's declarations support the statement, or that Vince, Jones, or Lanier have knowledge or expertise on what weapons assassins typically use.

**Def. Par. 28**:  Preventing crime and promoting public safety are each important and legitimate government interests. Ex. E [Pltfs RFA Res.], Response No. 4.

**Plaintiffs' Response:**

Plaintiffs dispute that the Plaintiffs' Response Requests for Admissions (Ex. E) admitted what is included in statement No. 28.  Request for Admission No. 4 stated: "The *protection of police officers* and the prevention of crime are each important and

legitimate governmental interests"—not "promoting public safety."  (emphasis added). Plaintiffs further dispute that "promoting public safety" generally is at issue on this remand, because the D.C. Circuit remanded for this Court to take evidence on the relation (if any) between the registration requirements and the governmental interests "to *protect police officers* and to aid in crime control." *Heller,* 670 F.3d at 1258 (emphasis added). Whether any interests are "important and legitimate government interests" is also not a material fact, because these are questions of law already decided by the D.C. Circuit, and are "law of the case."

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
William Scott
Asar Mustafa

By Counsel


 /s/ Stephen P. Halbrook
STEPHEN P. HALBROOK
D.C. Bar No. 379799
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
Telephone: (703) 352-7276
Facsimile: (703) 359-0938
Email:  PROTELL@aol.com


 /s/ Dan M. Peterson
DAN M. PETERSON
D.C. Bar No. 418360
Dan M. Peterson, PLLC
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
Telephone: (703) 352-7276
Facsimile: (703) 359-0938
Email: dan@danpetersonlaw.com

Counsel for Plaintiffs