Exhibit 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DICK ANTHONY HELLER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-01289 (JEB) |
| | ) | |
| THE DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## **DECLARATION OF DICK ANTHONY HELLER**

I, Dick Anthony Heller, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1.      My name is Dick Anthony Heller.  I am over eighteen years of age, am fully competent to make this Declaration, and have personal knowledge of the matters stated herein.

2.      I am one of the plaintiffs in the above-captioned case.

3.      I am a resident of the District of Columbia and a citizen of the United States, and am eligible under the laws of the United States and of the District of Columbia to receive and possess firearms.

4.      Since the case of *District of Columbia v. Heller* was decided by the United States Supreme Court in 2008, I have registered several firearms with the Metropolitan Police Department's Firearms Registration Section.  I have also attempted to register a rifle and three handguns for which my applications were rejected, because the rifle and handguns were of types banned by the District at that time, even though they were models and types commonly possessed in most other states and cities in the United States.

5.      In July of 2008, I registered a .22 caliber High Standard "Buntline" revolver. This firearm was owned by me but was kept in Maryland because DC had previously banned handguns.  Two trips to the MPD were required to register this firearm, during which I was fingerprinted and took a written test.  Round trips to the MPD take about 30-40 minutes on my bicycle. I went by bicycle on my first trip.   The time spent at MPD headquarters was approximately 45 minutes on the first trip, and 30 to 45 minutes on the second trip.  The second trip required a subway ride to Maryland to pick up the firearm and to return to the MPD.  The subway trip took about two hours.  Obtaining a passport photo took about half an hour.  Filling out the application itself may have taken 15 minutes.  Total time to register this handgun was in the vicinity of five hours.  The registration process for this particular handgun was shorter than it otherwise would have been because the gun was already owned by me, and thus did not have to be transferred through a federally licensed dealer.

6.      In August of 2011, I registered a .22 Marlin semi-automatic rifle.   This registration required two trips to the District Building, because MPD required the wooden stock to be attached.  On the first trip, I had taken the stock off to facilitate traveling to the MPD registration unit on my bicycle.  So I had to return home, re-attach the stock, and go to MPD again.  These trips took approximately two hours or so, perhaps longer.

7.      In April of 2012, I registered a .38 cal Charter Arms "Goldfinger"  revolver. This revolver was shipped from the factory to the DC licensed dealer for pickup.  This process took about two hours for registration time and travel time.  This revolver was later returned to the manufacturer, and the District Firearms control unit was given written notification of this disposition.

8.      On October 18, 2012, I registered a .22 caliber Charter Arms "Pathfinder" revolver.  It was shipped from the factory to the DC licensed dealer for pickup.   This registration took over 3 hours registration and travel time including up to an hour waiting to pay the $13 fee at the payment station.

9.      In August and October of 2013 I registered two additional long guns. Registration of these firearms generally followed the pattern described above.

10.      Prior to the changes in the registration laws in 2012, the time it took me to register a firearm was shorter than it would have been for other residents of the District, because as a licensed special police officer I had received firearms training and was exempt from the hands-on training course requirement.   Because I am knowledgeable about firearms, I also can sometimes order them from an out of state vendor, whereas a first or second-time purchaser would generally have to go out of the District to a dealer in another state to examine the firearm to see if it is suitable for that person, and then have the firearm transferred to the licensed dealer in the District.   That process incurs additional fees, additional travel time, and more delays.

11.      In addition, the "one handgun per month" law creates additional and unnecessary time burdens on an individual like me who may wish to register several handguns at one time. Instead of being able to register two or more handguns at the same time, I must delay additional transfers and registrations, and then take one or more additional trips to MPD in order to register only one handgun per trip.  I own a collection of several specialty handguns that are kept out of state, and I am prevented from transferring them into the District at one time because of the "one handgun per month" law.

12.     If the District's re-registration process, as proposed by rule on November 15, 2013, goes into effect in December 2013 in the form proposed, it will impose a severe burden on individuals who own and possess several firearms inside the District.  Under the proposed rule, a registrant would be required every three years to appear in person at MPD headquarters; submit fingerprints; and confirm possession of previously-registered firearms, home address, and continued compliance with the Act's registration requirements.  A fee of $13, presumably per firearm, would have to be paid every three years, plus fingerprinting fees of $35, and perhaps other fees.  Should the re-registration be late for any reason, fees would double.  If the re-registration is more than 90 days late, the prior registration would be cancelled and the registration treated as a new application.  I am not aware of anything that would prevent a cancelled registrant from being charged with possession of unregistered firearms, which can result in jail time, being listed in the Gun Offender Registry, and loss of the ability ever to own firearms in the District.  These potential penalties are vastly out of proportion to any purpose served, discourage registration, and in my opinion are simply an attempt to harass, intimidate, and/or trap law-abiding people who wish to possess a firearm in the District for legitimate purposes.

13.     Because of the many years I have spent challenging DC firearms laws, I am perhaps as knowledgeable about DC firearms registration laws as almost any other non-police, non-attorney individual in the District.  As mentioned, I am also exempt from some of the requirements.  Even so, I find the District's registration laws to be complex, sometimes confusing, and a heavy burden on the exercise of my individual right to keep and bear arms under the Second Amendment to the U.S. Constitution.  Such restrictions and burdens would never be tolerated for other constitutionally protected rights, such as freedom of speech and of

4

the press.  These harassments, hurdles, and restrictions on the Second Amendment rights of the people should also not be tolerated.

I declare under penalties of perjury that the foregoing is true and correct.

Executed on _____12-3-13_____, 2013

_____
Dick Anthony Heller