# Exhibit 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICK ANTHONY HELLER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:08-cv-01289 (JEB) |
| ) | |
| THE DISTRICT OF COLUMBIA, *et al.* ) | |
| ) | |
| Defendants. ) | |

## **DECLARATION OF WILLIAM CARTER**

I, William Carter, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. My name is William Carter. I am over eighteen years of age, am fully competent to make this Declaration, and have personal knowledge of the matters stated herein.

2. I am one of the plaintiffs in the above-captioned case.

3. I am a resident of the District of Columbia and a citizen of the United States, and am eligible under the laws of the United States and of the District of Columbia to receive and possess firearms.

4. Since the summer of 2008, I have registered several handguns and one shotgun in the District. The following is a typical scenario of the steps involved, and the estimated time spent. This description of steps relates principally to the time period when Mr. Charles Sykes, the only active licensed firearms dealer in the District, did not have his business premises in MPD headquarters.

5.      Because of the District's restrictive laws relating to firearms, there is no licensed dealer in the District who carries an inventory of firearms. Therefore, it was necessary for me to go to a dealer in Maryland to pick out and pay for a firearm to purchase.

6.      The first step is to notify Mr. Sykes, the only licensed firearm dealer in the District, of the gun selected at an out of state dealer. Mr. Sykes then goes and picks up the firearm. Time spent is perhaps 15 minutes to talk by telephone with Mr. Sykes, and a delay of one to several days for Mr. Sykes to pick up the firearm and bring it back to his place of business.

7.      Drive over to Mr. Sykes' dealership and pay him a processing fee and complete certain paperwork. Complete the registration application. Time spent is perhaps an hour to an hour and a half, round trip.

8.      Drive to MPD headquarters, park, and deal with MPD officials to get preliminary approval for firearm. Submit application and photo. Time spent may be estimated at an hour and a half.

9.      Drive to Mr. Sykes' dealership to pick up firearm. Complete federal paperwork and background check at dealer's. Drive to MPD headquarters that day or next day. Time spent estimated at one to one and a half hours.

10.     Find parking at MPD headquarters and walk with firearm to MPD offices. Present gun locked in case to security officials. Get fingerprinted. Have ballistic test done, when that was a requirement. Wait while MPD processes paperwork and approves or rejects

application.  Pay registration and fingerprint fees.  Be escorted out of building and have firearm returned to me.  Time spent estimated at one and a half to two hours at MPD.

11. Walk to car carrying gun in case.  Drive home, park, remove gun from car, and immediately transport and store firearm in home.  Estimated time perhaps thirty minutes, depending on parking, time of day, traffic, and other factors.

12. Total estimated time is perhaps 7 to 8 hours, not counting delays occurring between steps.  There is also a ten day waiting period between the time of purchase and when the gun can be registered, adding to the delays.

13. I was also required to take a four hour training course to purchase some of my firearms.  Travel time and waiting time to complete the course in Virginia probably added an hour on each end, for a total of approximately six hours.

14. I also consider it a burden to be required to carry my firearm to and from MPD headquarters.  While walking with it to or from the car, there is a risk that I will be attacked or the gun will be stolen, since it is required to be in a locked case and it cannot be used for defense.  While walking or driving, there is a risk that I will be stopped by an officer and arrested for having a firearm outside my home.  The District's procedures for registration cause these dangers that are not present in other states.

15. Prior to the change in the law, I also had to get a passport size photo taken prior to completion of the application.

16. In addition to registration fees and fingerprinting fees, Mr. Sykes charges $125 to transfer a firearm.

17. When I went to the Metropolitan Police Dept. to register my next handgun after the law had changed in 2009, I was told that I needed to take a training course.  I informed the officer at MPD headquarters that I had completed the course at the NRA range in Virginia where I am a member.  I showed the officer my certificate that was a copy.  The officer said I needed to bring in the original and not a copy. I had to go home to get the original copy and return the next day. The officer then had a copy made from my original certificate to put into my file.  I think that was an unnecessary delay and waste of time when I had shown the officer the certificate copy the day before.

18. The MPD Firearms Registration Section, which is the only place a person can register a firearm, is only open during daytime business hours, Monday through Friday, and is not open in the evenings or on weekends.  I work full time during the day, so I had to take time off work on multiple days in order to register my firearms.

19. The re-registration requirement will add to these burdens.  Although that requirement will be a needless burden to all law-abiding firearms registrants in the District, it will be an even harsher burden on me because I own more than half a dozen firearms.  If the regulation proposed in November 2013 relating to re-registration goes into effect, every three years I will have to pay something in excess of $100 at the current fee structure, and possibly more, merely to keep the firearms I already own and have already registered.

I declare under penalties of perjury that the foregoing is true and correct.

Executed on  12/04 , 2013

William Carter